**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Ossai Miazad
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
1515 South Federal Highway, Suite 404
Boca Raton, FL 33432
Telephone: (561) 447-8888
Facsimile: (561) 447-8831

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

RENE HERNANDEZ, REBECCA HESTON,
JEFFREY STEINBERG, TRINITY GRAY, ERIC
EBANKS, and WILLIAM ROGERS, individually
and on behalf all others similarly situated,

               Plaintiffs,

    v.

MERRILL LYNCH & CO., INC.; MERRILL
LYNCH, PIERCE, FENNER & SMITH, INC.,
and BANK OF AMERICA CORPORATION,

               Defendants.

11 Civ. 8472 (KBF) (DCF)

## PLAINTIFFS' MEMORANDUM OF LAW IN
## SUPPORT OF MOTION FOR CONDITIONAL
## CERTIFICATION AND COURT-AUTHORIZED
## NOTICE PURSUANT TO SECTION 216(b) OF THE FLSA

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT .................................................................................. 1

PROCEDURAL HISTORY ...................................................................................... 2

THE PARTIES ........................................................................................................ 2

      A.     Defendants ............................................................................................... 2

      B.     Named and Opt-In Plaintiffs .................................................................. 3

STATEMENT OF FACTS ....................................................................................... 4

      A.     Merrill Centrally Controls, Trains, and Monitors Its FSAs at Its Call Centers ...... 4

      B.     All Core 1 FSAs Were Encouraged to Work Off The Clock But Were Not Permitted To Record All Hours Worked ................................................ 7

      C.     All FSAs Have the Same Primary Job Duties ...................................... 8

      D.     Merrill's Compensation of FSAs Is Uniform ..................................... 10

ARGUMENT ........................................................................................................ 11

      A.     Court-Authorized Notice Is Fair and Efficient, and Advances the FLSA's Goals. ........................................................................................ 11

      B.     Expeditious Notice Is Necessary to Protect the Rights of FSAs ......... 12

      C.     Plaintiffs Comfortably Exceed the Low Burden for Conditional Certification .... 12

              1.     The Core 1 Plaintiffs and Other Core 1 FSAs Are Similarly Situated With Respect to Their Off-The-Clock Claims ......................... 14

              2.     The Experienced FSA Plaintiffs and Other Experienced FSAs Are Similarly Situated With Respect to Their Misclassification Claims ........ 17

      D.     The Court Should Approve Plaintiffs' Proposed Notice ...................... 22

CONCLUSION ..................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Adams v. Inter-Con Sec. Sys., Inc.*,
  No. 06 Civ. 5428, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)..........................23

*Alli v. Boston Market Corp.*,
  No. 10 Civ. 4, 2011 WL 4006691 (D. Conn. Sept. 8, 2011) ...................................14

*Aros v. United Rentals, Inc.*,
  269 F.R.D. 176 (D. Conn. 2010)...........................................................................21

*Braunstein v. E. Photo. Labs., Inc.*,
  600 F.2d 335 (2d Cir. 1978), *cert. denied*, 441 U.S. 944 (1979).......................11, 12

*Cano v. Four M Food*,
  No. 08 Civ. 3005, 2009 WL 5710143 (E.D.N.Y. Feb. 3, 2009)............................22

*Cohen v. Gerson Lehrman Grp., Inc.*,
  686 F. Supp. 2d 317 (S.D.N.Y. 2010)..........................................................17, 19, 20

*Cruz v. Hook-SupeRx, LLC*,
  No. 09 Civ. 7717, 2010 WL 3069558 (S.D.N.Y. Aug. 5, 2010) .....................19, 20

*Cuzco v. Orion Builders, Inc.*,
  477 F. Supp. 2d 628 (S.D.N.Y. 2007)...................................................................12

*Damassia v. Duane Reade, Inc.*,
  250 F.R.D. 152 (S.D.N.Y. 2008) ..........................................................................21

*Damassia v. Duane Reade, Inc.*,
  No. 04 Civ. 8819, 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006) ................... passim

*Diaz v. S & H Bondi's Dep't Store*,
  No. 10 Civ. 7676, 2012 WL 137460 (S.D.N.Y. Jan. 18, 2012)............................13

*Dukes v. Wal-Mart*,
  564 U.S. ___, 131 S.Ct. 2541 (2011)....................................................................13

*Ellerd v. Cnty. of Los Angeles*,
  No. 08 Civ. 4289, 2010 WL 2998801 (C.D. Cal. July 28, 2010) .........................23

*Fasanelli v. Heartland Brewery, Inc.*,
  516 F. Supp. 2d 317 (S.D.N.Y. 2007)...................................................................24

*Francis v. A & E Stores, Inc.*,
  No. 06 Civ. 1638, 2008 WL 4619858 (S.D.N.Y. Oct. 16, 2008) .....................17, 20

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
    282 F. Supp. 2d 101 (S.D.N.Y. 2003)............................................................13, 20

*Hoffmann v. Sbarro, Inc.*,
    982 F. Supp. 249 (S.D.N.Y. 1997)...............................................................12

*Hoffmann-La Roche, Inc. v. Sperling*,
    493 U.S. 165 (1989)....................................................................................11, 23

*Holbrook v. Smith & Hawken, Ltd.*,
    246 F.R.D. 103 (D. Conn. 2007)...................................................................21

*Indergit v. Rite Aid Corp.*,
    Nos. 08 Civ. 9361, 08 Civ. 11364,
    2010 WL 2465488 (S.D.N.Y. Jun. 16, 2010) ............................................... passim

*Levy v. Verizon Info. Servs., Inc.*,
    No. 06 Civ. 1583, 2007 WL 1747104 (E.D.N.Y. June 11, 2007).........................15

*Li v. Health Plus Prepaid Health Servs. Plan, Inc.*,
    No. 10 Civ. 1843 (S.D.N.Y. Dec. 20, 2010)...................................................23

*Morgan v. Family Dollar Stores, Inc.*,
    551 F.3d 1233 (11th Cir. 2008) ................................................................... passim

*Moung Su Kim v. Kap Sang Kim*,
    No. 10 Civ. 2515, 2010 WL 2854463 (E.D.N.Y. July 19, 2010) .........................24

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)......................................................................... passim

*Nerland v. Caribou Coffee Co. Inc.*,
    564 F. Supp. 2d 1010 (D. Minn. 2007)...........................................................22

*Pendlebury v. Starbucks Coffee Co.*,
    518 F. Supp. 2d 1345 (S.D. Fla. 2007) ...........................................................22

*Perkins v. S. New England Tel. Co.*,
    669 F. Supp. 2d 212 (D. Conn. 2009)............................................................20

*Pippins v. KPMG LLP*,
    No. 11 Civ. 377, 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012)............................ passim

*Ravenell v. Avis Budget Grp., Inc.*,
    No. 08 Civ. 2113 (E.D.N.Y. Sept. 29, 2010) ....................................................23

*Ross v. RBS Citizens, N.A.*,
    667 F.3d 900 (7th Cir. 2012) ........................................................................15, 19

iv

*Ruggles v. WellPoint, Inc.*,
    591 F. Supp. 2d 150 (N.D.N.Y. 2008) ...................................................................12

*Shajan v. Barolo, Ltd.*,
    No. 10 Civ. 1385, 2010 WL 2218095 (S.D.N.Y. June 2, 2010) ........................................12, 13

*Sipas v. Sammy's Fishbox, Inc.*,
    No. 05 Civ. 10319, 2006 WL 1084556 (S.D.N.Y. Apr. 24, 2006) ........................................17

*Stillman v. Staples, Inc.*,
    No. 07 Civ. 849 (D.N.J. July 3, 2008) ..................................................................23

*Wang v. Chinese Daily News, Inc.*,
    231 F.R.D. 602 (C.D. Cal. 2005) ........................................................................18

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
    767 F. Supp. 2d 445 (S.D.N.Y. 2011) ....................................................................24

*Winfield v. Citibank, N.A.*,
    No. 10 Civ. 7304, 2012 WL 423346 (S.D.N.Y. Feb. 9, 2012) ..................................... passim

## STATUTES

29 U.S.C. § 216(b) ......................................................................................11

## OTHER AUTHORITIES

Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law
    Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 295 (2008) ...........23

Robert H. Klonoff, et. al., *Making Class Actions Work: The Untapped Potential of the
    Internet*, 69 U. Pitt. L. Rev. 727 (2008) ..............................................................24

## PRELIMINARY STATEMENT

Merrill[1] unlawfully denies all of its Financial Solutions Advisors ("FSAs")[2] overtime pay.  Merrill pays its entry-level FSAs—"Core 1 FSAs"—on an hourly basis but, as a result of its company-wide policies, regularly fails to compensate Core 1 FSAs for all hours they work. Merrill pays more experienced FSAs—Core 2 FSAs, Premier FSAs, Rollover FSAs, Transition FSAs, and other FSAs—on a purported[3] salary basis ("Experienced FSAs") and, as an explicit company-wide policy, fails to pay its Experienced FSAs any overtime compensation for hours they work in excess of 40 in a workweek.  Merrill assigns all FSAs the same primary duties – sales and customer service.

Through this motion, Plaintiffs seek to protect the rights of FSAs across the country by sending them early Court-approved notice of this action and letting them decide whether to join it and attempt to recover their unpaid wages.

Plaintiffs exceed their low burden on this motion – to demonstrate that Merrill subjected all Core 1 FSAs to the same allegedly unlawful policy of failing to pay them for hours worked "off the clock," and all Experienced FSAs to the same allegedly unlawful policy of classifying them as exempt from the FLSA's overtime pay requirements.  Merrill's own corporate documents, including uniform nationwide job descriptions, and the declaration testimony of Plaintiffs all support Plaintiffs' motion.

---

[1]     Plaintiffs refer to all Defendants collectively as "Merrill" or "the Company."

[2]     Upon information and belief, the job title of Financial Solutions Advisor was formerly called Investment Services Advisor.  Compl. ¶ 1.  Unless otherwise indicated, the term "FSAs" refers to Financial Solutions Advisors, Investment Services Advisors, and persons in simiilar positions with comparable titles who worked at Merrill's call centers, including but not limited to Core 1 FSAs ("Core 1 FSAs"), and Core 2, Premier, Transition, Rollover, CDA, IAT, and MEET FSAs ("Experienced FSAs").

[3]     Plaintiffs do not concede that Merrill pays FSAs on a true "salary basis" as required by 29 C.F.R. § 541.602 and reserve the right to argue that they do not after obtaining discovery on the issue.

**PROCEDURAL HISTORY**

Plaintiffs Rene Hernandez, Rebecca Heston, and Jeffrey Steinberg filed this lawsuit on November 22, 2011.  Decl. of Ossai Miazad in Support of Pls.' Mot. for Conditional Cert. ("Miazad Decl.") ¶ 2.  On January 31, 2012, Plaintiffs filed an amended complaint adding three additional named plaintiffs, Trinity Gray, Eric Ebanks, and William Rogers, and claims under New Jersey law.  Miazad Decl. ¶ 3.  The parties have engaged in very limited document discovery related to this motion.  Miazad Decl. ¶ 4.  *See* Footnote 7, *infra.*  In addition to the six named plaintiffs, one other former Merrill FSA has also joined the case as an Opt-in Plaintiff.[4] Miazad Decl. ¶ 5.

**THE PARTIES**

A.   **Defendants**

Merrill is part of Bank of America Corporation, one of the world's largest financial institutions.  Ex. A  (Form 10-K) 1.[5]  Among other lines of business, Merrill provides retail banking and brokerage services to individual clients.  Ex. A (Form 10-K) 268-69.  The company's "Merrill Edge" platform is an "integrated investing and banking service" targeting "mass-affluent" clients with less than $250,000 in total assets.  Ex. A (Form 10-K) 40; Ex. B (AdvisorOne Article).  Merrill employs FSAs at three call centers in Jacksonville, Florida; Hopewell, New Jersey; and Chandler, Arizona.  Ex. B (AdvisorOne Article).  Merrill employs FSAs at these call centers to provide telephonic customer service to Merrill Edge clients and encourage clients to purchase investment products recommended by Merrill and bring a greater

---

[4]      A second former FSA, Jeffrey Tillman, opted into the case on February 21, 2012. Miazad Decl. ¶ 6.  Plaintiffs' counsel subsequently learned that he did not work as an FSA during the relevant statute of limitations period and withdrew his consent form on March 9, 2012.  *Id.*

[5]      All exhibits are attached to the Miazad Declaration.

share of their investible assets to Merrill.  Ex. C (Core 1 FSA Job Description); Ex. D
(Experienced FSA Job Description).

**B.    Named and Opt-In Plaintiffs**

Plaintiff Rene Hernandez worked for Merrill as a Core 1 FSA from approximately
August 2008 to February 2010, and as Experienced FSA from approximately March 2010 to
August 2010.   Ex. E (Am. Compl.) ¶ 15; Ex. F (Hernandez Decl.) ¶ 3.  Plaintiff Rebecca Heston
worked for Merrill as a Core 1 FSA from approximately March 2008 to October 2009, and as a
Experienced FSA from approximately October 2009 to January 2010.  Ex. E (Am. Compl.) ¶ 19;
Ex. G (Heston Decl.) ¶ 3.  Plaintiff Jeffrey Steinberg worked for Merrill as a Core 1 FSA from
approximately January 2006 to July 2006 and approximately August 2009 to January 2010, and
as a Experienced FSA from approximately August 2006 to July 2009.  Ex. E (Am. Compl.) ¶ 23;
Ex. H (Steinberg Decl.) ¶ 3.  Plaintiff Trinity Gray worked for Merrill as a Core 1 FSA from
approximately June 2010 to January 2011.  Ex. I (Gray Decl.) ¶ 2.  Plaintiff Eric Ebanks worked
for Merrill as a Core 1 FSA from approximately January 2007 to December 2007, and as an
Experienced FSA from approximately December 2007 to May 2009.  Ex. E (Am. Compl.) ¶ 31;
Ex. J (Ebanks Decl.) ¶ 2.  Plaintiff William Rogers worked for Merrill as a Core 1 FSA from
approximately May 2006 to May 2007, and as a Experienced FSA from approximately May
2007 to December 2008 and from approximately March 2009 to April 2010.  Ex. E (Am.
Compl.) ¶ 35; Ex. K (Rogers Decl.) ¶ 3.  Opt-In Betty Reynolds worked for Merrill as a Core 1
FSA from approximately October 2008 to August 2010.  Ex. L (Reynolds Decl.) ¶ 3.  For their
entire tenure as FSAs at Merrill, Plaintiffs Hernandez, Heston, Steinberg, Ebanks, and Rogers
and Opt-In Reynolds worked at Merrill's call center in Jacksonville, Florida.  Ex. F (Hernandez
Decl.) ¶ 1; Ex. G (Heston Decl.) ¶1; Ex. H (Steinberg Decl.) ¶¶ 1; Ex. J (Ebanks Decl.) ¶ 1; Ex.

K (Rogers Decl.) ¶ 1; Ex. L (Reynolds Decl.) ¶ 1.  For his entire tenure as an FSA at Merrill,

Plaintiff Gray worked at Merrill's call center in Hopewell, New Jersey.  Ex. I (Gray Decl.) ¶ 1.

During the relevant period, Plaintiffs Hernandez, Heston, Steinberg, and Gray and Opt-In

Reynolds regularly worked more than 40 hours a week for Merrill as Core 1 FSAs, but were not

permitted to record all of their overtime hours worked, and were not paid for all overtime hours

worked.  Ex. F (Hernandez Decl.) ¶¶ 10, 12; Ex. G (Heston Decl.) ¶¶ 10, 12; Ex. H (Steinberg

Decl.) ¶¶ 10, 12; Ex. I (Gray Decl.) ¶¶ 9, 11; Ex. L (Reynolds Decl.) ¶¶ 10, 12.  During the

relevant period, Plaintiffs Hernandez, Heston, Steinberg, Ebanks, and Rogers all regularly

worked more than 40 hours a week for Merrill as Experienced FSAs, but were never paid

overtime for those hours.  Ex. F (Hernandez Decl.) ¶¶ 10, 13; Ex. G (Heston Decl.) ¶¶ 10, 13;

Ex. H (Steinberg Decl.) ¶¶ 10, 13; Ex. J (Ebanks Decl.) ¶¶ 8, 11; Ex. K (Rogers Decl.) ¶¶ 10, 13.

## STATEMENT OF FACTS

### A.    Merrill Centrally Controls, Trains, and Monitors Its FSAs at Its Call Centers.

Merrill maintains top-down control over its call center locations to ensure that its FSAs

perform their duties in a uniform way.  Merrill refers to these call centers as a single, integrated

"consultative platform," which it calls the "Merrill Edge Advisory Center (MEAC)."  Ex. C

(Core 1 FSA Job Description); Ex. D (Experienced FSA Job Description).  Merrill lists a single

telephone number on its website, which clients and prospective clients can call from anywhere in

the country to reach FSAs on the MEAC platform at all three call centers.  Ex. M (Schedule a

Consultation).  Accordingly, Merrill trains FSAs at each call center to perform the entire

spectrum of customer service and sales tasks, such as answering customers' questions, opening

accounts, processing trades, and selling Merrill products and services.  Merrill also ensures that

FSAs perform their work in a consistent way by requiring them to use common tools and

computer systems.  Ex. F (Hernandez Decl.) ¶ 9; Ex. G (Heston Decl.) ¶ 9; Ex. H (Steinberg

Decl.) ¶ 9; Ex. I (Gray Decl.) ¶ 8; Ex. J (Ebanks Decl.) ¶ 7; Ex. K (Rogers Decl.) ¶ 9; Ex. L

(Reynolds Decl.) ¶ 9.

     Merrill controls how its FSAs interact with clients by requiring them to follow its detailed

guidelines for offering Merrill's products and services to customers.  Ex. F (Hernandez Decl.) ¶

8; Ex. G (Heston Decl.) ¶ 8; Ex. H (Steinberg Decl.) ¶ 8; Ex. I (Gray Decl.) ¶ 7; Ex. J (Ebanks

Decl.) ¶ 7; Ex. K (Rogers Decl.) ¶ 8; Ex. L (Reynolds Decl.) ¶ 8.  For example, Merrill gave

FSAs prescribed criteria for recommending various products and services to clients.   Ex. F

(Hernandez Decl.) ¶¶ 6-7; Ex. G (Heston Decl.) ¶¶ 6-7; Ex. H (Steinberg Decl.) ¶¶ 6-7; Ex. I

(Gray Decl.) ¶¶ 5-6; Ex. J (Ebanks Decl.) ¶¶ 5-6; Ex. K (Rogers Decl.) ¶¶ 6-7; Ex. L (Reynolds

Decl.) ¶¶ 7-8.  The Core 1 FSA job description indicates that Core 1 FSAs must follow Merrill's

"Wealth Management Process."  Ex. C (Core 1 FSA Job Description).  Plaintiffs similarly report

that they were required to follow the "Merrill Lynch Investment Process" which required them to

adhere to preset asset allocations, regardless of particular client needs or requests.  Ex. K (Rogers

Decl.) ¶ 8; *see also* Ex. O (Investment Process); Ex. P (Implement Solutions).  This "Investment

Process" requires FSAs to follow a rigid four-step process to determine a client's investment

objectives—which entails putting them in one of five boxes of risk tolerance—and to

recommend investments off of a pre-approved list of approved mutual funds based on which of

the five boxes the client falls into.  Ex. O (Investment Process); Ex. P (Implement Solutions).

     Likewise, the Experienced FSA job description required Experienced FSAs to use

Merrill's "wealth management tools" when providing customer service or selling products to

Merrill clients.  Ex. D (Experienced FSA Job Description).  Merrill also instructed all FSAs to

follow the same specific steps when speaking to clients, for example, "Know Your Client," and

"Document the Conversation, Next Step."  Ex. N (2011 Variable Compensation Plan ("VCP"))
at BOAHERNANDEZ001877; *see also* Ex. Q (Performance Evaluations) at
BOAHERNANDEZ000021.

Merrill also ensures uniformity in the service that FSAs provide to its customers through
uniform training and standardized performance evaluation.  Merrill provides all of its FSAs with
the same training during which it describes the types of Merrill products and services FSAs
should sell, and in which situations.  Ex. F (Hernandez Decl.) ¶ 6; Ex. G (Heston Decl.) ¶ 6; Ex.
H (Steinberg Decl.) ¶ 6; Ex. I (Gray Decl.) ¶ 5; Ex. J (Ebanks Decl.) ¶ 5; Ex. K (Rogers Decl.) ¶
6; Ex. L (Reynolds Decl.) ¶ 6.  Merrill even prescribes a conversational tone that FSAs must use
with clients – the Experienced FSA job description states that FSAs should "[a]dapt to client
preferences using a conversational style."  Ex. D (Experienced FSA Job Description).

Merrill ensures that FSAs meet these uniform requirements by continuously monitoring
and evaluating FSAs' performance.  Merrill evaluates FSAs according to common standards and
objectives, such as "Quality of Service," "New Business," "Appropriate Documentation of all
client interactions," "Participation in business initiatives," "Compliance," and "Errors."  Ex. Q
(Performance Evaluations) at BOAHERNANDEZ000020-21, 892, 1015, 1368.  Merrill controls
even the manner in which FSAs carry out these objectives.  For example, Plaintiff Ebanks
received feedback in his performance evaluation that he needed to adjust his delivery,
presumably to bring it in line with Merrill's preferred "conversational style."  Ex. Q
(Performance Evaluations) at BOAHERNANDEZ000021.  Merrill also requires FSAs to
document all client interactions, so that it can measure FSAs' adherence to company standards
using common tools and software programs.  Ex. N (VCP) at BOAHERNANDEZ001877.

**B.      All Core 1 FSAs Were Encouraged to Work Off The Clock But Were Not Permitted To Record All Hours Worked.**

Merrill sets common performance goals for Core 1 FSAs that require Core 1 FSAs to work overtime hours to achieve them.  For example, Merrill measured all FSAs' (not just Core 1 FSAs') performance based on metrics like "attrition," "production," "productivity," and "new money."  Ex. F (Hernandez Decl.) ¶ 11; Ex. G (Heston Decl.) ¶ 11; Ex. H (Steinberg Decl.) ¶ 11; Ex. I (Gray Decl.) ¶ 10; Ex. J (Ebanks Decl.) ¶ 9; Ex. K (Rogers Decl.) ¶ 11; Ex. L (Reynolds Decl.) ¶ 11; Ex. T (Variable Compensation Reports).  All Plaintiffs have indicated that it was nearly impossible to meet these performance goals without working substantial overtime hours. Ex. F (Hernandez Decl.) ¶ 11; Ex. G (Heston Decl.) ¶ 11; Ex. H (Steinberg Decl.) ¶ 11; Ex. I (Gray Decl.) ¶ 10; Ex. J (Ebanks Decl.) ¶ 9; Ex. K (Rogers Decl.) ¶ 11; Ex. L (Reynolds Decl.) ¶ 11.  Working overtime hours to accommodate Merrill's clients and to meet Merrill's business objectives was a routine and necessary part of the Core 1 FSA position.  Ex. F (Hernandez Decl.) ¶ 11; Ex. G (Heston Decl.) ¶ 11; Ex. H (Steinberg Decl.) ¶ 11; Ex. I (Gray Decl.) ¶ 10; Ex. J (Ebanks Decl.) ¶ 9; Ex. K (Rogers Decl.) ¶ 11; Ex. L (Reynolds Decl.) ¶ 11.

Merrill also frequently employed a common practice of not allowing Core 1 FSAs to record all overtime hours worked.  During certain periods, Merrill allowed Core 1 FSAs to record only a certain number of overtime hours per week.  Ex. F (Hernandez Decl.) ¶ 12; Ex. G (Heston Decl.) ¶ 12; Ex. H (Steinberg Decl.) ¶ 12; Ex. I (Gray Decl.) ¶ 11; Ex. J (Ebanks Decl.) ¶ 10; Ex. K (Rogers Decl.) ¶ 12; Ex. L (Reynolds Decl.) ¶ 12.  If Core 1 FSAs worked more overtime hours than were permitted, they were not allowed to record those hours, and they were not paid for them.  Ex. F (Hernandez Decl.) ¶ 12; Ex. G (Heston Decl.) ¶ 12; Ex. H (Steinberg Decl.) ¶ 12; Ex. I (Gray Decl.) ¶ 11; Ex. J (Ebanks Decl.) ¶ 10; Ex. K (Rogers Decl.) ¶ 12; Ex. L (Reynolds Decl.) ¶ 12.  During other periods, Merrill also told Core 1 FSAs that they were not

allowed to record any overtime at all.  Ex. F (Hernandez Decl.) ¶ 12; Ex. G (Heston Decl.) ¶ 12;

Ex. H (Steinberg Decl.) ¶ 12; Ex. I (Gray Decl.) ¶ 11; Ex. J (Ebanks Decl.) ¶ 10; Ex. K (Rogers

Decl.) ¶ 12; Ex. L (Reynolds Decl.) ¶ 12.  Even though they were not paid for the extra time,

FSAs worked overtime hours in order to meet their performance targets.  Ex. F (Hernandez

Decl.) ¶ 12; Ex. G (Heston Decl.) ¶ 12; Ex. H (Steinberg Decl.) ¶ 12; Ex. I (Gray Decl.) ¶ 11; Ex.

J (Ebanks Decl.) ¶ 10; Ex. K (Rogers Decl.) ¶ 12; Ex. L (Reynolds Decl.) ¶ 12.  These practices

occurred at both the Jacksonville and Hopewell call centers, Ex. F (Hernandez Decl.) ¶¶ 1, 12;

Ex. G (Heston Decl.) ¶ 1, 12; Ex. H (Steinberg Decl.) ¶ 1, 12; Ex. I (Gray Decl.) ¶ 1, 11; Ex. J

(Ebanks Decl.) ¶ 1, 10; Ex. K (Rogers Decl.) ¶ 1, 12; Ex. L (Reynolds Decl.) ¶ 1, 12.

### C.    All FSAs Have the Same Primary Job Duties.

All FSAs in Merrill's call centers have the same primary job function—customer service

and sales.  This includes making outbound phone calls, receiving inbound phone calls, answering

clients' questions, placing trades, conducting portfolio reviews, making appointments, and

offering Merrill products and services to clients.  Ex. F (Hernandez Decl.) ¶ 5; Ex. G (Heston

Decl.) ¶ 5; Ex. H (Steinberg Decl.) ¶ 5; Ex. I (Gray Decl.) ¶ 4; Ex. J (Ebanks Decl.) ¶ 4; Ex. K

(Rogers Decl.) ¶ 5; Ex. L (Reynolds Decl.) ¶ 5.

Merrill's own internal job descriptions also employ uniform job descriptions.  The

Experienced FSA job description, coded BQ010 in Merrill's personnel database, describes the

role as "maintaining our existing U.S. client relationships by providing day to day service and

advice via a telephone based platform."  Ex. D (Experienced FSA Job Description).  The

description further lists customer service and sales duties, such as "strengthen client relationships

by anticipating needs, exceeding service expectations and following through on commitments,"

"[u]nderstand and proactively identify leading indicators of client attrition and mitigate," "[a]lign

8

Merrill Lynch products and services where appropriate," and "[c]onsistently identify client opportunities." Ex. D (Experienced FSA Job Description). This job description is the same for Experienced FSAs regardless of work location, and regardless of FSA job title (e.g., Core 2, Premier, Rollover, Transition, etc.). Ex. D (Experienced FSA Job Description); Ex. R (Workforce Reports) (listing BQ010 job code, or predecessor W001E job code, for Core 2, Premier, Rollover, and Transition FSA roles). Similarly, the Experienced FSA job description, found in FSA job postings for positions throughout the country, is almost exactly the same for each call center and does not distinguish between job titles such as Core 2 versus Premier. Ex. S (Job Postings). The similarity of FSAs' job duties across different job titles is further evidenced by the fact that FSAs need almost no retraining in order to move between FSA positions, such as Core 1 FSA, Core 2 FSA, and Premier FSA. Ex. F (Hernandez Decl.) ¶ 3; Ex. H (Steinberg Decl.) ¶ 3; Ex. K (Rogers Decl.) ¶ 3.

Finally, the job duties of all FSAs also exclude the same job functions. For example, Merrill does not allow FSAs to make independent decisions about what investment or financial planning advice to give to clients. Ex. F (Hernandez Decl.) ¶ 7; Ex. G (Heston Decl.) ¶ 7; Ex. H (Steinberg Decl.) ¶ 7; Ex. I (Gray Decl.) ¶ 6; Ex. J (Ebanks Decl.) ¶ 6; Ex. K (Rogers Decl.) ¶ 7; Ex. L (Reynolds Decl.) ¶ 7. Merrill also does not permit FSAs to recommend specific securities, such as stocks and bonds. Ex. F (Hernandez Decl.) ¶ 7; Ex. G (Heston Decl.) ¶ 7; Ex. H (Steinberg Decl.) ¶ 7; Ex. I (Gray Decl.) ¶ 6; Ex. J (Ebanks Decl.) ¶ 6; Ex. K (Rogers Decl.) ¶ 7; Ex. L (Reynolds Decl.) ¶ 7. Moreover, FSAs may not execute large trades, meaning orders of 1,000 shares or more, without obtaining manager approval. Ex. N (VCP) at BOAHERNANDEZ001878.

D.    **Merrill's Compensation of FSAs Is Uniform.**

Merrill classified all Experienced FSAs as exempt from the overtime requirements of the FLSA.   Ex. F (Hernandez Decl.) ¶ 13; Ex. G (Heston Decl.) ¶ 13; Ex. H (Steinberg Decl.) ¶ 13; Ex. J (Ebanks Decl.) ¶ 11; Ex. K (Rogers Decl.) ¶ 13; Ex. R (Workforce Reports) (listing all Experienced FSA positions as "exempt").   Merrill has produced no evidence that anyone from Merrill's corporate headquarters, or anyone involved in the classification decision, ever watched them or any other FSAs perform their duties in order to help determine their exempt or non-exempt status.   Ex. F (Hernandez Decl.) ¶ 14; Ex. G (Heston Decl.) ¶ 14; Ex. H (Steinberg Decl.) ¶ 14; Ex. J (Ebanks Decl.) ¶ 12; Ex. K (Rogers Decl.) ¶ 14; Ex. L (Reynolds Decl.) ¶ 13.   Rather, Merrill appears to have made a blanket decision to classify all Experienced FSAs as exempt.   Ex. R (Workforce Reports).   Accordingly, all Experienced FSAs did not receive any overtime compensation for all overtime hours worked.   Ex. F (Hernandez Decl.) ¶ 13; Ex. G (Heston Decl.) ¶ 13; Ex. H (Steinberg Decl.) ¶ 13; Ex. J (Ebanks Decl.) ¶ 11; Ex. K (Rogers Decl.) ¶ 13.

Merrill also employs a single "Variable Compensation Plan" ("VCP") to encourage FSAs to perform these uniform job duties.   Ex. N (VCP) at BOAHERNANDEZ001873.   The VCP is designed to reward FSAs for "superior service, advice, and asset gathering performance."   Ex. N (VCP) at BOAHERNANDEZ001875.   Under the VCP, Merrill measures all FSAs based on metrics such as "adherence," "attrition," "production," "productivity," and "new money."   Ex. N (VCP) at BOAHERNANDEZ001877; Ex. F (Hernandez Decl.) ¶ 11; Ex. G (Heston Decl.) ¶ 11; Ex. H (Steinberg Decl.) ¶ 11; Ex. I (Gray Decl.) ¶ 10; Ex. J (Ebanks Decl.) ¶ 9; Ex. K (Rogers Decl.) ¶ 11; Ex. T (Variable Compensation Reports).   Although the weightings given to each factor apparently vary for each job title, the set of factors—and the underlying job duties measured—are the same.   Ex. T (Variable Compensation Reports).   Failure to meet these

performance standards can affect FSAs' incentive compensation "and/or result in disciplinary action including termination of employment." Ex. N (VCP) at BOAHERNANDEZ001878.  The VCP applies to all FSAs regardless of geographic location and FSA job title.  Ex. N (VCP) at BOAHERNANDEZ001873; Ex. F (Hernandez Decl.) ¶¶ 1, 11; Ex. G (Heston Decl.) ¶¶ 1, 11; Ex. H (Steinberg Decl.) ¶¶ 1,11; Ex. I (Gray Decl.) ¶¶ 1,10; Ex. J (Ebanks Decl.) ¶¶ 1, 9; Ex. K (Rogers Decl.) ¶¶ 1, 11; Ex. L (Reynolds Decl.) ¶¶ 1, 11.

## ARGUMENT

### A.    Court-Authorized Notice Is Fair and Efficient, and Advances the FLSA's Goals.

The FLSA authorizes private parties to bring an overtime claim "[o]n behalf of . . . themselves and other employees similarly situated."  29 U.S.C. § 216(b).  In furtherance of the FLSA's "broad remedial purpose," courts have the authority to notify potential opt-in plaintiffs that they may join an existing action early in the proceedings.  *Braunstein v. E. Photo. Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978), *cert. denied*, 441 U.S. 944 (1979); *see also Myers v. Hertz Corp.,* 624 F.3d 537, 554 (2d Cir. 2010) ("[D]istrict courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989))).

Collective actions provide workers an opportunity to "lower individual costs to vindicate rights by . . . pooling . . . resources[,]" and enable the "efficient resolution in one proceeding of common issues of law and fact. . . ."  *Hoffmann-La Roche*, 493 U.S. at 170.  Nationwide notice here will provide collective members with a single forum in which to determine whether Merrill's overtime policies are lawful.

**B.    Expeditious Notice Is Necessary to Protect the Rights of FSAs.**

Workers must receive timely notice in order for the "intended benefits of the collective

action . . . to accrue. . . ." *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 635 (S.D.N.Y.

2007).  The FLSA statute of limitations runs until an employee files a consent form.  *Hoffmann*

*v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997).  Time is of the essence here because

FSAs' claims are diminished or extinguished every day.  Timely notice will curtail their

continued erosion, *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 161 n.12 (N.D.N.Y. 2008),

and is particularly important to the FLSA's "broad remedial purpose," *Braunstein*, 600 F.2d at

336.

**C.    Plaintiffs Comfortably Exceed the Low Burden for Conditional Certification.**

This lawsuit challenges two straightforward, uniform Merrill policies – (1) failing to pay

Core 1 FSAs overtime compensation for hours worked "off the clock," and (2) (mis)classifying

all Experienced FSAs as exempt from the FLSA's overtime requirements and failing to pay them

any overtime compensation as required under 29 U.S.C. § 207(a)(1).  On both claims, Plaintiffs

comfortably exceed their light burden of showing that they are similarly situated with respect to

these claims.

Courts in the Second Circuit employ a two-step approach when presented with a motion

for conditional certification.  *Myers,* 624 F.3d at 554-55.  At the initial "notice stage," plaintiffs

must establish that other employees "may be similarly situated" to them.  *Id*. at 555 (internal

quotation marks omitted).  "Nothing more is needed at this stage of the litigation." *Shajan v.*

*Barolo, Ltd.*, No. 10 Civ. 1385, 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010) (citing

*Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007).  Employees are

"similarly situated" if they "were victims of a common policy or plan that violated the law."

12

*Diaz v. S & H Bondi's Dep't Store*, No. 10 Civ. 7676, 2012 WL 137460, at *3 (S.D.N.Y. Jan. 18,

2012) (internal quotation marks omitted); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.

Supp. 2d 101, 104 (S.D.N.Y. 2003).  With FLSA misclassification claims, plaintiffs can meet

their burden "by making some showing that 'there are other employees . . . who are similarly

situated with respect to their job requirements and with regard to their pay provisions,' on which

the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a

common policy or scheme."  *Myers*, 624 F.3d at 555 (quoting *Morgan v. Family Dollar Stores,

Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008)).

   At this initial stage, Plaintiffs face a "low standard of proof" and need only make a

"modest factual showing" that they and others are similarly situated.  *Myers,* 624 F.3d at 555

(internal quotations marks omitted).  This is because "the purpose of this first stage is merely to

determine *whether* 'similarly situated' plaintiffs do in fact exist. . . ."  *Id.*  Accordingly, at this

stage, "[w]eighing of the merits is absolutely inappropriate."  *Shajan*, 2010 WL 2218095, at *1;

*see also Diaz*, 2012 WL 137460, at *3 ("When evaluating whether court-authorized notice is

appropriate, 'the court does not resolve factual disputes, decide ultimate issues on the merits, or

make credibility determinations.'" (quoting *Davis v. Abercrombie & Fitch Co.*, No. 08 Civ.

1859, 2008 WL 4702840, at *9 (S.D.N.Y. Oct. 23, 2008))).

   Plaintiffs need not present a substantial record at this early stage.[6]  Plaintiffs are not

---

[6]    The showing that Plaintiffs must make at the initial conditional certification stage should
not be confused with the standard for class certification under Rule 23.  The Rule 23 standard is
"not relevant to an FLSA collective action."  *Diaz*, 2012 WL 137460, at *4.  Defendants may
argue that the Supreme Court's decision in *Dukes v. Wal-Mart*, 564 U.S. ___, 131 S.Ct. 2541,
(2011), should influence this Court's determination of whether conditional certification and
notice is appropriate.  Any such argument should be rejected.  Numerous courts in this Circuit
have held that *Dukes* has no bearing on FLSA conditional certification.  *See, e.g.*, *Winfield v.
Citibank, N.A.*, No. 10 Civ. 7304, 2012 WL 423346, at *9-10 (S.D.N.Y. Feb. 9, 2012) (granting
conditional certification in misclassification case challenging personal bankers' classification as

required to *prove* that they are similarly situated to their co-workers – they must only "show[] a reasonable basis" for their claim that other workers are similarly situated. *Morgan*, 551 F.3d at 1260 (internal quotation marks omitted). The proper focus at this stage is on Plaintiffs' evidence, not on any rebuttal evidence that Defendants may submit. *See Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, 2006 WL 2853971, at *3-4 (S.D.N.Y. Oct. 5, 2006) (holding that weighing the merits at the initial certification stage, before the parties had conducted much fact discovery, would be "inappropriate"). At the second stage, based upon a fuller record, the district court may determine that the plaintiffs who opted in are in fact not similarly situated and can decertify the collective. *Myers*, 624 F.3d at 555.

     **1.  The Core 1 Plaintiffs and Other Core 1 FSAs Are Similarly Situated With Respect to Their Off-The-Clock Claims.**

Core 1 FSAs are similarly situated with respect to the FLSA off-the-clock claim because they challenge a common policy and/or practice of setting performance targets that required Core 1 FSAs to work overtime hours in order to be able to reach them, but not allowing them to record all overtime hours worked. Courts in this Circuit and elsewhere have found plaintiffs to be similarly situated to potential opt-in plaintiffs where they allege that an employer had a common policy of encouraging overtime work to meet performance targets while strictly limiting the number of overtime hours that could be recorded. *See, e.g.*, *Winfield*, 2012 WL 423346, at *4-5 (granting conditional certification where plaintiffs presented evidence that defendant employed

---

exempt administrators and rejecting Defendant's argument that *Dukes* militated against conditional certification); *Pippins v. KPMG LLP*, No. 11 Civ. 377, 2012 WL 19379, at *7 (S.D.N.Y. Jan. 3, 2012) (granting conditional certification in misclassification case challenging audit associates' classification as exempt administrators and professionals and noting that "Dukes . . . is inapplicable in the FLSA context"); *Alli v. Boston Market Corp.*, No. 10 Civ. 4, 2011 WL 4006691, at *5 n.3 (D. Conn. Sept. 8, 2011) (granting conditional certification in misclassification case challenging assistant managers' classification as exempt executives and rejecting defendant's attempt to defeat certification through reliance on *Dukes*).

"dual-edged" policy of strictly limiting the amount of overtime that Personal Bankers could accrue while imposing rigorous sales quotas that could not feasibly be met in a forty-hour work week); *Levy v. Verizon Info. Servs., Inc.*, No. 06 Civ. 1583, 2007 WL 1747104, at *2, 4 (E.D.N.Y. June 11, 2007) (finding plaintiffs similarly situated where they alleged defendant encouraged them to work overtime in order to meet sales quotas but rarely approved overtime). In fact, under the much more stringent commonality requirement of Rule 23, the Seventh Circuit recently held that a class of hourly bank employees were similarly situated where they alleged that their employer enforced an unofficial policy denying them overtime pay similar to Merrill's practices challenged in this case. *See Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 909-10 (7th Cir. 2012).

*Winfield* is particularly instructive. In that case, plaintiffs alleged that "defendant employed a 'dual-edged' policy of strictly limiting the amount of overtime that Personal Bankers could accrue while imposing rigorous sales quotas that could not feasibly be met in a forty-hour work week." 2012 WL 423326, at *2. Although the defendant had a formal policy requiring that all overtime hours be recorded and paid, Judge Koeltl found that plaintiffs had submitted sufficient evidence that this "dual-edged" policy of high sales quotas and strict limits on overtime hours resulted in a de facto pattern of FLSA off-the-clock violations that supported granting conditional certification. *Id.* at *6-9.

In this case, all seven Named and Opt-in Plaintiffs have submitted declarations describing facts nearly identical to those in *Winfield*. Plaintiffs all state that Merrill set performance targets for them and other FSAs that could not reasonably be achieved by working a forty hour workweek. Ex. F (Hernandez Decl.) ¶ 11; Ex. G (Heston Decl.) ¶ 11; Ex. H (Steinberg Decl.) ¶ ; Ex. I (Gray Decl.) ¶ 10; Ex. J (Ebanks Decl.) ¶ 9; Ex. K (Rogers Decl.) ¶ 11; Ex. L (Reynolds

15

Decl.) ¶ 11.  They also state that Merrill strictly limited the number of overtime hours that they and other Core 1 FSAs could record.  Ex. F (Hernandez Decl.) ¶ 12; Ex. G (Heston Decl.) ¶ 12; Ex. H (Steinberg Decl.) ¶ 12; Ex. I (Gray Decl.) ¶ 11; Ex. J (Ebanks Decl.) ¶ 10; Ex. K (Rogers Decl.) ¶ 12; Ex. L (Reynolds Decl.) ¶ 12.  As a result, all of them and other Core 1 FSAs that they observed worked overtime hours but were not allowed to record them, and were not paid for them.  Ex. F (Hernandez Decl.) ¶ 12; Ex. G (Heston Decl.) ¶ 12; Ex. H (Steinberg Decl.) ¶ 12; Ex. I (Gray Decl.) ¶ 11; Ex. J (Ebanks Decl.) ¶ 10; Ex. K (Rogers Decl.) ¶ 12; Ex. L (Reynolds Decl.) ¶ 12.  The declarations also indicate that Merrill followed this practice at its Jacksonville and Hopewell call centers, strongly suggesting that it was a company-wide policy or pattern that affected all Core 1 FSAs nationwide.  Ex. F (Hernandez Decl.) ¶¶ 1, 12; Ex. G (Heston Decl.) ¶¶ 1, 12; Ex. H (Steinberg Decl.) ¶¶ 1, 12; Ex. I (Gray Decl.) ¶¶ 1, 11; Ex. J (Ebanks Decl.) ¶¶ 1, 10; Ex. K (Rogers Decl.) ¶¶ 1, 12; Ex. L (Reynolds Decl.) ¶ 1, 12; *see also Winfield*, 2012 WL 423346, at *7 (noting that testimony that off-the-clock violations occurred at multiple branches was sufficient to show that plaintiffs were similarly situated).

Here, Plaintiffs' seven declarations provide more than sufficient evidence to meet the minimal standard required for conditional certification.[7]  Courts in this District regularly grant

---

[7]      This is true even though Defendants substantially failed to respond to Plaintiffs' limited document requests, which the Court authorized Plaintiffs to propound on an expedited basis in its January 27, 2012 Order.  Miazad Decl. ¶ 7.  As of March 9, 2012, Plaintiffs have identified *only four documents* produced by Defendants that relate to class-wide issues and that do not otherwise relate to the individual named plaintiffs.  Miazad Decl. ¶ 12.  This is despite the fact that the Court reiterated that Defendants should produce responsive documents without delay in its February 24, 2012 Order.  Miazad Decl. ¶ 8.  On four separate occasions, following the Court's February 24th Order, Plaintiffs asked Defendants for a date by when they would produce responsive documents.  Miazad Decl. ¶ 10.  On March 8, 2012, Defendants for the first time stated that they would produce responsive corporate documents by March 16, 2012.  Miazad Decl. ¶ 11.  Rather than delay this Motion further and potentially diminish the value of Potential Opt-In Plaintiffs' claims, and because Plaintiffs believe that they exceed their low burden without any additional documents, Plaintiffs have submitted this Motion on schedule.  Plaintiffs

conditional certification based on one or two affidavits and little more.  *See, e.g., Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010) ("The Complaint and the Cohen Affidavit are sufficient to warrant preliminary certification of a collective action in this case."); *Francis v. A & E Stores, Inc.*, No. 06 Civ. 1638, 2008 WL 4619858, at *3-4 (S.D.N.Y. Oct. 16, 2008) (granting conditional certification based upon single affidavit and deposition testimony that job duties were similar at all stores); *Sipas v. Sammy's Fishbox, Inc.*, No. 05 Civ. 10319, 2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006) (conditionally certifying collective on basis of three affidavits and allegations in complaint).

This evidence more than amply satisfies Plaintiffs' light burden of showing that they are similarly situated.  *See Winfield*, 2012 WL 423346.

### 2.   The Experienced FSA Plaintiffs and Other Experienced FSAs Are Similarly Situated With Respect to Their Misclassification Claims.

The Experienced FSA Plaintiffs are also similarly situated in that they challenge Merrill's common policy of misclassifying Experienced FSAs as exempt.  Courts have found allegations of "blanket" classification policies like Merrill's, without much more, to meet the low threshold for conditional certification.  *See, e.g.*, *Pippins*, 2012 WL 19379, at *12 ("That [an employer] itself makes such a blanket determination is evidence that differences in the position, to the extent there are any, are not material to the determination of whether the job is exempt from overtime regulations." (quoting *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 159 (S.D.N.Y. 2008))) (internal quotation marks omitted); *Indergit v. Rite Aid Corp.*, Nos. 08 Civ. 9361, 08 Civ. 11364, 2010 WL 2465488, at *4 (S.D.N.Y. Jun. 16, 2010) ("It may be appropriate in some cases to find plaintiffs and potential plaintiffs similarly situated based simply on plaintiffs' 'substantial

respectfully reserve the right to seek leave from the Court to submit a reply brief containing additional evidence, if Defendants produce any, or if they submit documents to the Court in their Opposition that they had not previously produced to Plaintiffs.

allegations' that they and potential plaintiffs were common victims of a FLSA violation, particularly where defendants have admitted that the actions challenged by plaintiffs reflect a company-wide policy." (quoting *Damassia*, 2006 WL 2853971, at *3)); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 613 (C.D. Cal. 2005) ("Defendant cannot, on the one hand, argue that all [the employees at issue] are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each [class member] in order to determine whether that individual is exempt.").

Merrill's own corporate job description of the FSA position demonstrates its view that FSAs are factually similar. Ex. D (Experienced FSA Job Description). Merrill's external job listings also describe a uniform set of job duties regardless of geographic location and FSA job title. Ex. S (Job Postings). Moreover, Merrill's VCP and performance evaluations demonstrate that it measures and rewards FSAs for executing these uniform job duties. Ex. N (VCP); Ex. Q (Performance Evaluations). The VCP also applies to all FSAs regardless of their geographic location and FSA job title. Ex. N (VCP). In addition, each Plaintiff's declaration describes an almost identical set of job duties consisting of customer service and sales tasks. Ex. F (Hernandez Decl.) ¶ 5; Ex. G (Heston Decl.) ¶ 5; Ex. H (Steinberg Decl.) ¶ 5; Ex. I (Gray Decl.) ¶ 4; Ex. J (Ebanks Decl.) ¶ 4; Ex. K (Rogers Decl.) ¶ 5; Ex. L (Reynolds Decl.) ¶ 5. Plaintiffs who held multiple FSA job titles also report that they were able to move between these positions without any retraining, which further establishes that they were similarly situated to all other Experienced FSAs regardless of job title. Ex. F (Hernandez Decl.) ¶ 3; Ex. H (Steinberg Decl.) ¶ 3; Ex. K (Rogers Decl.) ¶ 3.

Courts routinely grant conditional certification in similar misclassification cases where plaintiffs present similar job descriptions and other evidence of common job duties. *See, e.g.*,

*Morgan*, 551 F.3d at 1270 (relying in part on store managers' job descriptions and list of "essential job functions" in affirming collective action certification and jury verdict in favor of entire FLSA collective); *Pippins*, 2012 WL 19379, at *9-10 (finding that common job description and plaintiffs' testimony that they had similar job duties, among other factors, meant that plaintiffs were similarly situated); *Cruz v. Hook-SuperRx, LLC*, No. 09 Civ. 7717, 2010 WL 3069558, at *2 (S.D.N.Y. Aug. 5, 2010) (holding that plaintiffs' declaration testimony that they performed similar job duties was sufficient to demonstrate that they were similarly situated); *Cohen*, 686 F. Supp. 2d at 330-31 (granting conditional certification based on complaint and affidavit alleging that plaintiff and potential opt-ins had similar job duties and were classified as exempt); *Indergit*, 2010 WL 2465488, at *3 (finding that evidence that "all ASMs perform basically the same duties, are sufficient at this stage to meet Plaintiff's burden"); *Damassia*, 2006 WL 2853971 at *4 (concluding that plaintiff assistant store managers were similarly situated to opt-in class because none performed primarily managerial duties and all were uniformly classified as exempt).  The Seventh Circuit has also found that similar allegations and evidence that the employer misclassified assistant branch managers as exempt administrators met the much higher commonality standard of Rule 23.  *See Ross*, 667 F.3d at 909-10.  Here, where Plaintiffs have identified a common job description from Merrill's own corporate documents, external job postings listing virtually identical job descriptions, and declarations from seven former employees attesting to job duties that were virtually the same, Plaintiffs have produced more than sufficient evidence to meet the minimal burden of showing that the Experienced FSA Plaintiffs and other Experienced FSAs are similarly situated.

Merrill may claim that its exemption defenses preclude a collective action because they require "fact-specific inquiries" of the tasks that every FSA performed each day.  "This argument

ignores the purposes of the FLSA." *Indergit*, 2010 WL 2465488, at \*9.  "Just because the inquiry is fact-intensive does not preclude a collective action where plaintiffs share common job traits." *Morgan*, 551 F.3d at 1263.  "[S]ection 216(b) clearly applies to misclassification claims as well as other FLSA claims.  Had Congress intended to exclude misclassification claims from collective actions, it would have done so." *Perkins v. S. New England Tel. Co.,* 669 F. Supp. 2d 212, 218 (D. Conn. 2009).[8]

Similarly, Merrill may also claim that FSAs' job duties varied significantly from location to location or from job title to job title.  It may also cite dozens of declarations it has gathered from its current——and captive—FSAs, as well as other evidence to which Plaintiffs have not had access and/or an opportunity to challenge.  This evidence would not defeat conditional certification for three reasons.

First, it is premature at this early stage.  At this point, Plaintiffs only need to make a "modest factual showing" that they and the potential opt-ins were subject to a common policy that violated the FLSA.  *Cohen*, 686 F. Supp. 2d at 326.  Any evidence that Merrill submits can "[a]t most . . . raise questions as to whether [P]laintiffs could prevail under a more stringent standard and whether the opt-in plaintiffs will survive a decertification motion at the close of discovery." *Damassia*, 2006 WL 2853971, at \*5.  Such arguments are "inappropriate" at the initial stage of determining whether to conditionally certify a FLSA class.  *Id.* at \*4.

---

[8]      Accordingly, courts in this District have soundly rejected the argument that the fact-intensive nature of exemption defenses precludes conditional certification. *Cohen*, 686 F. Supp. 2d at 329 (listing cases); *see also Pippins*, 2012 WL 19379, at \*16 (conditionally certifying nationwide collective of audit associates); *Cruz*, 2010 WL 3069558, at \*2 (conditionally certifying nationwide collective of assistant store managers); *Indergit*, 2010 WL 2465488, at \*10 (granting conditional certification of class of misclassified drug store managers and assistant managers); *Francis*, 2008 WL 4619858, at \*4 (granting conditional certification of class of misclassified retail store assistant managers); *Damassia*, 2006 WL 2853971, at \*7-8 (granting conditional certification of class of drug store assistant managers); *Gjurovich*, 282 F. Supp. 2d at 104-05 (granting conditional certification of misclassified supermarket workers).

At the second stage, Merrill will have "ample opportunity" to demonstrate that Plaintiffs' case should not proceed as a collective action. *Pippins*, 2012 WL 19379, at *5; *Damassia*, 2006 WL 2853971, at *7; *see also Aros v. United Rentals, Inc.*, 269 F.R.D. 176, 180 (D. Conn. 2010) (declining to review declarations submitted by defendant at conditional certification stage). At that point, the Court can weigh Merrill's evidence against Plaintiffs' evidence and decide whether the collective should survive. *Myers*, 624 F.3d at 555. The proper focus for now is on Plaintiffs' submission and whether it meets the low burden required for conditional certification to issue.

Second, the standard defense argument—that no two workers are alike and the Court must undertake an individualized, person-by-person analysis to resolve the case—is undermined here by the fact that Merrill classified all FSAs as exempt in one fell swoop, apparently without examining each of their actual job duties. Ex. F (Hernandez Decl.) ¶ 14; Ex. G (Heston Decl.) ¶ 14; Ex. H (Steinberg Decl.) ¶ 14; Ex. J (Ebanks Decl.) ¶ 12; Ex. K (Rogers Decl.) ¶ 14; Ex. L (Reynolds Decl.) ¶ 13; Ex. R (Workforce Reports). As a result, all FSAs' claims "are based on the same course of events and legal theory," namely that Merrill's "decision to classify its [relationship] managers as 'exempt' is inconsistent with the requirements of the FLSA." *Damassia*, 250 F.R.D. at 158. Merrill's decision to classify FSAs as exempt "constitutes a common scheme or plan that renders all [FSAs] similarly situated for FLSA purposes." *Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 106 (D. Conn. 2007). Any differences among FSAs' duties were clearly "not material" to Merrill's "determination of whether the job is exempt from overtime requirements." *Damassia*, 250 F.R.D. at 159. It would be "disingenuous" for Merrill, "on one hand, to collectively and generally decide that all [FSAs] are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming

21

that plaintiffs cannot proceed collectively to challenge the exemption." *See Nerland v. Caribou Coffee Co. Inc.,*, 564 F. Supp. 2d 1010, 1024 (D. Minn. 2007); *see also Indergit*, 2010 WL 2465488, at \*9-10; *Morgan*, 551 F.3d at 1263; *Pendlebury v. Starbucks Coffee Co.*, 518 F. Supp. 2d 1345, 1352 (S.D. Fla. 2007).

Third, even where the defendants assert an FLSA exemption defense, conditional certification does not require "that the prospective class members all performed the same duties." *Cano v. Four M Food*, No. 08 Civ. 3005, 2009 WL 5710143, at \*7 (E.D.N.Y. Feb. 3, 2009). Potential opt-in plaintiffs are not required to show that their duties were identical to meet the similarly situated standard.  *Indergit*, 2010 WL 2465488, at \*8 ("Indergit is not required to demonstrate at this early stage that his duties were identical to those of all other store managers. Instead, he must show that he was similarly situated to other store managers with respect to the claimed violation of the FLSA." (*citing Damassia*, 2006 WL 2853971, at \*5)).  In similar misclassification cases, courts have conditional certified collectives even where there were differences among employees' locations, clientele, and job duties.  *Id.* (finding that unique characteristics of each store and difference in stores' clientele, among other factors, provided no basis for denying conditional certification); *Damassia*, 2006 WL 2853971, at \*6 (noting that differences in plaintiffs' authority to arrange store displays, among other factors, were "hardly relevant" to whether plaintiffs and opt-ins were common victims of unlawful misclassification). In this case, Plaintiffs have amply shown that they are similarly situated to the putative class of FSAs.

**D.    The Court Should Approve Plaintiffs' Proposed Notice.**

Plaintiffs request that the Court authorize them to send the Proposed Notice, attached to the Miazad Declaration as Exhibit U, to all individuals who have worked as Merrill FSAs at any

time between November 22, 2008 and the present ("Potential Opt-In Plaintiffs"). Plaintiffs' proposed notice is "timely, accurate, and informative," and therefore should be approved. *Hoffmann-La Roche*, 493 U.S. at 172.

The Court should also authorize Plaintiffs to send a second Court-authorized reminder notice part-way through the claims period. It is well-documented that people often disregard collective action notices. *See* Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 295 (2008). Courts regularly authorize reminder notices in order to increase the chance that workers will be informed of their rights.[9] Defendants have no reason to oppose a reminder mailing other than that it may increase the participation rate, which is not a good reason. Plaintiffs will bear the cost of the reminder mailing, and the reminder mailing will not change the end of the notice period. Defendants will not be prejudiced at all.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court: (1) conditionally certify this case as a collective action; (2) order Merrill to produce a computer-readable data file containing all Potential Opt-In Plaintiffs' names, social security numbers, last known mailing addresses, last known telephone numbers, last known email addresses, work locations, job titles,

---

[9]    *See, e.g., Li v. Health Plus Prepaid Health Servs. Plan, Inc.*, No. 10 Civ. 1843 (S.D.N.Y. Dec. 20, 2010) (approving second notice) (attached to the Miazad Declaration as Exhibit V); *Ravenell v. Avis Budget Grp., Inc.*, No. 08 Civ. 2113 (E.D.N.Y. Sept. 29, 2010) (approving a second mailing 30 days before end of opt-in period) (attached to the Miazad Declaration as Exhibit W); *Stillman v. Staples, Inc.*, No. 07 Civ. 849 (D.N.J. July 3, 2008) (approving a second mailing where plaintiffs bore the cost and there was no showing of prejudice to defendant) (attached to the Miazad Declaration as Exhibit X); *Adams v. Inter-Con Sec. Sys., Inc.*, No. 06 Civ. 5428, 2007 WL 3225466, at *5 (N.D. Cal. Oct. 30, 2007) (ordering the mailing of a "reminder card" to all class members who did not submit a claim form 14 days before the end of the claims period); *but see Ellerd v. Cnty. of Los Angeles,* No. 08 Civ. 4289, 2010 WL 2998801, at *2 (C.D. Cal. July 28, 2010) (declining Plaintiffs' request to send additional mailing to collective members).

and dates of employment; (3) authorize the issuance of Plaintiffs' proposed notice to all Potential

Opt-In Plaintiffs by U.S. Mail and email, *see Pippins*, 2012 WL 19379, at *14 (authorizing

notice by both U.S. Mail and email); *Fasanelli*, 516 F. Supp. 2d at 324 (ordering defendants to

provide e-mail addresses for notice purposes);[10] and (4) order Merrill to post the notice at the

work locations of all Potential Opt-In Plaintiffs, *see Whitehorn v. Wolfgang's Steakhouse, Inc.*,

767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) ("Courts routinely approve requests to post notice on

employee bulletin boards and in other common areas, even where potential members will also be

notified by mail."); *Moung Su Kim v. Kap Sang Kim*, No. 10 Civ. 2515, 2010 WL 2854463, at *1

(E.D.N.Y. July 19, 2010) (approving the posting of notice and sample consent form in each of

defendant's business locations).

Dated: March 9, 2012
　　　New York, New York

<div style="margin-left: 40%;">

Respectfully submitted,

**OUTTEN & GOLDEN LLP**
By:

/s/ Ossai Miazad

Justin M. Swartz
Ossai Miazad
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  212-245-1000
Facsimile: (212) 977-4005
jms@outtengolden.com
om@outtengolden.com
jliu@outtengolden.com

</div>

---

[10]　　*See also* Robert H. Klonoff, et. al., *Making Class Actions Work: The Untapped Potential of the Internet*, 69 U. Pitt. L. Rev. 727, 749 (2008) ("[A]s courts accept the idea that internet notification is often more likely than hard-copy notice to reach the targeted populations, internet notifications may begin to replace, in addition to simply supplementing, traditional notice programs").

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
1515 South Federal Highway, Suite 404
Boca Raton, FL 33432
Telephone: (561) 447-8888
Facsimile: (561) 447-8831

***Attorneys for Plaintiffs and the Putative
Class and Collective***

25