UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

RENE HERNANDEZ, REBECCA HESTON, JEFFREY :
STEINBERG, TRINITY GRAY, ERIC EBANKS, :
and WILLIAM ROGERS, individually and on :
behalf of all others similarly :
situated, :

                       Plaintiffs :

               -v- :

MERRILL LYNCH & CO., INC., MERRILL :
LYNCH, PIERCE, FENNER & SMITH, INC., :
and BANK OF AMERICA CORPORATION, :

                    Defendants. :

------------------------------------- X

11 Civ. 8472 (KBF)

MEMORANDUM & ORDER

KATHERINE B. FORREST, District Judge:

    Plaintiffs Rene Hernandez, Rebecca Heston, Jeffrey

Steinberg, Trinity Gray, Eric Ebanks, and William Rogers

("plaintiffs" or "named plaintiffs"), and opt-in plaintiff Betty

Reynolds seek relief from their former employer under the Fair

Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the

New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a et seq.

("NJWHL"). (See Am. Compl. (Dkt. No. 14) ¶¶ 2, 86-10.) Boiled

to its essence, this case is about defendants Merrill Lynch &

Co., Inc.'s, Merrill Lynch, Pierce, Fenner & Smith, Inc.'s, and

Bank of America Corporation's[1] alleged purposeful

---

[1] Plaintiffs refer to defendants collectively as "Merrill." For ease of
reference, in some places the Court refers to defendants collectively in the
same way.

(mis)classification of their Financial Solutions Advisor ("FSA") employees as "exempt" under the FLSA and parallel state employment laws, thereby allegedly depriving FSAs of overtime pay for hours worked in excess of forty per week. (See id. ¶ 65.)

On March 9, 2012, plaintiffs moved for "conditional certification" to proceed as a collective action under § 216(b) of the FLSA and sought authorization to disseminate notice to other putative class members. (Dkt. No. 25.) On March 29, 2012, defendants opposed the motion. (Dkt. No. 28.) The motion was fully submitted as of that date.

For the reasons set forth below, plaintiffs' motion is GRANTED, subject to the modifications to its proposed form of notice imposed by the Court.

BACKGROUND

Plaintiffs were previously employed by defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPFS") as non-exempt Core 1 FSAs, exempt Experienced (also called "Core 2") FSAs, and/or other types of FSAs with various titles. (See Am. Compl. ¶¶ 15, 19, 23, 27, 31, 35; see also Decl. of Rene Hernandez ("Hernandez Decl.") (Dkt. No. 27-6) ¶¶ 1, 3; Decl. of Rebecca Heston ("Heston Decl.") (Dtk. No. 27-7) ¶¶ 1, 3; Decl. of Jeffrey Steinberg ("Steinberg Decl.") (Dkt. No. 27-8) ¶¶ 1, 3; Decl. of Trinity Gray ("Gray Decl.") (Dkt. No. 27-9) ¶¶ 1, 3;

2

Decl. of Eric Ebanks ("Ebanks Decl.")(Dkt. No. 27-10) ¶¶ 1, 2;
Decl. of William Rogers ("Rogers Decl.") (Dkt. No. 27-11) ¶¶ 1,
3; Decl. of Betty Reynolds ("Reynolds Decl.")(Dkt. No. 27-12)
¶¶ 1, 3; Decl. of Diane Van Natta in Support of Defs.' Opp'n to
Pls.' Mot. ("Van Natta Decl.") (Dkt. No. 30) ¶¶ 29, 31, 33, 34,
35, 36, 37.)[2]

MLPFS is a self-described "financial management and
services company that provides financial advice and investment
banking services." (Van Natta Decl. ¶ 2.)  MLPFS, through
Merrill Edge (a marketing tool), provides both a "self-directed
online investing platform," as well as the Merrill Edge Advisory
Center ("MEAC"), through which it offers financial investment
advice. (Id. ¶¶ 2, 3.) MEAC employs FSAs (formerly referred
to, as all parties agree, as Investment Services Advisors
("ISAs")) through which they provide this person-to-person
advice. (Id. ¶ 6.) MEAC has three call centers nationwide at
which they employ FSAs--i.e., Jacksonville, FL, Hopewell, NJ,
and Chandler, AZ. (Id. ¶ 8.) Plaintiffs Hernandez, Heston,
Steinberg, Ebanks, Rogers, and opt-in plaintiff Reynolds worked
at defendants' call center in Jacksonville, Florida. (Hernandez
Decl. ¶ 1; Heston Decl. ¶ 1; Steinberg Decl. ¶ 1; Ebanks Decl.

---

[2] Despite having only worked for MLPFS, plaintiffs have named as defendants
MLPFS's parent company, Merrill Lynch & Co., Inc., and its "ultimate parent
company," Bank of America Corporation. (Am. Compl. ¶¶ 1, 3, 4, 39, 41; Defs.
Mem. of Law In Opp'n to Pls.' Mot. for Conditional Cert. & Court-Authorized
Notice ("Defs. Opp'n") (Dkt. No. 28) at 1 n.2.)

¶ 1; Rogers Decl. ¶ 1; Reynolds Decl. ¶ 1.)   Plaintiff Trinity
Gray worked at the call center in Hopewell, New Jersey.   (Gray
Decl. ¶ 1.)   Plaintiffs estimate that there were approximately
100 employees at each of the Jacksonville, FL and Hopewell, NJ
call centers.   (See, e.g., Reynolds Decl. ¶ 14; Gray Decl. ¶ 12;
Steinberg Decl. ¶ 15.)

Merrill provided training to their FSAs on certain types of
products and services to be offered to clients seeking financial
advice--as well as on the circumstances in which each of those
products and services should be offered.   (See, e.g., Hernandez
Decl. ¶ 6; Heston Decl. ¶ 6; Ebanks Decl. ¶ 5.)[3]   Merrill FSAs
were to conduct their duties in accordance with Merrill's
guidelines and processes as set forth in Merrill's official
materials.   (See, e.g., Hernandez Decl. ¶ 8; Ebanks Decl. ¶ 7.)
In addition, Merrill trained their FSAs in their policies, which
included, according to plaintiffs' sworn declarations, "policies
that restricted the kinds of investments [FSAs] could suggest to
clients, depending on their risk profile."   (Hernandez Decl.
¶ 7; see also, e.g., Gray Decl. ¶ 6; Rogers Decl. ¶ 7.)
Merrill's policies permitted FSAs to recommend only "certain
pre-approved investments."   (See, e.g., Gray Decl. ¶ 6; Reynolds
Decl. ¶ 7.)   Merrill restricted its FSAs from offering certain

---

[3] For purposes of efficiency, in certain places the Court cites examples of
plaintiffs' declarations in support of a fact.  All of the sworn declarations
submitted by plaintiffs are the same in nearly all material respects,
however.

types of securities to MEAC clients.  (See, e.g., Heston Decl. ¶ 7; Steinberg Decl. ¶ 7.)  The FSAs performed their jobs using Merrill-mandated "tools and computer systems."  (See, e.g., Reynolds Decl. ¶ 9; Rogers Decl. ¶ 9.)  The training, guidelines, restrictions, and tools together purportedly precluded FSAs from exercising any independent judgment "about what investment or financial planning advice to give clients." (Hernandez Decl. ¶ 7; Heston Decl. ¶ 7; Steinberg Decl. ¶ 7; Gray Decl. ¶ 7; Ebanks Decl. ¶ 6; Rogers Decl. ¶ 7; Reynolds Decl. ¶ 7.)

Merrill set performance goals for its FSAs--Core 1 and otherwise--which were "nearly impossible to meet" "without working substantial overtime hours."  (Hernandez Decl. ¶ 11; Heston Decl. ¶ 11; Steinberg Decl. ¶ 11; Gray Decl. ¶ 10; Ebanks Decl. ¶ 9; Rogers Decl. ¶ 11; Reynolds Decl. ¶ 11.)  Plaintiffs concede, however, that management allowed FSAs to record overtime "on occasion," but only for a specific number of hours and not in excess of that number whereas other times recordation of (and attendant pay for) overtime was prohibited.  (Hernandez Decl. ¶ 12; Heston Decl. ¶ 12; Steinberg Decl. ¶ 12; Gray Decl. ¶ 11; Ebanks Decl. ¶ 10; Rogers Decl. ¶ 12; Reynolds Decl. ¶ 12.)  Plaintiffs Hernandez, Heston, Steinberg, Gray, and Reynolds contend that during the relevant period, they worked more than 40 hours per week for Merrill as Core 1 FSAs, but were

not permitted to record all of the overtime hours worked, and
were not paid for all overtime.  (Hernandez Decl. ¶¶ 10, 12;
Heston Decl. ¶¶ 10, 12; Steinberg Decl. ¶¶ 10, 12; Gray Decl.
¶¶ 9, 11; Reynolds Decl. ¶¶ 10, 12.)  Plaintiffs Hernandez,
Heston, Steinberg, Ebanks, and Rogers contend the same for the
time they worked as Experienced (Core 2) FSAs.  (Hernandez Decl.
¶¶ 10, 13; Heston Decl. ¶¶ 10, 13; Steinberg Decl. ¶¶ 10, 13;
Ebanks Decl. ¶¶ 8, 11; Rogers Decl. ¶¶ 10, 13.)  Plaintiffs aver
that other FSAs similarly went uncompensated for certain
overtime worked.  (See, e.g., Hernandez Decl. ¶ 12; Steinberg
Decl. ¶ 12; Gray Decl. ¶ 11.)

DISCUSSION

I.   LEGAL STANDARD

     Section 216(b) of the FLSA authorizes employees to maintain
collective actions to recover damages for unpaid wages where all
employees are "similarly situated."  29 U.S.C. § 216(b).
"Similarly situated" employees must "opt in" to an action by
filing a "consent in writing to become [] a party" to the
action.  Id.  "'[D]istrict courts have discretion, in
appropriate cases, to implement § 216(b) by facilitating notice
to potential plaintiffs of the pendency of the action and of
their opportunity to opt-in as represented plaintiffs.'"  Myers
v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010) (quoting

6

Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989))
(brackets and alterations omitted).

Authorization of notice--frequently termed certification of
a "collective action" (a term which does not have basis in
§ 216(b) or Supreme Court precedent)[4]--is a two-step process in
the Second Circuit. See Myers, 624 F.3d at 554-55. Notably, it
is not the same process as notice to class members under Rule 23
of the Federal Rules of Civil Procedure.

With respect to notice under the FLSA, the first step
requires the court to determine whether notice should be sent to
"potential opt-in plaintiffs who may be 'similarly situated' to
the named plaintiffs with respect to whether a FLSA violation
has occurred." Id. The burden rests with the plaintiff to
demonstrate that he is "similarly situated" with other putative
class members. Solomon v. Adderly Indus., Inc., --- F. Supp. 2d
---, 2012 WL 716197, at *1 (S.D.N.Y. Mar. 6, 2012). That burden
may be satisfied with a "modest factual showing" that the
plaintiff and potential opt-in plaintiffs "'together were
victims of a common policy or plan that violated the law.'"
Myers, 624 F.3d at 555 (quoting Hoffman v. Sbarro, Inc., 982

---

[4] A motion for conditional "certification" is a creation of FLSA litigation
practice--it does not have any basis in the FLSA itself or in the Federal
Rules of Civil Procedure. Henderson v. Transp. Grp., Ltd., No. 09 Civ. 7328,
2010 WL 2629568, at *3 n.3 (S.D.N.Y. July 1, 2010). "Conditional
certification" simply allows district courts to authorize and/or facilitate
the sending of notice to potential class members. Myers, 624 F.3d at 555
n.10. Accordingly, the Court will refer to plaintiffs' motion here as one
seeking court-authorized notice. See Henderson, 2010 WL 2629568, at n.3.

F.Supp. 249, 261 (S.D.N.Y. 1997)); see also Diaz v. S&H Bondi's
Dep't Store, Inc., No. 10 Civ. 7676, 2012 WL 137460, at *3
(S.D.N.Y. Jan. 18, 2012) ("The 'modest factual showing'
requirement is met where plaintiffs offer substantial
allegations of a factual nexus between them and potential opt-in
plaintiffs with regard to their employer's alleged FLSA
violation" (quotation marks, citations, and alterations
omitted)).   Through affidavits (and even hearsay statements),
plaintiffs can make the required showing by demonstrating that
"there are other employees . . . who are similarly situated with
respect to their job requirements and with regard to their pay
provisions." Solomon, 2012 WL 716197, at *1; see also Winfield
v. Citibank, N.A., --- F. Supp. 2d ---, 2012 WL 423346, at *3,
*4 (S.D.N.Y. Feb. 9, 2012).   That standard is plainly different
from, and less demand than, certification of a class action
under Rule 23.

    In making its first-step determination about the propriety
of court-authorized notice, "the court does not resolve factual
disputes, decide ultimate issues on the merits, or make
credibility determinations." Diaz, 2012 WL 137460, at *3;
accord Winfield, 2012 WL 423346, at *3; see also Solomon, 2012
WL 716197, at *3 ("a fact-intensive inquiry is inappropriate at
the notice stage, as Plaintiffs are seeking only conditional
certification"); Raniere v. Citigroup Inc., --- F. Supp. 2d ---,

2011 WL 5881926, at *25 (S.D.N.Y. Nov. 22, 2011) ("A person-by-person fact-intensive inquiry is premature at the conditional certification stage and has been specifically rejected by courts within this Circuit." (collecting cases)).  Conclusory or "unsupported assertions" cannot buttress the required "modest factual showing," "but it should remain a low standard a proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." Myers, 624 F.3d at 555 (citation omitted).  Upon finding that plaintiffs are "similarly situated" with other potential opt-ins, a court "should conditionally certify the class, order that appropriate notice be given to putative class members, and the action continue as a collective action throughout the discovery process." Winfield, 2012 WL 423346, at *3 (quotation marks omitted).

     The burden imposed at this first "conditional certification" stage is minimal precisely because the second step allows for a full review of the factual record developed during discovery to determine whether opt-in plaintiffs are actually "similarly situated" to the named plaintiffs. Myers, 624 F.3d at 555.  If the court finds that the record shows all putative class members are similarly situated, the collective action is finally certified, the "conditional" aspect is removed, and the matter proceeds to trial. See Canales v. 115

Broadway Corp., No. 09 Civ. 4674, 2009 WL 3029333, at *2
(S.D.N.Y. Sept. 22, 2009). "The action may be 'de-certified' if
the record reveals that they are not, and the opt-in plaintiffs'
claims may be dismissed without prejudice." Myers, 624 F.3d at
555.

II.  AUTHORIZATION OF NOTICE

     The instant motion seeking court-authorized notice
implicates only the first step in the "similarly situated"
inquiry.  The threshold to be met is therefore quite low.  After
reviewing the Amended Complaint as well as the affidavits
submitted by six plaintiffs and one opt-in plaintiff, the Court
finds that plaintiffs have satisfied their minimal burden of
showing--at this preliminary stage--that they are "similarly
situated" with other potential opt-in plaintiffs.  As set forth
above, plaintiffs all attest that they were employed by Merrill
as FSAs (non-exempt Core 1 and/or Core 2), but were not always
compensated for overtime worked and that they are aware of other
FSAs who similarly worked overtime but were not compensated.
They further aver that overtime was effectively required in
order to meet the performance goals Merrill set for the FSAs,
regardless of any policies that Merrill had about the requisite
work week or overtime.  Courts have found plaintiffs "similarly
situated" in analogous circumstances.  See Winfield, 2012 WL
423346, at *4; see also Raniere, 2011 WL 5881926, at *26

10

("Plaintiffs' [a]ffidavits are sufficiently similar and detailed to constitute a preliminary showing that they and other potential plaintiffs together were victims of a common policy or plan . . . ."); Diaz, 2012 WL 137460, at *4 ("[I]n submitting affidavits from Diaz and four other Bondi's employees . . . Plaintiffs have satisfied their minimal burden of showing that similarly situated employees exist." (citations and alterations omitted)).

Defendants make a number of arguments in opposition to the motion for authorization of notice--e.g., that MLPFS has a company-wide policy requiring recordation of overtime (with attendant compensation), that plaintiffs failed to proffer evidence of a "de facto policy" allowing (or requiring) unrecorded overtime, that plaintiffs' claims will require a person-by-person analysis, and that plaintiffs cannot show that Merrill's "exempt" classification was in error.  (See Defs. Mem. of Law In Opp'n to Pls.' Mot. for Conditional Cert. & Court-Authorized Notice ("Defs. Opp'n") (Dkt. No. 28) at 11-20.)

Rather than engage in a lengthy discussion of each, suffice it to say that none defeats the required "modest showing" because all would require the Court to resolve factual disputes or make credibility determinations.  As discussed above, such a judicial exercise would be inappropriate on this motion at this first stage.  See Diaz, 2012 WL 137460, at *3; Winfield, 2012 WL

423346, at *3.  In particular, weighing the affidavits submitted by employees on both sides of the action--i.e., affidavits from the named plaintiffs as well as affidavits from employees submitted on defendants' behalf--"would require the Court to determine the facts, determine the credibility of the affiants, and resolve legal contentions, all of which the conditional certification and potential later decertification process is structure so as to avoid."  Raniere, 2011 WL 5881926, at *26.

Accordingly, the Court finds that plaintiffs have satisfied their minimal burden, and will allow them to proceed with disseminating notice to other potentially "similarly situated" members of the putative class.[5]

III. FORM OF NOTICE

Plaintiffs have submitted a proposed form of notice (Decl. of Ossai Miazad (Dkt. No. 27) Ex. U), to which defendants lob a number of objections, without citing any caselaw or other

---

[5] Defendants repeatedly cite Eng-Hatcher v. Sprint Nextel Corp., No. 07 Civ. 7350, 2007 WL 7311383 (S.D.N.Y. Nov. 13, 2009), in opposition to plaintiffs' motion.  (See, e.g., Defs. Opp'n at 12, 13, 14, 15.)  The motion considered in Eng-Hatcher is readily distinguishable from the one before this Court.

There, the plaintiff had the benefit of four months of discovery in which she "conducted several depositions and received hundreds of documents from Defendants."  See 2007 WL 7311383, at *1.  Here, plaintiffs have had a limited period of time in which to engage in document discovery related only to the "similarly situated" question, have not conducted any depositions, and have, by their own account, received significantly less than "hundreds of documents" from defendants.

In addition, the plaintiff in Eng-Hatcher supported her motion for authorized noticed with her own deposition testimony only.  2007 WL 7311383, at *3. Here, plaintiffs have filed seven affidavits in support of their motion, as well as other documents.

12

authority. (See Defs. Opp'n at 22-25.) The Court will address those objections seriatim.

First, defendants argue that the notice improperly informs potential opt-in plaintiffs that they are "similarly situated" to plaintiffs. (Defs. Opp'n at 23; see Ex. U at 2.) The Court agrees that the sentence including that language--i.e., under the heading "Why is this lawsuit a Collective Action?," the notice reads, in pertinent part, "Specifically, the Court found that the Plaintiffs who filed this lawsuit are 'similarly situated' to other FSAs employed by Merrill"--provides a tenor of authority that may sway or influence potential opt-in plaintiffs receiving the notice. As a factual and procedural matter, it has also not been determined as a matter of law at this stage. Accordingly, that sentence should be stricken. Cf. Gani v. Guardian Serv. Indus. Inc., No. 11 Civ. 4433, 2011 WL 167844, at *2 (S.D.N.Y. Jan. 13, 2011).

Second, defendants seek to have the notice include an "adequate" description of their "position and their defenses asserted in this action," but fail to provide any alternative language. (Defs. Opp'n at 23.) In review of the proposed notice, it is clear that plaintiffs' description of their case is lengthier than the description of defendants' position. (Compare Ex. U at 2 with Ex. U at 3.) Courts in this Circuit have found proportionality the key to assessing whether a

13

proposed notice adequately captures the defendant's position.

Cf. Delaney v. Geisha, LLC, 261 F.R.D. 55, 59 (S.D.N.Y. 2009);

Rosario v. Valentine Ave. Discount Store, Co., Inc., --- F.

Supp. 2d ---, 2011 WL 5244965, at *10 (E.D.N.Y. Nov. 2, 2011).

Defendants should provide proposed alternative language to

plaintiffs' counsel within seven days of the date of this

Memorandum & Order, with proportionality as the correct

touchstone.  If the parties are unable to agree on the language,

they should submit both alternatives to the Court no later than

14 days after the date of this Memorandum & Order for it to make

a determination as to which description should be included.

Third, defendants seek to have stricken the language

regarding retaliation.  (Defs. Opp'n at 23; see Ex. U at 4.)  It

is appropriate as a general matter to include anti-retaliation

language in these types of notices, regardless of whether the

complaint contains allegations of retaliation.  See Hallisey v.

Am. Online, Inc., No. 99 Civ. 3785, 2008 WL 465112, at *4

(S.D.N.Y. Feb. 19, 2008).  The now-included language regarding

retaliation is worded in such a way that it could raise

questions in the minds of recipients of the notice.  The

language shall be changed to read:  "Federal law prohibits

[insert names of defendants] from discharging or in any other

manner discriminating against you because you 'opt-in' to this

case, or have in any other way exercised your rights under the
Fair Labor Standards Act."

Fourth, defendants state the notice is deficient because it
"does not require each opt-in to respond to Defendants' written
discovery requests." (Defs. Opp'n at 23.)  That observation is
misplaced.  In the section entitled, "What happens if I join the
lawsuit," the notice clearly states: "While this suit is
pending, you may be asked to provide documents or information
relating to your employment, or otherwise participate in written
and/or oral discovery proceedings and/or in a trial of this
matter."  (Ex. U at 4 (emphasis added).)  That is precisely what
has been required by other district courts in this Circuit.  See
Siewmungal v. Nelson Mgmt. Grp. Ltd., No. 11 cv 5018, 2012 WL
715973, at *4 (E.D.N.Y. Mar. 3, 2012); Bah v. Shoe Mania, Inc.,
No. 08 Civ. 9380, 2009 WL 1357223, at *4 (S.D.N.Y. May 13,
2009); Hallisey, 2008 WL 465112, at *4.

Defendants similarly contend that the notice should inform
plaintiffs that they may have to travel to New York for
depositions or trial.  The above-cited cases do not impose any
such statement in the notice and the Court will not do so here.

Fifth, defendants believe the specific locations at which
plaintiffs worked--i.e., Jacksonville, FL and Hopewell, NJ--
should be included in the notice (again, without citing any
authority).  This is presumably to infer to potential opt-in

15

plaintiffs that FSAs at the Chandler, AZ call center are not included in this action.  Plaintiffs couch their allegations in terms of a nationwide class, however.  Accordingly, defendants' request in this regard is denied.  Cf. Harrington v. Educ. Mgmt. Corp., No. 02 Civ. 0787, 2002 WL 1009463, at *2 (S.D.N.Y. May 17, 2002).

Sixth, defendants seek to have descriptions of the different FSA (and other) positions included in the notice.  The Court finds this request a pretext for having recipients of the notice infer the alleged factual differences as among the various FSA positions.  Defendants ultimately would be able to address any such differences on a motion for de-certification at the second stage of the proceedings.  As is clear from the posture of this motion, this case is at an earlier stage.  There is no need to set forth such descriptions in the notice and thus, the request is denied.

Seventh, defendants object to the fact that the notice informs potential opt-in plaintiffs that they can contact plaintiffs' counsel before they have retained counsel.  (Defs. Mem. at 23.)  Presumably defendants are referring to the footer at the notice stating, "Questions?  Contact Jennifer Liu at Outten & Golden LLP . . . ."  (See Ex. U.)  Notices with similar footers have been approved recently by district courts in this Circuit.  See, e.g., Pippins v. KPMG LLP, No. 11 Civ. 377

(S.D.N.Y.) (Swartz Decl. (Dkt. No. 35) Ex. I). Without any authority to the contrary, the Court finds the footer innocuous, particularly helpful to individuals seeking simple answers to questions about the notice itself, and therefore may remain.

Eighth, defendants seek to have the header at the top of page 1 stating "Court Authorized Notice" and the name of the court in which this case is pending removed. Although other notices have passed with just such a header, see Pippins v. KPMG LLP, No. 11 Civ. 377 (S.D.N.Y.) (Swartz Decl. Ex. I at 1), the Court agrees that the header provides a certain specter of authority. Accordingly, the notice will be adequate in the absence of the header may imply more court sponsorship than appropriate. Accordingly, plaintiffs' counsel should remove the header from the notice.

Finally, defendants contest (a) having to provide telephone numbers, email addresses, or social security numbers to plaintiffs for the purposes of disseminating the notice to potential opt-in plaintiffs, (b) having the notice posted at MEAC call centers, (c) having plaintiffs send notice via both mail and email, and (d) having plaintiffs' counsel themselves send the notice (instead of a third-party administrator). (Defs. Opp'n at 24-25.)

As an initial matter, there is no need for a third-party administrator to send the notice. The bulk of the district

courts in this Circuit do not impose such a requirement,
notwithstanding the one case defendants cite to the contrary (a
case with an easily-distinguishable procedural posture.)

It is standard to provide the names, last known addresses,
and telephone numbers for the potential opt-in plaintiffs. See,
e.g., Diaz, 2012 WL 137460, at *9; Pippins, 2012 WL 19379, at
*14; Jacobs v. Duane Reade, Inc., No. 11 Civ. 0160, 2012 WL
260230, at *10 (S.D.N.Y. Jan. 27, 2012). However, in this day
of electronic communication, courts have authorized defendants
to provide email address as well. See, e.g., Pippins, 2012 WL
19379, at *14; Jacobs, 2012 WL 260230, at *10.; Raniere, 2011 WL
5881926, at *29. Providing all of that information would
neither be unduly burdensome nor disruptive to defendants.
Defendants must provide the names, last known addresses,
telephone numbers, and email address to plaintiff within forty-
five (45) days of this Order. Given the sensitive nature of
social security numbers and the amount of information being
provided by defendants, plaintiffs' request for social security
numbers is DENIED.

Although courts routinely grant a request to post the
notice in the workplace, see, e.g., Jacobs, 2012 WL 260230, at
*10 (collecting cases), given the comprehensiveness of the
information that defendants are to provide here--and that the
Court will not limit how plaintiffs choose to use that

18

information (outside the normal ethical requirements already imposed by the law itself), plaintiffs' request to post the notice at MEAC call centers is DENIED. See Pippins, 2012 WL 19379, at *15.

CONCLUSION

For the aforementioned reasons, plaintiffs' motion for conditional certification and court-authorized notice is GRANTED, subject to the modifications to the proposed notice delineated above.

Defendants are to provide plaintiffs with alternative language regarding their position and defenses to be included in the notice within seven (7) days of the date of this Order, and to provide the names, last known addresses, telephone numbers, and email address to plaintiff within forty-five (45) days of this Order.

The Clerk of the Court is directed to terminate the motion at Docket No. 25.


SO ORDERED:

Dated: New York, New York
       April 6, 2012


                                        K. B. Forrest
                                _____
                                    Katherine B. Forrest
                                UNITED STATES DISTRICT JUDGE