**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Ossai Miazad
Juno Turner
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan Stern (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RENE HERNANDEZ, REBECCA HESTON, JEFFREY STEINBERG, TRINITY GRAY, ERIC EBANKS, and WILLIAM ROGERS, individually and on behalf all others similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>MERRILL LYNCH & CO., INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and BANK OF AMERICA CORPORATION,<br><br>     Defendants. | No. 11 Civ. 8472 (KBF) (DCF) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS,
APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND
APPROVAL OF PLAINTIFFS' PROPOSED NOTICES OF SETTLEMENT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

I.      FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 1

      A.      Factual Allegations ................................................................................ 1

      B.      Overview of Investigation ..................................................................... 2

      C.      Procedural History ................................................................................ 2

      D.      Settlement Negotiations ........................................................................ 4

II.     SUMMARY OF THE SETTLEMENT TERMS ........................................................... 4

      A.      The Settlement Fund ............................................................................. 4

      B.      Eligible Employees ............................................................................... 5

      C.      Releases ................................................................................................ 5

      D.      Allocation Formula .............................................................................. 5

      E.      Attorneys' Fees, Litigation Costs, and Service Awards ....................... 7

      F.      Settlement Claims Administrator .......................................................... 7

III.    CLASS ACTION SETTLEMENT PROCEDURE ...................................................... 8

IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................. 8

      A.      The Settlement is Fair, Reasonable, and Adequate .............................. 10

              1.      Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1) ...................................................... 11

              2.      The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ............. 12

              3.      Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3) ................................... 12

              4.      Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5) .......................................................... 13

ii

5.     Maintaining the Class Through Trial Would Not Be Simple
       (*Grinnell* Factor 6) ................................................................... 14

6.     Defendants' Ability to Withstand a Judgment
       (*Grinnell* Factor 7) ................................................................... 14

7.     The Settlement Fund is Substantial, Even in Light of the Best
       Possible Recovery and the Attendant Risks of Litigation
       (*Grinnell* Factors 8 and 9) ........................................................ 14

V.     CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS
       APPROPRIATE ................................................................................... 15

       A.     Numerosity ............................................................................... 17

       B.     Commonality ............................................................................ 17

       C.     Typicality ................................................................................. 18

       D.     Adequacy of the Named Plaintiffs ........................................... 19

       E.     Certification is Proper Under Rule 23(b)(3) ............................ 20

              1.     Common Questions Predominate .................................. 21

              2.     A Class Action is a Superior Mechanism ...................... 22

VI.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL .......... 23

VII.   THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS
       ARE APPROPRIATE ........................................................................... 24

VIII.  PLAINTIFFS WILL SEEK APPROVAL OF THE FLSA SETTLEMENT ................... 25

CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)................................................................................20, 22

*In re Austrian & German Bank Holocaust Litig.,*
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)............................................................11, 13

*Briscoe-Grey v. Sears Holding Corp.,*
    No. 09 Civ. 81408 (S.D. Fla.) ..........................................................................20

*Brooks et al. v. First Data Corp.,*
    No. 11-18202 (Fla. 11th Cir.) ...........................................................................20

*Campos v. Goode,*
    No. 10 Civ. 0224, 2010 WL 5508100 (S.D.N.Y. Nov. 29, 2010) ........................23

*Capsolas v. Pasta Res. Inc.,*
    No. 10 Civ. 5595, 2012 WL 1656920 (S.D.N.Y. May 9, 2012)...........................10

*Castagna v. Madison Square Garden, L.P.,*
    No. 09 Civ. 10211, 2011 WL 2208614 (S.D.N.Y. June 7, 2011)...........................9

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)....................................................................10, 11, 15

*Clark v. Ecolab Inc.,*
    Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,
    2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009)............................................9, 10, 22

*Clark v. Ecolab Inc.,*
    Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,
    2010 WL 1948198 (S.D.N.Y. May 11, 2010) ......................................................18

*Consol. Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2d Cir. 1995).................................................................................17

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,*
    502 F.3d 91 (2d Cir. 2007).................................................................................21

*Damassia v. Duane Reade, Inc.,*
    250 F.R.D. 152 (S.D.N.Y. 2008) .......................................................................23

*Diaz v. E. Locating Serv. Inc.*,
   No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ........................................9, 19

*Dorn v. Eddington Sec., Inc.*,
   No. 08 Civ. 10271, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011)..............................................13

*Dziennik v. Sealift, Inc.*,
   No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007)............................................20

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05 Civ. 10240,
   05 Civ. 10287, 05 Civ. 10515, 05 Civ. 10610, 06 Civ. 304, 06 Civ. 347,
   06 Civ. 1684, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ....................................................10

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)................................................................................ passim

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)......................................................................................................16

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982)................................................................................................................17

*Green v. Wolf Corp.*,
   406 F.2d 291 (2d Cir. 1968)....................................................................................................22

*Hosier v. Mattress Firm, Inc.*,
   No. 10 Civ. 294 (M.D. Fla.)....................................................................................................20

*In re Interpublic Sec. Litig.*,
   No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ......................................9, 10

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969)..........................................................................................13

*Johnson v. Brennan*,
   No. 10 Civ. 4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011)......................................20, 23

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
   109 F.R.D. 391 (S.D.N.Y. 1986) .............................................................................................17

*Lewis v. Iowa Coll. Acquisition Corp. et al.*,
   No. 08 Civ. 61011 (S. D. Fla.)................................................................................................20

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ..............................................................................................10

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997)....................................................................................................18

v

*Marriott v. Cnty. of Montgomery*,
227 F.R.D. 159 (N.D.N.Y. 2005)........................................................................21

*Maywalt v. Parker & Parsley Petroleum Co.*,
67 F.3d 1072 (2d Cir. 1995)..............................................................................9

*McBean v. City of New York*,
228 F.R.D. 487 (S.D.N.Y. 2005) .......................................................................21

*McKenna v. Champion Int'l Corp.*,
747 F.2d 1211 (8th Cir. 1984) ..........................................................................25

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 57 (S.D.N.Y. 1993) .........................................................................24

*Noble v. 93 Univ. Place Corp.*,
224 F.R.D. 330 (S.D.N.Y. 2004) .......................................................................21

*In re Painewebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................................13

*Palacio v. E*TRADE Fin. Corp.*,
No. 10 Civ. 4030, 2012 WL 1058409 (S.D.N.Y. Mar. 12, 2012) ..............11, 20, 24

*Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*,
698 F.2d 150 (2d Cir. 1983).............................................................................17

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006) ........................................................................17

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)..............................................................................18

*Rossini v. Ogilvy & Mather, Inc.*,
798 F.2d 590 (2d Cir. 1986)..............................................................................21

*Saliford v. Regions Fin. Corp., and Regions Bank*,
No. 10 Civ. 61031 (S.D. Fla.)............................................................................20

*Sewell v. Bovis Lend Lease, Inc.*,
No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)................... passim

*Toure v. Cent. Parking Sys.*,
No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007).........................19

*In re Traffic Exec. Ass'n*,
627 F.2d 631 (2d Cir. 1980)..............................................................................9

*Trinidad v. Breakaway Courier Sys., Inc.*,
   No. 05 Civ. 4116, 2007 WL 103073 (S.D.N.Y. Jan. 12, 2007)..............................................19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)......................................................................................8, 10

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)....................................................................................12

*Willix v. Healthfirst, Inc.*,
   No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)..............................................7

## STATUTES

Fed. R. Civ. P. 23(a) ..........................................................................................16, 19

Fed. R. Civ. P. 23(b) ..........................................................................................20, 22

Fed. R. Civ. P. 23(c) ..........................................................................................24

Fed. R. Civ. P. 23(g) ..........................................................................................23

## OTHER AUTHORITIES

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002).................8, 11, 16

## INTRODUCTION

Subject to Court approval, Plaintiffs Rene Hernandez, Rebecca Heston, Jeffrey Steinberg, Trinity Gray, Eric Ebanks, and William Rogers ("Plaintiffs") and Defendants Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., and Bank of America Corporation ("Merrill" or "Defendants") (together with Plaintiffs, the "Parties") have settled this wage and hour class and collective action for significant monetary relief of up to $7,000,000.

The proposed settlement satisfies all of the criteria for preliminary approval under federal law. Accordingly, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Joint Stipulation of Settlement and Release ("Settlement Agreement"), attached as Exhibit A to the Declaration of Justin M. Swartz ("Swartz Decl.")[1]; (2) conditionally certify the proposed classes under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes; (3) appoint Outten & Golden LLP ("O&G") and the Shavitz Law Group, P.A. ("Shavitz Law Group") as Class Counsel ("Class Counsel"); and (4) approve the proposed Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing (attached as Ex. B to the Swartz Decl.) and the proposed Notice of Proposed Settlement of Collective Action Lawsuit and Fairness Hearing (attached as Ex. C to the Swartz Decl.) and direct their distribution. As part of the Settlement Agreement, Defendants do not oppose this motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Allegations

Plaintiffs and class members are current and former employees of Merrill who have worked as Financial Solutions Advisors ("FSAs")[2] or in comparable positions at Merrill call

---

[1]    Unless otherwise indicated, all exhibits are attached to the Swartz Declaration.
[2]    Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement.

centers in Florida, New Jersey, and Arizona.  Plaintiffs alleged that Merrill violated the Fair

Labor Standards Act ("FLSA") and the New Jersey Wage and Hour Law ("NJWHL") by failing

to pay Core I FSAs overtime for hours worked "off the clock" and improperly classifying

Salaried FSAs as exempt and requiring FSAs to work in excess of 40 hours per workweek

without overtime premium pay.  Swartz Decl. ¶¶ 21, 23.  Plaintiffs sought recovery of overtime

wages, attorneys' fees and costs, interest, and liquidated damages.  *Id.* ¶ 21.

### B. <u>Overview of Investigation</u>

Before and during the formal litigation of this action, Plaintiffs conducted a thorough

investigation into the merits of the potential claims and defenses.  Swartz Decl. ¶ 17.  Plaintiffs

focused their investigation and legal research on the underlying merits of class members' claims,

the damages to which they were entitled, and the propriety of class certification.  *Id.*  Plaintiffs'

counsel interviewed Plaintiffs and several other workers to determine the hours that they worked,

the wages they were paid, the nature of their duties and responsibilities, and other information

relevant to their claims.  *Id.* ¶ 18.  Plaintiffs also conducted in-depth background research on

Merrill, including reviewing SEC filings and other public documents, to obtain information on

Merrill's corporate structure and facilities.  *Id.* ¶ 19.  Plaintiffs also obtained numerous job

postings for the FSA positions to determine the nature of the duties and responsibilities of the

positions.  *Id.*  Plaintiffs, and opt-in Plaintiff Betty Reynolds, provided detailed declarations

regarding their hours worked, their wages paid, and the nature of their duties and responsibilities.

*Id.* ¶ 20.

### C. <u>Procedural History</u>

On November 22, 2011, Plaintiffs Rene Hernandez, Rebecca Heston, and Jeffrey

Steinberg filed a Class Action Complaint against Defendants, pursuant to 29 U.S.C. § 216(b), in

the United States District Court for the Southern District of New York on behalf of themselves and others similarly situated.  Swartz Decl. ¶ 21.  Plaintiffs alleged that Defendants violated the FLSA by requiring Core I FSAs to work off the clock and sought recovery of overtime wages, attorneys' fees and costs, interest, and liquidated damages.  *Id*.  Defendants filed their answer to the complaint on December 27, 2011.  *Id*. ¶ 22.

On January 31, 2012, Plaintiffs filed an amended complaint adding three additional named plaintiffs, Trinity Gray, Eric Ebanks, and William Rogers, and claims under New Jersey law.  *Id*. ¶ 23.  The additional named plaintiffs alleged that Defendants violated the FLSA and New Jersey law by improperly classifying Salaried FSAs as exempt from the FLSA's overtime requirements.  In addition to the six named plaintiffs, four other former Merrill FSAs also joined the case as Opt-in Plaintiffs.[3]  *Id*. ¶ 24.

On March 9, 2012, Plaintiffs filed a Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA ("216(b) Motion").  *Id.* ¶ 25.  Defendants filed a response on March 29, 2012.  *Id*.  On April 6, 2012, the Court granted Plaintiffs' motion and directed Defendants to produce a class list within 45 days.  *Id.*

The Parties engaged in expedited discovery relating to the 216(b) Motion, and, following the Court's decision on that motion, entered into more extensive discovery.  *Id.* ¶ 26.  Each side served and responded to written discovery and produced documents.  *Id*.  Defendants deposed four Plaintiffs.  *Id.*

On June 5, 2012, the parties agreed to enter into formal settlement negotiations and requested that the Court enter a stay of all discovery, and delay the sending of notice pursuant to

---

[3]  Another former FSA, Jeffrey Tillman, opted into the case on February 21, 2012.  Swartz Decl. ¶ 24.  Plaintiffs' counsel subsequently learned that he did not work as an FSA during the relevant statute of limitations period and withdrew his consent form on March 9, 2012.  *Id.*

§ 216(b) of the FLSA until after the proposed stay had expired. *Id* ¶ 27. The Court granted the request, and the parties agreed to toll the claims of potential FLSA opt-ins. *Id.*

### D. Settlement Negotiations

In or around June 2012, the Parties agreed to attempt to resolve this matter through non-binding private mediation. Swartz Decl. ¶ 28. In preparation for mediation, the Parties exchanged informal discovery aimed at allowing them to perform damages calculations. *Id*. ¶ 29. As part of this exchange, Merrill produced data showing the number of class members in relevant job titles, average salaries, weeks worked, and location of employment. *Id*. Plaintiffs performed damages calculations based on the data Defendants provided. *Id*.

On July 13, 2012, the Parties attended a mediation session in San Francisco, California, with David Rotman, a well-known and experienced mediator. *Id*. ¶ 30. After about nine hours of good faith negotiations, Mr. Rotman made a mediator's proposal to resolve the matter. *Id*. On July 30, 2012, Mr. Rotman informed the parties that both sides had agreed to accept that portion of his proposal that would resolve all of the claims at issue for $7 million. *Id*.

During the next several weeks, the Parties negotiated the remaining terms of the settlement, which were memorialized in a formal Settlement Agreement. *Id*. ¶ 31.

## II. SUMMARY OF THE SETTLEMENT TERMS

### A. The Settlement Fund

The Settlement Agreement establishes a Gross Settlement Amount of up to $7,000,000 to settle claims against the Defendants (the "Fund"). Ex. A (Settlement Agreement) § 3.1(A). The Fund covers class members' awards, service payments, attorneys' fees and costs, settlement administrator's fees and costs, and any fees and costs associated with setting up, administering, maintaining or liquidating the Settlement Fund. *Id*. Within ten days of the date of the

Preliminary Approval Order, Defendants shall deposit $250,000.00 into the Settlement Fund. *Id*. § 3.1(B). Within ten days of the date of the Final Approval Order, Defendants shall deposit the remainder of the Gross Settlement Amount, minus any amount allocated to those FLSA Class Members who are not also Rule 23 Class Members and who do not submit a consent to join form. *Id*. In the event that Settlement Checks to Rule 23 Class Members or Service Award checks remain uncashed 180 days after the Final Approval Order, those funds attributable to workweeks worked in New Jersey during the Rule 23 Class Period will be redistributed among the Rule 23 Class Members who have timely cashed their checks or, in the event such distribution is impracticable, distributed to the *cy pres* designee. *Id.* § 3.1(D).

### B.   Eligible Employees

The "Rule 23 Class" includes all current and former FSAs employed by Defendants in call centers in the State of New Jersey between January 31, 2010 and October 31, 2012. Ex. A (Settlement Agreement) § 1.29. The "FLSA Class" includes all current and former FSAs employed by Merrill in call centers between June 7, 2009 and October 31, 2012. *Id*. § 1.16.

### C.   Releases

All FLSA Class Members who sign and cash a Settlement Check and all Rule 23 class members who do not timely opt out will release all federal wage and hour law claims. Ex. B (Settlement Agreement) §§ 2.10, 4.1(B).  All Rule 23 Class Members who do not timely opt-out release all state wage and hour claims asserted on behalf of the Rule 23 Class, regardless of whether they sign and cash a Release, Consent, and Settlement Check. *Id*. § 4.1(A).

### D.   Allocation Formula

Class Members will be paid pursuant to an allocation formula based on the number of weeks they worked during the relevant periods, and whether they were Core 1 or Salaried Class

Members.  Five fourteenths of the Net Settlement Fund (the "Core 1 Net Settlement Fund"), will

be distributed to Qualified Core 1 Class Members.  Ex. A (Settlement Agreement) § 3.4(B)(1)(a).

Each Qualified Core 1 Class Member shall be assigned one point for each week worked as a

Core 1 FSA between June 7, 2009 and October 31, 2012.  *Id*. § 3.4(B)(1)(a).  The Claims

Administrator will then divide the total number of points for each Qualified Core 1 Class

Member by the total number of points for all Qualified Core 1 Class Members to determine each

Core 1 Class Member's portion of the Core 1 Net Settlement Fund.  *Id*. § 3.4(B)(1)(c).  The

Claims Administrator will then multiply each Qualified Core 1 Class Member's portion of the

Core 1 Net Settlement Fund by the Core 1 Net Settlement Fund to determine the amount to be

paid to each Core 1 Class Member.  *Id*. § 3.4(B)(1)(d).

The balance of the Net Settlement Fund less the Core 1 Net Settlement fund will be

distributed to Qualified Salaried Class Members (the "Salaried Net Settlement Fund").  Ex. A

(Settlement Agreement) § 3.4(B)(2)(a).  Each Qualified Salaried Class Member shall be assigned

one point for each week worked as a Salaried FSA between June 7, 2009 and October 31, 2012.

*Id*. § 3.4(B)(2)(b).  The Claims Administrator will then divide the total points for each Qualified

Salaried Class Member by the total points for all Qualified Salaried Class Members to determine

each Salaried Class Member's portion of the Salaried Net Settlement Fund.  *Id*. § 3.4(B)(2)(c).

The Claims Administrator will then multiply each Qualified Salaried Class Member's portion of

the Salaried Net Settlement Fund by the Salaried Net Settlement Fund to determine the amount

to be paid to each Salaried Class Member.  *Id*. § 3.4(B)(2)(d).

Any uncashed settlement checks to FLSA Class Members remaining in the Fund 180

days after the Final Approval Order will revert to Defendants.  Ex. A (Settlement Agreement) §

3.1(E).  If uncashed settlement checks to Rule 23 Class Members remain in the Fund 180 days

after the Final Approval Order, funds attributable to workweeks worked in New Jersey during the Rule 23 Class Period will be redistributed among the Rule 23 Class Members who timely cashed their checks or donated under the *cy pres* doctrine. *Id*. § 3.1(D). Funds attributable to New Jersey workweeks prior to the Rule 23 Class Period or workweeks worked in states other than New Jersey shall revert to Defendants. *Id*.

### E.    Attorneys' Fees, Litigation Costs, and Service Awards

Plaintiffs' counsel will apply for one third of the Fund as attorneys' fees.[4] Plaintiffs' counsel will also seek reimbursement for their reasonable litigation costs and expenses from the Fund. Ex. B (Settlement Agreement) § 3.2(A). The Court need not decide the attorneys' fees and costs issue now. Pursuant to Federal Rule of Civil Procedure 23(h) and 54(d)(2), Plaintiffs' counsel will file a Motion for Approval of Attorneys' Fees, Incentive Awards, and Reimbursement of Expenses along with their Motion for Final Approval of the Settlement.

Plaintiffs will apply for the following payments in recognition of services they rendered to the class ("Service Awards"): $15,000 each to Plaintiffs Rene Hernandez, Rebecca Heston, Jeffrey Steinberg, Trinity Gray, and William Rogers; $12,500 to Plaintiff Eric Ebanks, and $4,000 to Opt-in Plaintiff Betty Reynolds. *Id*. § 3.3.

### F.    Settlement Claims Administrator

Plaintiffs have selected Kurtzman Carson Consultants, Inc. to as the Settlement Claims Administrator ("Claims Administrator"). Ex. B (Settlement Agreement) § 1.31. The Claims Administrator's fees will be paid by the Fund. Ex. B (Settlement Agreement) § 1.20.

---

[4]    This is a typical fee award in the Second Circuit. *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("Class Counsel's request for 33 1/3% of the fund is reasonable and 'consistent with the norms of class litigation in this circuit.'") (citing *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)).

### III.    CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1.      Preliminary approval upon a written motion;

2.      Dissemination of notice of settlement to all affected class members; and

3.      A final settlement approval hearing at which class members may be heard concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et*

*seq.* (4th ed. 2002).  Plaintiffs request that the Court take the first step – granting preliminary

approval, certifying the settlement class, and approving Plaintiffs' Proposed Notices.

The Parties respectfully submit the following schedule for the Court's consideration:

1.      The Settlement Notices will be mailed to Class Members within 15 days of preliminary approval of settlement.  Ex. B (Settlement Agreement) § 2.4(B).

2.      Rule 23 Class Members will have 30 days to opt out of the settlement or object to it ("Notice Period").  *Id*. §§ 2.5(A), 2.6(A).

3.      A final fairness hearing will be held as soon as is convenient for the Court.

4.      Plaintiffs will file a Motion for Final Approval of Settlement no later than 15 days before the Fairness Hearing.  *Id*. § 2.7.

5.      After the final fairness hearing, if the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment.  If no party appeals the Court's Final Order and Judgment, the "Effective Date" of the settlement will be 5 days after the Court enters its Final Order and Judgment.  *Id*. § 1.11(A).

6.      If an individual appeals the Court's Final Order and Judgment, the "Effective Date" shall be the day after all appeals are resolved.  *Id*. § 1.11(B).

7.      The Settlement Claims Administrator will disburse settlement checks and attorneys' fees 3 days after the Effective Date.  *Id*. § 2.10(C).

### IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v.*

*Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of

settlements, particularly in the class action context") (internal quotation omitted).  The approval of a proposed class action settlement is a matter of discretion for the trial court.  *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).  "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties." *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties.  *Clark*, 2009 WL 6615729, at *3 (citing *Newberg* § 11.25).  To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980).  If, after a preliminary evaluation of the proposed settlement, the court finds that it "appears to fall within the range of possible approval," the court should order that the class members receive notice of the settlement.  *Clark*, 2009 WL 6615729, at *3.

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).  Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere.  *See In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv.*

9

*Inc.*, No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case).  The parties here acted responsibly in reaching an early settlement in this case.  *See In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation omitted); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (courts rely on adversarial nature of litigated FLSA cases resulting in settlement to indicate fairness).  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05 Civ. 10240, 05 Civ. 10287, 05 Civ. 10515, 05 Civ. 10610, 06 Civ. 304, 06 Civ. 347, 06 Civ. 1684, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).  Using a private mediator reinforces the non-collusive nature of a settlement.  *Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 1656920, at *1 (S.D.N.Y. May 9, 2012).

Preliminary approval is the first step in the settlement process.  It allows notice to issue and for Class Members to object or opt out of the settlement.  The Court can then evaluate the settlement with the benefit of Class Members' input.  *Clark*, 2009 WL 6615729, at *3.

## A.   <u>The Settlement is Fair, Reasonable, and Adequate.</u>

In evaluating a class action settlement, courts consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement.  *Clark*, 2009 WL 6615729, at *3 (citing *Newberg* § 11.25).  Courts often grant preliminary settlement approval without

10

requiring a hearing or a court appearance. *See Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *2 (S.D.N.Y. Mar. 12, 2012) (granting preliminary approval based on plaintiffs' memorandum of law, attorney declaration, and exhibits).  Although the Court's task is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within "the range of reasonableness," *id.* at § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.  All of the *Grinnell* factors weigh in favor of approval, and certainly in favor of preliminary approval.

## 1. <u>Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1).</u>

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense, risk, and delay, and instead ensure recovery for the class.  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  "Litigating the claims of hundreds of putative class members would undoubtedly yield expensive litigation costs that can be curbed by settling the action."  *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *7 (S.D.N.Y. Apr. 16, 2012).  This case is no exception, with approximately 1000 Class Members and claims under the FLSA and New Jersey law.

11

Further litigation would cause additional expense and delay.  Before agreeing to stay proceedings, Plaintiffs had served a Rule 30(b)(6) deposition notice and informed Defendants of their intention to notice the depositions of more than a dozen additional witnesses.  Swartz Decl. ¶ 26.  Defendants had deposed four Plaintiffs and noticed depositions of two more.  *Id*.  Both sides had served written document requests and interrogatories.  *Id*.  Extensive discovery would have been required to establish liability and damages.  A trial would be lengthy and complex.  Any judgment would likely be appealed, further extending the litigation.  The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### 2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

Notice has not yet issued to the class.  The Court should more fully analyze this factor after notice issues and class members are given the opportunity to opt out or object.  At this early stage in the process, given that all Plaintiffs and an Opt-In Plaintiff have signed the Settlement Agreement, this factor weighs in favor of preliminary approval.

### 3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

Although preparing this case through trial would require hundreds of hours of discovery for both sides, the Parties have completed enough discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).

Discovery here meets this standard.  Plaintiffs' counsel interviewed six Plaintiffs and four Opt-In Plaintiffs to determine the hours that they worked, the wages they were paid, the nature of their duties and responsibilities, and other information relevant to their claims.  Swartz Decl. ¶

18.  Plaintiffs conducted in-depth background research on Merrill, including reviewing SEC

filings and other public documents, to obtain information on Merrill's corporate structure and

facilities.  *Id*. ¶ 19.  Plaintiffs also obtained numerous job postings for the FSA position from

across the country to determine the nature of the duties and responsibilities of the position.  *Id*.

To allow the Parties to perform damages calculations in preparation for mediation, the Parties

exchanged targeted discovery, including data showing the number of class members in relevant

job titles, average salaries, weeks worked, and location of employment.  *Id*. ¶ 29.  This factor

favors preliminary approval.  *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL

382200, at *3 (S.D.N.Y. Jan. 21, 2011) (finding, in case at similar stage of discovery, that

"Plaintiff's Counsel did substantial work identifying, investigating, prosecuting, and settling

Plaintiff's and the class members' claims.").

### 4.  Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiffs believe their case is strong, it is subject to considerable risk.

"Litigation inherently involves risks."  *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104,

126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the

merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934

(S.D.N.Y. 1969).  In weighing the risks of establishing liability and damages, the court "must

only weigh the likelihood of success by the plaintiff class against the relief offered by the

settlement."  *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).

A trial would involve significant risks as to both liability and damages.  Plaintiffs would

have to overcome the defense that they were subject to the executive, administrative,

professional, and/or outside sales exemptions.

13

While Plaintiffs believe that they could ultimately establish liability, this would require significant factual development.  Plaintiffs' counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The proposed settlement alleviates these uncertainties.  This factor therefore weighs in favor of preliminary approval.

5.   **Maintaining the Class Through Trial Would Not Be Simple (_Grinnell_ Factor 6).**

The risk of obtaining certification and maintaining it through trial is also present.  The Court has not certified the Rule 23 Class, and the Parties anticipate that such a determination would be reached only after further discovery and exhaustive briefing.  In opposing class certification, Defendants would likely argue that differences among various job positions and other individualized questions preclude class certification.  Settlement eliminates the risk, expense, and delay that permeates such processes.

In addition, after the close of discovery, Defendants would likely challenge the Court's determination that Plaintiffs may proceed on their FLSA claims on behalf of a collective pursuant to 29 U.S.C. § 216(b).  Settlement eliminates the risk and delay inherent in this process.

6.   **Defendants' Ability to Withstand a Judgment (_Grinnell_ Factor 7).**

While it is not clear whether Defendants could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair."  _Frank_, 228 F.R.D. at 186 (quoting _In re Austrian_, 80 F. Supp. 2d at 178 n.9).  Thus, this factor is neutral.

7.   **The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (_Grinnell_ Factors 8 and 9).**

Merrill has agreed to settle this case for a substantial amount, up to $7 million.  The settlement amount represents a good value given the attendant risks of litigation, even though

14

recovery could be greater if Plaintiffs attained class certification, overcame motions to decertify any class or collective, succeeded on all claims at trial, and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.* (internal quotation omitted). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2.

Here, each Class Member will receive a payment based upon the number of weeks they worked during the relevant periods, and whether they are members of the Rule 23 Class and/or the FLSA Class. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

\*       \*       \*

The *Grinnell* factors all weigh in favor of issuing preliminary approval. In the event that a substantial number of objectors come forward with meritorious objections, then the Court may reevaluate its determination. Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## V.      CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE.

For settlement purposes, Plaintiffs respectfully request that the Court conditionally certify the following class for purposes of effectuating the settlement:

All individuals who were employed by Defendants as FSAs in its call center in the State of New Jersey during the period from January 31, 2010 through October 31, 2012.

The settlement class meets all of the certification requirements for class certification for settlement purposes, and Defendants consent to provisional certification for settlement purposes only.  Ex. A § 2.3(D); *see also Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.").

Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all Class Members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995) (noting practical purposes of provisionally certifying settlement class).  Class certification is appropriate because it designates class counsel as attorneys for the class members.

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:

> (1)    the class is so numerous that joinder of all members is impracticable;
>
> (2)    there are questions of law or fact common to the class;
>
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that:

> questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a

16

> class action is superior to other available methods for fairly and
> efficiently adjudicating the controversy.

*Id.* at (b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction."

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting

*Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### A.   Numerosity

"[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of

Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Plaintiffs easily satisfy this requirement because

there are approximately 1000 Class Members.  Swartz Decl. ¶ 35(a).

### B.   Commonality

The proposed settlement class also satisfies the commonality requirement, the purpose of

which is to test "whether the named plaintiff's claim and the class claims are so interrelated that

the interests of the class members will be fairly and adequately protected in their absence."  *Gen.

Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be

identical, they must share common questions of fact or law.  *Port Auth. Police Benevolent Ass'n,

Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983).  The proper question is

whether there is a "unifying thread" among the claims to warrant class certification.  *Kamean v.

Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Courts construe the

commonality requirement liberally.  *Frank*, 228 F.R.D. at 181 (citation omitted).  Even where

state and federal wage and hour claims do not share "exact experiences in terms of

uncompensated or improperly compensated hour worked, the claims are based on similar

allegations, which give rise to the same or similar legal arguments."  *Sewell*, 2012 WL 1320124,

at *3.

This case involves numerous common issues.  Plaintiffs and Class Members all bring the identical claims that, in the case of Core I FSAs, Defendants failed to pay them overtime wages for hours worked "off the clock," and, in the case of Salaried FSAs, Defendants misclassified them as exempt employees and failed to pay them overtime wages in violation of state wage and hour laws.  Other common issues include, but are not limited to, (a) whether Defendants maintained true and accurate time records for all hours worked by Plaintiffs and Class Members; (b) what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records; and (c) whether Defendants acted willfully or in reckless disregard of the statute.  *See  Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 at *3 (S.D.N.Y. May 11, 2010) (common issues that help to satisfy Rule 23 commonality requirement include "whether [Defendant] failed to pay Plaintiffs and the state settlement Class Members overtime premium pay for all hours they worked over 40 in a workweek; and…whether [Defendant] maintained accurate time records of the hours Plaintiffs and the state settlement Class Members worked").

### C.    Typicality

Rule 23 requires that the claims of the representative party be typical of the claims of the class.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A.*, 126 F.3d at 376 (internal quotations omitted).  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendants direct "the same unlawful conduct" at the named plaintiff and the class.  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  Courts

evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007).

Plaintiffs' claims arise from the same factual and legal circumstances that form the basis of the Rule 23 Class Members' claims.  Defendants classified all Plaintiffs and Class Members who worked in Salaried FSA positions as exempt from overtime pursuant to the same company policy.  Similarly, Defendants failed to pay all Plaintiffs and Class Members who worked in Core I FSA positions overtime wages for hours worked "off the clock" pursuant to the same company policies and practices.  Plaintiffs shared the same job titles and had the same job duties as Class Members.  They also claim the same injuries as do Class Members – that Defendants failed to properly pay them for overtime hours worked.  Because Plaintiffs' claims arise from the same factual and legal circumstances that form the basis of Class Members' claims, Plaintiffs satisfy the typicality requirement.  *See Diaz*, 2010 WL 2945556, at *2 ("Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the class members' claims.").

### D.   <u>Adequacy of the Named Plaintiffs</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative

status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998)) (internal quotation marks omitted).  There is no evidence that Plaintiffs have interests that are antagonistic to or at odds with those of Class Members.  *See Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *2 (S.D.N.Y. May 17, 2011) (Rule 23(a)(4) met where there was no evidence that named plaintiffs' and class members' interests were at odds).

Plaintiffs' counsel also meet the adequacy requirement of Rule 23(a)(4).  *See Palacio*, 2012 WL 1058409, at *2.  O&G attorneys "are experienced employment lawyers with good reputations among the employment law bar. They have prosecuted and favorably settled many employment law class actions, including wage and hour class actions."  *Sewell*, 2012 WL 1320124, at *12 (internal citation omitted).  Likewise, the Shavitz Law Group has acted as lead counsel or co-counsel on dozens of wage and hour class and collective actions, including *Palacio*, 2012 WL 1058409, at *2 (S.D.N.Y. Mar. 12, 2012); *Saliford v. Regions Fin. Corp., and Regions Bank,* No. 10 Civ. 61031 (S.D. Fla.); *Brooks et al. v. First Data Corp.*, No. 11-18202 (Fla. 17th Cir.); *Hosier v. Mattress Firm, Inc.*, No. 10 Civ. 294 (M.D. Fla.); *Briscoe-Grey v. Sears Holding Corp.*, No. 09 Civ. 81408 (S.D. Fla.); and *Lewis v. Iowa Coll. Acquisition Corp. et al.*, No. 08 Civ. 61011 (S. D. Fla.).  Swartz Decl. ¶ 16.

E.       **Certification is Proper Under Rule 23(b)(3)**.

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 623 (1997).  That Plaintiffs easily meet the Rule 23(a) criteria is a strong

indicator that Rule 23(b)(3) is satisfied.  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d

Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying . . . Rule 23(b)(3)").

### 1.    <u>Common Questions Predominate</u>

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action

that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate

over those issues that are subject only to individualized proof."  *Cordes & Co. Fin. Servs., Inc. v.*

*A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007).  The essential inquiry is whether

"liability can be determined on a class-wide basis, even when there are some individualized

damage issues."  *Marriott v. Cnty. of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005)

(quoting *In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d 124, 139 (2d Cir. 2001)).

Simply because a defense "'may arise and [] affect different class members differently does not

compel a finding that individual issues predominate over common ones.'"  *Noble v. 93 Univ.*

*Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (quoting *In re Visa Check/MasterMoney*, 280

F.3d at 138).  Where plaintiffs are "unified by a common legal theory" and by common facts, the

predominance requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502

(S.D.N.Y. 2005).  The predominance requirement is "more demanding than the Rule 23(a)

commonality inquiry and is designed to determine whether 'proposed classes are sufficiently

cohesive to warrant adjudication by representation.'"  *Frank*, 228 F.R.D. at 183 (quoting

*Amchem*, 521 U.S. at 623).  "A common nexus of fact or law, particularly in FLSA cases, can

include the fact that all plaintiffs were subject to the same company-wide policy that violated

federal labor laws."  *Sewell*, 2012 WL 1320124, at *5.

Here, Class Members' common factual allegations and common legal theory – that Defendants violated federal and state wage and hour laws by misclassifying them as exempt administrative employees and failing to pay them for overtime hours – predominates over any factual or legal variations among class members.  *See Clark*, 2009 WL 6615729, at *5 (finding common factual allegations and common legal theory to predominate over variations among class members in misclassification case).

### 2.      A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy."  *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").  Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).

Here, Plaintiffs and Class Members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any pending individual lawsuits filed by Class Members arising from the same allegations.  Concentrating the litigation in this Court is desirable because Merrill's headquarters sits within the jurisdiction of this Court.

Employing the class device here will not only achieve economies of scale for putative class members, but will also conserve the resources of the judicial system and preserve public

confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims.  *See Johnson*, 2011 WL 1872405, at *2.  Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually.  *See Campos v. Goode*, No. 10 Civ. 0224, 2010 WL 5508100, at *2 (S.D.N.Y. Nov. 29, 2010).  A class action is the best mechanism to fairly, adequately and efficiently resolve Plaintiffs' and Class Members' claims.

## VI.  PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

O&G and Shavitz Law Group should be appointed as Class Counsel.  Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law; and" (4) "the resources that counsel will commit to representing the class".  Fed. R. Civ. P. 23(g)(1)(A); *see also Damassia v. Duane Reade, Inc.*, 250 F.R.D.  152, 165 (S.D.N.Y. 2008) (same).

The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(g)(1)(B).  The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case."  Fed. R. Civ. P. 23(g) advisory committee's note.

O&G and the Shavitz Law Group meet all of these criteria.  As set forth in the Swartz Declaration, O&G and the Shavitz Law Group have done substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and Class Members' claims.  Swartz Decl. ¶¶

17-26.  Additionally, O&G has substantial experience prosecuting and settling employment class

actions, including wage and hour class actions, and the O&G and Shavitz Law Group lawyers

assigned to this matter are well-versed in wage and hour law and in class action law and are well-

qualified to represent the interests of the class.  *Id*. ¶¶ 4-15.  Accordingly, courts have repeatedly

found O&G and the Shavitz Law Group to be adequate class counsel in wage and hour class

actions.  *See, e.g.*, *Palacio*, 2012 WL 1058409, at *2.

## VII.   THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE

The content of the Proposed Notices, which are attached to the Swartz Declaration as

Exhibits B and C, fully comply with due process and Federal Rule of Civil Procedure 23.

Pursuant to Rule 23(c)(2)(B), notice must provide:

> the best notice practicable under the circumstances, including individual notice to
> all members who can be identified through reasonable effort. The notice must
> clearly and concisely state in plain, easily understood language:
>
> (i)      the nature of the action;
> (ii)     the definition of the class certified;
> (iii)    the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the
> member so desires;
> (v)     that the court will exclude from the class any member who requests
> exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Proposed Notices here satisfy each of these requirements.  They also describe the

terms of the settlement, inform the class about attorneys' fees, and provide information regarding

the date, time, and place of the final approval hearing.  Courts have approved class notices even

when they provided only general information about a settlement.  *See In re Michael Milken &

Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993).  The detailed information in the Proposed

Notices far exceeds this bare minimum and complies with the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that the Notices will be mailed by the Claims Administrator to the last known address of each Class Member within 15 days of preliminary approval.  Ex. B (Settlement Agreement) §§ 2.4(B), (C).  The Claims Administrator will take reasonable steps to obtain the correct addresses of any class member whose notice is returned as undeliverable and will attempt re-mailing.  *Id*. § 2.4(D).  The Proposed Notices contain information about how to exclude oneself or object to the settlement.  Rule 23 Class Members will have 30 days from the date of mailing to submit opt-out requests or to comment on or object to the settlement.  *Id*. §§ 2.5(A), 2.6(A).   Within 3 days of the Effective Date of the settlement, the Claims Administrator will mail payments to class members.  *Id*. § 2.10(C).

## VIII.  <u>PLAINTIFFS WILL SEEK APPROVAL OF THE FLSA SETTLEMENT</u>

Plaintiffs will seek approval of the settlement of the FLSA claims separately from their Rule 23 claims. The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement.  *See McKenna v. Champion Int'l Corp*., 747 F.2d 1211, 1213 (8th Cir. 1984) (explaining that FLSA collective actions do not implicate the same due process concerns as Rule 23 actions because, under the FLSA, parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date).  When Plaintiffs file their motion for final approval of the settlement, they will seek final approval of the FLSA settlement.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement and enter the Proposed Order.

Dated:  November 7, 2012
       New York, New York

                     Respectfully submitted,
                     **OUTTEN & GOLDEN LLP**

                     */s/ Justin M. Swartz*
                     Justin M. Swartz

                     Justin M. Swartz
                     Ossai Miazad
                     Juno Turner
                     Jennifer L. Liu
                     3 Park Avenue, 29th Floor
                     New York, New York 10016
                     Telephone:  (212) 245-1000
                     Facsimile:  (212) 977-4005

                     **SHAVITZ LAW GROUP, P.A.**
                     Gregg I. Shavitz (admitted *pro hac vice*)
                     Susan Stern (admitted *pro hac vice*)
                     1515 S. Federal Highway, Suite 404
                     Boca Raton, Florida 33432
                     Telephone: (561) 447-8888

                     **Attorneys for Plaintiffs and the Class**