# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RENE HERNANDEZ, REBECCA HESTON, JEFFREY STEINBERG, TRINITY GRAY, ERIC EBANKS, and WILLIAM ROGERS, individually and on behalf all others similarly situated, | No. 11 Civ. 8472 (KBF) (DCF) |
| **Plaintiffs,** | **JOINT STIPULATION OF SETTLEMENT AND RELEASE** |
| v. | |
| MERRILL LYNCH & CO., INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and BANK OF AMERICA CORPORATION, | |
| **Defendants.** | |

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Rene Hernandez, Rebecca Heston, Jeffrey Steinberg, Trinity Gray, Eric Ebanks, and William Rogers (collectively the "Named Plaintiffs"), individually and on behalf of the classes of individuals that they seek to represent ("Class Members"), as well as opt-in plaintiff Betty Reynolds ("Reynolds") (collectively with Named Plaintiffs and Class Members, the "Plaintiffs") and Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., and Bank of America Corporation (collectively "Defendants") (together with Plaintiffs, the "Parties").

## RECITALS

WHEREAS, the Named Plaintiffs filed suit against Defendants in the United States District Court for the Southern District of New York, No. 11 Civ. 8472 (KBF) (DCF), captioned *Hernandez, et al., v. Merrill Lynch & Co., Inc., et al.*, in which they claim that Defendants owe them overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b) and also assert claims against Defendants under the wage and hour laws of New Jersey for the alleged failure to pay overtime compensation to those Plaintiffs employed in New Jersey ("the Litigation"); and

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims (as hereinafter defined) between Plaintiffs and Defendants, including all claims asserted in the Litigation; and

WHEREAS, Defendants deny all of the allegations made by the Plaintiffs in the Litigation and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Litigation on the terms

and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, on or around June 22, 2012, Named Plaintiffs and Defendants agreed to toll the limitations period on the FLSA and state wage and hour claims of Named Plaintiffs and the putative class and collective as of June 7, 2012; and

WHEREAS, on July 13, 2012, the Parties participated in a mediation session of this matter in San Francisco, California, which was conducted by experienced class action mediator David Rotman of Gregorio Haldeman & Rotman, and subsequently reached an accord resulting in this Agreement; and

WHEREAS, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Defendants in the Litigation, conducted interviews with putative class and collective members, participated in depositions, obtained and reviewed documents relating to Defendants' compensation policies, and analyzed payroll data, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, and that there was a risk of future decertification, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Plaintiffs.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.    DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1    Agreement.** "Agreement" means this Joint Stipulation of Settlement and Release.

**1.2    Acceptance Period.** "Acceptance Period" means the 90 days that a Class Member has to sign and cash a Settlement Check.

**1.3    Charity.** "Charity" means Make the Road New York.

**1.4    Class Counsel.** "Class Counsel" or "Plaintiffs' Counsel" means Outten & Golden LLP and Shavitz Law Group, P.A.

**1.5    Class Members.** "Class Members" means the FLSA Class Members and the Rule 23 Class Members.

**1.6    Core 1 Class Members.** "Core 1 Class Members" means any and all current and former FSAs employed by Defendants in its call centers in Florida, Arizona and New Jersey who worked as Core 1 FSAs.

1.7 **Court.** "Court" means the United States District Court for the Southern District of New York.

1.8 **Days.** "Days" means business days if the specified number is less than 10, and calendar days if the specified number is 10 or greater.

1.9 **Defendants.** "Defendants" means Merrill Lynch & Co., Inc.; Merrill Lynch, Pierce, Fenner & Smith, Inc.; and Bank of America Corporation and all related or affiliated companies and all of such related or affiliated companies' predecessors and successors; and, with respect to each such entity, all of its past and present employees, officers, directors, stockholders, owners, representatives, assigns, attorneys, agents, insurers, employee benefit programs (and the trustees, administrators, fiduciaries and insurers of such programs) and any other persons acting by, through, under or in concert with any of the persons or entities identified in this Subparagraph.

1.10 **Defendants' Counsel.** "Defendants' Counsel" means Michael D. Mandel, Philip A. Goldstein, and Matthew C. Kane of McGuire Woods LLP. For purposes of providing any notices required under this Agreement, Defendants' Counsel shall refer to Michael D. Mandel.

1.11 **Effective Date.** "Effective Date" shall be the last of the following dates:

    (A)    If there is no appeal of the Court's Order Granting Final Approval of the Settlement, the date 5 days after entry of such Order; or

    (B)    If there is an appeal of the Court's Order Granting Final Approval of the Settlement, the day after all appeals are resolved in favor of final approval.

1.12 **Employer Payroll Taxes.** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

1.13 **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

1.14 **Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, distribution of the Settlement Checks and Service Awards, and Dismissal of the Litigation.

1.15 **Financial Solutions Advisors, FSAs.** "Financial Solutions Advisors" or "FSAs" means Investment Services Advisors, Financial Solutions Advisors, and persons in similar positions with comparable titles, including but not limited to Core 1 FSAs and Salaried FSAs (which includes but is not limited to Core 2, Premier, Transition, New Accounts, and Rollover FSAs) who worked at Defendants' call centers in Florida, Arizona and New Jersey.

**1.16**   **FLSA Class Members.** "FLSA Class Members" means any and all current and former FSAs (as herein defined) employed by Defendants in call centers in Florida, Arizona and New Jersey during the period from June 7, 2009, through and including October 31, 2012.

**1.17**   **Gross Settlement Amount.** "Gross Settlement Amount" means the Seven Million and No/100ths Dollars ($7,000,000.00), which Defendants have agreed to pay to fully resolve and settle this litigation, including any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, and any Court-approved Service Awards. Other than any employer payroll taxes described in Section 3.5(C) below that are not otherwise paid out of the Gross Settlement Amount, Defendants will not be required to pay any more than the gross total of Seven Million and No/100ths Dollars ($7,000,000.00).

**1.18**   **Litigation.** "Litigation" means the claims represented in the class and collective action Amended Complaint alleging violations of the FLSA and the wage and hours laws of New Jersey captioned *Hernandez, et al., v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (KBF) (DCF).

**1.19**   **Named Plaintiffs.** "Named Plaintiffs" means Rene Hernandez, Rebecca Heston, Jeffrey Steinberg, Trinity Gray, Eric Ebanks, and William Rogers.

**1.20**   **Net Settlement Fund.** "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions for: (1) the Settlement Claim Administrator's fees and costs; (2) Court-approved attorneys' fees and costs for Class Counsel; (3) Court-approved Service Awards to Named and Opt-in Plaintiffs as more specified herein; and (4) a $25,000.00 reserve fund to cover errors and omissions.

**1.21**   **Notice or Notices.** "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class Action and Collective Action Lawsuit and Fairness Hearing and the Court-approved Notice of Proposed Settlement of FLSA Collective Action Lawsuit and Fairness Hearing.

**1.22**   **Objector.** "Objector" means an individual who files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

**1.23**   **Opt-in Plaintiffs.** "Opt-in Plaintiffs" means those individuals who opt into the Litigation by returning a consent to join form before the end of the ninety (90) day Acceptance Period.

**1.24**   **Opt-out Statement.** "Opt-out Statement" is a written signed statement that an individual Rule 23 Class Member has decided to opt-out and not be included in this Agreement.

**1.25**   **Parties.** "Parties" shall mean, collectively, Named Plaintiffs, Reynolds, Rule 23 Class Members, FLSA Class Members, and Defendants.

**1.26**   **Plaintiffs.** "Plaintiffs" shall mean Named Plaintiffs, Reynolds, Rule 23 Class Members, and FLSA Class Members.

**1.27** **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notices to the Class Members.

**1.28** **Qualified Settlement Fund or QSF.** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the Settlement Amount paid by Defendant. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval. Interest, if any, earned on the QSF will become part of the Settlement Amount.

**1.29** **Rule 23 Class Members, New Jersey Class Members.** "Rule 23 Class Members" or "New Jersey Class Members" means all current and former FSAs employed by Defendants in its call center in the State of New Jersey during the period from January 31, 2010 through October 31, 2012.

**1.30** **Salaried Class Members.** "Salaried Class Members" means any and all current and former FSAs employed by Defendants in its call centers in Florida, Arizona and New Jersey who were paid on a purported salary basis, including but not limited to Core 2, Premier, Transition, New Accounts, and Rollover FSAs.

**1.31** **Settlement Claims Administrator.** The "Settlement Claims Administrator" will be Kurtzman Carson Consultants, which was selected by Class Counsel and approved by Defendants. The Settlement Claims Administrator will be responsible for locating Class Members; mailing the Notices to Class Members; responding to Class Member inquiries; resolving disputes relating to Class Members' workweeks worked and settlement share amounts; calculating Class Members' settlement shares; reporting on the state of the Settlement to the Parties; distributing settlement payments and withholding Class Members' share of taxes; remitting such withheld funds to the appropriate taxing authorities; coordinating collection and compilation of the Settlement Checks for filing with the Court; preparing a declaration regarding its due diligence in the claims administration process; and performing such other duties as the Parties may jointly direct or as are specified herein. Class Counsel will attempt to negotiate with Kurtzman Carson Consultants a reasonable flat fee for administration of the settlement. If Class Counsel is unable to negotiate what it believes to be a reasonable flat fee by the time of preliminary approval of the settlement, the Parties will select another settlement administrator candidate, with whom Class Counsel will attempt to negotiate a reasonable flat fee.

**1.32** **Settlement Checks.** "Settlement Checks" means checks issued to Class Members for their share of the Net Settlement Fund calculated in accordance with this Agreement.

**2.** **APPROVAL AND CLASS NOTICE**

**2.1** **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

**2.2    Retention of the Settlement Claims Administrator.** Class Counsel will be responsible for retaining the Settlement Claims Administrator. The Settlement Claims Administrator will be responsible for the mailing of Notices to Class Members in accordance with the Court's Preliminary Approval Order, distributing Service Awards, calculating the Settlement Checks in accordance with the Court's Final Approval Order, the claims administration process, distribution of the Settlement Checks to Class Members, providing the original Settlement Checks signed by the Class Members to Defendants' Counsel, and providing copies of the Settlement Checks to Class Counsel for filing with the Court.

(A)    The Parties will have equal access to the Settlement Claims Administrator and all information related to the administration of the settlement. The Settlement Claims Administrator will provide regular reports to the Parties regarding the status of the mailing of the Notices to Class Members, the claims administration process, and distribution of the Settlement Checks.

(B)    Defendants agree to cooperate with the Settlement Claims Administrator, provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Checks, and assist the Settlement Claims Administrator in locating Class Members.

**2.3    Preliminary Approval Motion.**

(A)    Within three (3) days after the execution of this Agreement, Named Plaintiffs will submit to Defendants a draft Motion for an Order Conditionally Certifying the Settlement Class and Preliminarily Approving the Class Action Settlement ("Preliminary Approval Motion"). Named Plaintiffs will allow Defendants two (2) days to review and comment on the terms of the Preliminary Approval Motion.

(B)    At the expiration of the review and comment period described *supra*, Named Plaintiffs will file the Preliminary Approval Motion. In connection with the Preliminary Approval Motion, Plaintiffs will submit to the Court a proposed Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing; a proposed Notice of Settlement of Collective Action Lawsuit and Fairness Hearing; a proposed distribution method for the Settlement Amount and calculation of the Settlement Checks; and a proposed Preliminary Approval Order.

(C)    The proposed Preliminary Approval Order will include the findings required by Federal Rule of Civil Procedure 23(a) and 23(b)(3). The Preliminary Approval Motion also will seek the setting of date(s) for individuals to opt-out of this Agreement, or provide objections to this Agreement, which date will be thirty (30) days from the mailing of the Notice to the Class Member but no later than 60 days from the Preliminary Approval Order, and for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date.

(D)     In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and a "Judgment of Dismissal" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Litigation with prejudice; (4) award Class Counsel fees and costs; and (5) award Service Awards to Named Plaintiffs and Reynolds as more fully set forth herein.  Defendants will not oppose the Preliminary Approval Motion.

(E)     If the Court denies the Preliminary Approval Motion, unless the Parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, the Litigation will resume as if no settlement had been attempted.  Defendants retain the right to contest whether the Litigation should be maintained as a class or collective action and to contest the merits of the claims being asserted in the Litigation.

(F)     The Parties will work together, diligently and in good faith, to obtain expeditiously a Preliminary Approval Order, Final Approval Order, and Final Judgment and Dismissal.

**2.4     Notice to Class Members**

(A)     Within ten (10) days of the Court's issuance of a Preliminary Approval Order, Defendants will provide the Settlement Claims Administrator, in electronic form, for all Class Members the following information:  name, Social Security Number, last known addresses, last known personal and business email addresses (to the extent they are maintained in an existing and readily-accessible electronic database), dates of employment, job titles, with dates, and workweeks within the applicable liability periods set forth in paragraphs 1.16 and 1.29 above as that information exists on file with Defendants ("Class List").

(B)     Within fifteen (15) days of the Court's issuance of the Preliminary Approval Order, the Settlement Claims Administrator will mail to all Rule 23 Class Members, via First-Class United States Mail, postage prepaid, the Court-approved Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing.  The Notice shall inform the Rule 23 Class Members their approximate settlement allocations and that, unless they follow the procedures for opting out (described in paragraph 2.5 below), they will be deemed to have accepted the settlement and the terms of this Agreement and will be issued a Settlement Check, which will contain a consent to join the Litigation and release of both their FLSA and state law claims, as set forth in this Agreement.

(C)     Within fifteen (15) days of the Court's issuance of the Preliminary Approval Order, the Settlement Claims Administrator will mail to all FLSA Class Members who are not also Rule 23 Class Members, via First-Class United States Mail, postage prepaid, the Court-approved Notice of Settlement of Collective Action Lawsuit and Fairness Hearing.  The Notice shall inform the eligible FLSA Class

Members of their eligibility to participate in the Settlement by signing and returning the enclosed consent form, and informing them of their approximate settlement allocations. The consent form shall be a simple one-page form that requires the FLSA Class Member to provide only his or her name, signature, and date of signing; and which can be returned by email, fax, or U.S. Mail. The Settlement Claims Administrator shall provide a stamped return envelope with each FLSA Class Member's Notice (but not with Rule 23 Class Members' notices). Eligible FLSA Class Members who are not also Rule 23 Class Members will only be bound by this Settlement and will only be entitled to receive a share of the Net Settlement Fund if they return their signed consent form postmarked within ninety (90) days from the mailing of the Notice to them and no later than one hundred twenty (120) days from the Preliminary Approval Order ("Consent Deadline").

(D)   The Settlement Claims Administrator will take reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned by the Post Office as undeliverable and shall attempt re-mailings as described in this Agreement. The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

**2.5    Rule 23 Class Member Opt-outs.**

(A)   Rule 23 Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First-Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement, and include his or her name, job title, address, and telephone numbers and states, "I opt out of the Merrill Lynch wage and hour settlement" ("Opt-out Statement"). To be effective, an Opt-out Statement must be postmarked within thirty (30) days from the mailing of the Notice to the Class Member and no later than sixty (60) days from the Preliminary Approval Order (the "Opt-Out Deadline").

(B)   Rule 23 Class Members whose first mailing was returned to the Settlement Claims Administrator as undeliverable will be allowed to opt-out or object up to thirty (30) days from the date of the second mailing but no later than sixty (60) days from the Preliminary Approval Order. The Settlement Claims Administrator shall not attempt more than two (2) mailings of the Notice to any Class Member, and no mailing shall occur more than thirty (30) days after the first mailing to Class Members.

(C)   The Settlement Claims Administrator shall keep accurate records of the dates on which it sends Notices to Rule 23 Class Members.

(D)   The Settlement Claims Administrator will stamp the postmark date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out

Statement on Class Counsel and Defendants' Counsel not later than three (3) days after receipt thereof. The Settlement Claims Administrator will also, within three (3) days of the end of the Opt-out Period, file with the Clerk of Court, stamped copies of any Opt-out Statements. The Settlement Claims Administrator will, within 24 hours of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery. The Settlement Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(E) Any Rule 23 Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement and will be issued a Settlement Check, which will contain a consent to join the Litigation and a release of both their FLSA and state law claims, as set forth in this Agreement.

## 2.6   Objections to Settlement.

(A) Rule 23 Class Members who wish to object to the settlement must do so in writing. To be considered, a written objection must be mailed to the Settlement Claims Administrator via First-Class United States Mail, postage prepaid, and be received by the Settlement Claims Administrator by a date certain thirty (30) days from the mailing of the Notice to the Rule 23 Class Member and no later than 60 days from the Preliminary Approval Order. The written objection must include the words, "I object to the settlement in the Merrill Lynch call-center overtime litigation." as well as all reasons for the objection. Any reasons not included in the written objection will not be considered. The written objection must also include the name, job title, address, and telephone numbers for the Rule 23 Class Member making the objection. The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email and overnight delivery no later than three (3) days after receipt thereof. The Settlement Claims Administrator will also file the date-stamped originals of any and all objections with the Court within three (3) days after the end of the Opt-out Period.

(B) A Rule 23 Class Member who files objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections by including the words, "I intend to appear at the fairness hearing" in her written objection. An Objector may withdraw his or her objections at any time. No Rule 23 Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with all procedures provided in this section and the previous section. No Rule 23 Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections. A Rule 23 Class Member

-9-

who has submitted an Opt-out Statement may not submit objections to the Settlement.

(C)     The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.7     Motion for Judgment and Final Approval.**  Not later than fifteen (15) days before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval.

**2.8     Entry of Judgment.**  At the Fairness Hearing, the Parties will request that the Court, among other things, (a) certify the New Jersey Class for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Rule 23 Class Members who have not timely opted out pursuant to Section 2.5, (d) approve the FLSA settlement, and (e) dismiss the Litigation with prejudice.

**2.9     Effect of Failure to Grant Final Approval.**  In the event the Court fails to enter Judgment in accordance with this Agreement or such Judgment does not become Final as defined herein, the Parties shall resume the Litigation unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of Judgment, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.   In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved:

(A)     The Litigation will proceed as if no settlement had been attempted.  In that event, the class certified for purposes of settlement shall be decertified, and Defendants may contest whether this Litigation should be maintained as a class or collective action and contest the merits of the claims being asserted by Plaintiffs in this action.  In such a case, the Parties will negotiate and submit for Court approval a revised case management schedule and Notice of the litigation will be sent out to FLSA Class Members per the Court's Order dated August 18, 2012 (Dkt. # 47).

(B)     Named Plaintiffs will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement.  Such notice shall be mailed by the Settlement Claims Administrator via First-Class United States Mail, postage prepaid, to the addresses used by the Settlement Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

**2.10    Releases and Consents to Join.**

(A)     A Rule 23 Class Member who does not timely return an Opt-out Statement will be issued a Settlement Check by the Settlement Claims Administrator from the QSF in accordance with the Final Approval Order.

(B)     All Settlement Checks shall contain on the back of the check, the following limited endorsement:

**"CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

I understand that I have up to 90 days from the date I was mailed this Settlement Check to sign and cash this Settlement Check.

By endorsing this check, I consent to join in the case entitled *Hernandez, et al., v. Merrill Lynch & Co, Inc., et al.*, No. 11 Civ. 8472 (KBF) (DCF), now pending in the United States District Court for the Southern District of New York, and agree to be bound by the Settlement Agreement negotiated by Class Counsel in that case.

I irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge any claim I might have for unpaid wages or overtime pay, or any other claim for violations of the federal or state wage and hour laws, relating to my employment with Defendants as a Financial Services Advisor and/or Investment Solutions Adviser as defined in the Amended *Hernandez* complaint up to and including October 31, 2012.

_____       Dated:_____
Signature"

(C)     The Settlement Checks will be mailed to Class Members and attorneys fees and costs checks mailed to Class Counsel by the Settlement Claims Administrator three (3) days after the time to appeal the Final Approval Order and Judgment for Dismissal has expired.

## 3.    SETTLEMENT TERMS AND ADMINISTRATION

### 3.1    Settlement Amount.

(A)     Defendants agree to pay up to a maximum gross amount of Seven Million and No/100ths Dollars ($7,000,000.00), which shall fully resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, any Court-approved Service Awards to Named Plaintiffs and Reynolds as more fully set forth herein, and the Settlement Claims Administrator's fees and costs. Other than any employer payroll taxes described in Section 3.5(C) that are not otherwise paid out of the Gross Settlement Amount, Defendants will not be required to pay more than the gross total of Seven Million and No/100ths Dollars ($7,000,000.00) under the terms of this Agreement.

(B)     By no later than ten (10) days after the date of the Preliminary Approval Order, Defendants shall deposit Two Hundred Fifty Thousand Dollars ($250,000.00) into the QSF. By no later than ten (10) days after the date of the Final Approval Order, Defendants shall deposit the remainder of the Gross Settlement Amount, minus any amount allocated to FLSA Class Members who are not also Rule 23 Class Members who do not submit a consent form as described in paragraph 2.4(C), into the QSF. Any interest accrued from the QSF shall immediately be added to and become part of the Settlement Amount. Class Members will have

90 days from the date of mailing to cash their Settlement Checks (the "Acceptance Period"). Class Members will be informed of the Acceptance Period in the Notices and on the Settlement Checks. Defendants represent that Six Million Seven Hundred Fifty Thousand Dollars ($6,750,000) will be set aside and available to transfer to the QSF within the time limits described above when and if the Court enters the Final Approval Order.

(C)     The Settlement Claims Administrator shall set aside $25,000.00 of the Gross Settlement Amount to cover any correctable errors or omissions, and satisfy any claim for relief allowed pursuant to Fed. R. Civ. P. 60(b)(1) or 60(d). If the amount set aside is insufficient to cover any correctible errors or omissions, the excess shall be funded from any amount subject to reversion. Any amount remaining 180 days after the Final Approval Order and after any correctable errors or omissions are covered will be redistributed among the Rule 23 Class Members and Opt-in Plaintiffs who have timely cashed their checks or, if the amount remaining is small enough that a redistribution is not sensible in the discretion of the Class Counsel, the unclaimed will be donated to the Charity under the *cy pres* doctrine.

(D)     For any Settlement Checks to Rule 23 Class Members or Service Award checks uncashed 180 days after the Final Approval Order, those funds attributable to workweeks worked in New Jersey during the Rule 23 Class Period will be redistributed among the Rule 23 Class Members who have timely cashed their checks or, if the amount remaining is small enough that a redistribution is not sensible in the discretion of the Class Counsel, the unclaimed will be donated to the Charity under the *cy pres* doctrine. Any funds attributable to workweeks worked in New Jersey prior to the Rule 23 Class Period or workweeks worked in states other than New Jersey shall revert to Defendants.

(E)     Any Settlement Checks to FLSA Class Members that remain uncashed 180 days after the Final Approval Order shall revert to Defendants.

**3.2     Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)     At the Fairness Hearing and Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than one third of the Gross Settlement Amount, and, in addition, for reimbursement of their actual litigation costs and expenses to be paid from the QSF. Defendants will not oppose this application.

(B)     The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

**3.3     Service Awards to Certain Plaintiffs.**

(A)     In return for services rendered to the Class Members, at the Fairness Hearing, Named Plaintiffs Rene Hernandez, Rebecca Heston, Jeffrey Steinberg, Trinity Gray, and William Rogers will each apply to the Court to receive Fifteen Thousand and No/100ths Dollars ($15,000.00) as a Service Award from the QSF, Named Plaintiff Eric Ebanks will apply to the Court to receive Twelve Thousand Five Hundred and No/100ths Dollars ($12,500.00) as a Service Award from the QSF, and Reynolds will apply to the Court to receive Four Thousand and No/100ths Dollars ($4,000.00) as a Service Award from the QSF.     The total amount of any Service Awards will be deducted from the Gross Settlement Amount.  Defendants will not oppose such applications.

(B)     The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.   The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal.

**3.4     Net Settlement Fund and Allocation to Class Members.**

(A)     The allocation to Class Members for Settlement Checks will be made from the Net Settlement Fund.

(B)     A Class Member's estimated proportionate share of the Net Settlement Fund will be determined by the Settlement Claims Administrator pursuant to the following formula:

(1)     Core 1 Class Members:

(a)     Five-Fourteenths of the Net Settlement Payment shall be distributed to Qualified Core 1 Class Members (the "Core 1 Net Settlement Fund").

(b)     Each Qualified Core 1 Class Member shall be assigned one point for each week worked as a Core 1 FSA between June 7, 2009 and October 31, 2012.

(c)     To calculate each Qualified Core 1 Class Member's proportionate share:

(i)     Add all points for Qualified Core 1 Class Members together to obtain the "Total Core 1 Denominator;"

(ii)    Divide the number of points for each Qualified Core 1 Class Member by the Total Core 1 Denominator to obtain

each Qualified Core 1 Class Member's "Portion of the Core 1 Net Settlement Fund."

(d)     Multiply each Qualified Core 1 Class Member's Portion of the Core 1 Net Settlement Fund by the Core 1 Net Settlement Fund to determine each Qualified Core 1 Class Member's "Settlement Award."

(2)     Salaried Class Members:

(a)     The balance of the Net Settlement Payment minus the Core 1 Net Settlement Fund shall be distributed to Qualified Salaried Class Members (the "Salaried Net Settlement Fund").

(b)     Each Qualified Salaried Class Member shall be assigned one point for each week worked as a Salaried FSA between June 7, 2009 and October 31, 2012.

(c)     To calculate each Qualified Salaried Class Member's proportionate share:

(i)     Add all points for Qualified Salaried Class Members together to obtain the "Total Salaried Denominator;"

(ii)    Divide the number of points for each Qualified Salaried Class Member by the Salaried Denominator to obtain each Qualified Salaried Class Member's "Portion of the Salaried Net Settlement Fund."

(d)     Multiply each Qualified Salaried Class Member's Portion of the Salaried Net Settlement Fund by the Salaried Net Settlement Fund to determine each Qualified Salaried Class Member's "Settlement Award." Tax Characterization.

(C)     For tax purposes, 50% of payments to Class Members pursuant to Section 3.4 shall be treated as back wages and 50% of such payments shall be treated as interest and/or liquidated damages.

(D)     Payments treated as back wages pursuant to Section 3.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security Number on an IRS Form W-2. Payments treated as interest and/or liquidated damages pursuant to Section 3.6(A) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and Social Security Number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding and reported to the IRS and the payee

under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099. Any service payment pursuant to Section 3.3 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

(E)    All state and federal payroll taxes imposed by applicable law, including the employer's share of the FICA tax and any federal and state unemployment tax due, will be paid first out of the amount of the Net Settlement Fund, if any, retained by or reverting to Defendants. If the payroll taxes due as a result of wage payments exceeds the amount of the Net Settlement Fund retained by or reverting to Defendants, then Defendants shall then deposit the estimated amount remaining due in the interesting-bearing account established by the Settlement Claims Administrator within the time limits set forth in Paragraph 3.1(B).

(F)    Plaintiffs acknowledge and agree that each will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement (other than taxes specified in Section 3.5(C)) and will indemnify, defend and hold Defendants and the Settlement Claims Administrator harmless from and against any and all taxes, interest, penalties, attorneys' fees and other costs imposed on Defendants or the Settlement Claims Administrator as a result of a Plaintiffs' failure to timely pay such taxes.

(G)    The employee portion of all applicable income and payroll taxes will be the responsibility of the individual Class Member receiving a Settlement Check or Service Award.

## 4.    RELEASE

### 4.1    Release of Claims.

By operation of the entry of the Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement,

(A)    Each individual Rule 23 Class Member who does not timely opt-out pursuant to this Agreement forever and fully releases Defendants from all wage and hour claims asserted under state law by and on behalf of the State Sub-Class (the "Released Rule 23 Claims"). The Released Rule 23 Claims include all claims under the state laws of New Jersey for unpaid regular or overtime wages, any related wage and hour claims, all derivative benefit claims (both ERISA and non-ERISA benefits), interest on such claims, and attorneys' fees and costs related to such claims relating to Rule 23 Class Members' employment with Defendants as FSAs from January 31, 2010, through October 31, 2012.

(B)    In addition to the Released Rule 23 Claims, by signing and cashing the Settlement Checks, all Rule 23 Class Members who do not timely opt-out, and all Opt-in Plaintiffs forever and fully release Defendants from all FLSA claims asserted in

- 15-

the Litigation ("Released FLSA Claims"). The Released FLSA Claims include all FLSA claims for unpaid regular or overtime wages, any related wage and hour claims, all derivative benefit claims (both ERISA and non-ERISA benefits), interest on such claims, liquidated damages, penalties, and attorneys' fees and costs related to such claims relating to Rule 23 Class Members' and Opt-in Plaintiffs' employment with Defendants as FSAs from June 7, 2009, through October 31, 2012.

(C)   In additional to the Released Rule 23 Claims and Released FLSA Claims, by signing and cashing their Settlement Checks, all Named Plaintiffs and Opt-In Plaintiffs receiving a Service Award forever and fully release Defendants from any and all claims, promises, debts, causes of action or similar rights of any type or nature they have or had against Defendants for any and all causes of action, obligations, costs, damages, losses, claims, demands, and benefits (including attorneys' fees and costs actually incurred), of whatever character, in law or in equity, known or unknown, suspected or unsuspected, of any kind or nature whatsoever, now existing or arising in the future from any act, omission, event, occurrence, or nonoccurrence that arise out of or relate to Named Plaintiffs' and Opt-In Plaintiffs' employment with Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., and Bank of America Corporation, and/or any of the Releasees to the date of the execution of this Agreement, including but not limited to those which in any way arise out of or relate to: (a) Named Plaintiffs' and Opt-In Plaintiffs' employment with Defendants, or the termination of their respective employment, such as claims for compensation, bonuses, commissions, lost wages, unused accrued vacation, sick pay or failure to provide or take meal or rest periods, reimbursement of expenses, interest or penalties; (b) the design or administration of any employee benefit program or Named Plaintiffs' and Opt-In Plaintiffs' respective entitlement to benefits under any such program; (c) any rights Named Plaintiffs and Opt-In Plaintiffs have to severance or similar benefits under any program, policy or procedure of Defendants; (d) any rights Named Plaintiffs and Opt-In Plaintiffs may have to the continued receipt of health or life insurance-type benefits; (e) any claims to attorneys' fees or other indemnities; and (g) any other claims or demands Named Plaintiffs and Opt-In Plaintiffs may have on any basis under any state or federal law relating to Named Plaintiffs' and Opt-In Plaintiffs' employment with Defendants.

(D)   Except as provided in this Agreement, Class Counsel and Named Plaintiffs, on behalf of the Class Members individually and collectively, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of the Class Members.  Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Litigation.

**4.2   Non-Admission of Liability.**  Defendants have agreed to the terms of settlement herein without in any way acknowledging any fault or liability, and with the understanding that

terms have been reached because this settlement will (i) provide substantial benefits to Defendants' shareholders, (ii) avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation, and (iii) put the claims in the Litigation finally to rest. Nothing in this agreement shall be deemed or used as an admission of liability by Defendants, or as an admission that a class should be certified for any purpose other than settlement purposes.

**5.     INTERPRETATION AND ENFORCEMENT**

**5.1     Cooperation Between the Parties; Further Acts.**   The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2     No Assignment.**  Class Counsel and Named Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**5.3     Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**5.4     Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiffs, the Opt-in Plaintiffs, and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**5.5     Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**5.6     Captions.**  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.7     Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**5.8     Blue Penciling/Severability.**  If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

**5.9     Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**5.10    Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**5.11    Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.12    CAFA Notice.**  Defendants shall timely provide notice as required by the Class Action Fairness Act ("CAFA").

**5.13    When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.14    Signatures of Named Plaintiffs.**  This Agreement is valid and binding if signed by Defendants' authorized representative and at least one Named Plaintiff and any Named Plaintiff's failure to sign the Agreement does not nullify the Agreement.

**5.15    Facsimile and Email Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**WE AGREE TO THESE TERMS,**

DATED: 10/22, 2012

**MERRILL LYNCH & CO., INC.**

By: _____

Its: _____

DATED: 10/22, 2012

**BANK OF AMERICA CORPORATION**

By: _____

Its: _____

DATED: 10/22, 2012

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.**

By: _____

Its: _____

DATED: Oct 22, 2012          **RENE HERNANDEZ**

DATED: _____, 2012          **REBECCA HESTON**

DATED: _____, 2012          **JEFFREY STEINBERG**

DATED: _____, 2012          **TRINITY GRAY**

DATED: _____, 2012          **ERIC EBANKS**

DATED: _____, 2012          **WILLIAM ROGERS**

DATED: _____, 2012          **BETTY REYNOLDS**

DATED: _____, 2012               **RENE HERNANDEZ**

_____

DATED: 10/23, 2012                **REBECCA HESTON**

_____

DATED: _____, 2012               **JEFFREY STEINBERG**

_____

DATED: _____, 2012               **TRINITY GRAY**

_____

DATED: _____, 2012               **ERIC EBANKS**

_____

DATED: _____, 2012               **WILLIAM ROGERS**

_____

DATED: _____, 2012               **BETTY REYNOLDS**

_____

DATED: _____, 2012     **RENE HERNANDEZ**

_____

DATED: _____, 2012     **REBECCA HESTON**

_____

DATED: 10/26, 2012     **JEFFREY STEINBERG**

_____

DATED: _____, 2012     **TRINITY GRAY**

_____

DATED: _____, 2012     **ERIC EBANKS**

_____

DATED: _____, 2012     **WILLIAM ROGERS**

_____

DATED: _____, 2012     **BETTY REYNOLDS**

_____

DATED: _____, 2012          **RENE HERNANDEZ**

_____

DATED: _____, 2012          **REBECCA HESTON**

_____

DATED: _____, 2012          **JEFFREY STEINBERG**

_____

DATED: 10/23, 2012            **TRINITY GRAY**

_____

DATED: _____, 2012          **ERIC EBANKS**

_____

DATED: _____, 2012          **WILLIAM ROGERS**

_____

DATED: _____, 2012          **BETTY REYNOLDS**

_____

DATED _____, 2012          RENE HERNANDEZ

DATED _____, 2012          REBECCA HESTON

DATED _____, 2012          JEFFREY STEINBERG

DATED _____, 2012          TRINITY GRAY

DATED 10/25, 2012             ERIC FRANKS

DATED _____, 2012          WILLIAM ROGERS

DATED _____, 2012          BETTY REYNOLDS

DATED: _____, 2012      **RENE HERNANDEZ**

_____

DATED: _____, 2012      **REBECCA HESTON**

_____

DATED: _____, 2012      **JEFFREY STEINBERG**

_____

DATED: _____, 2012      **TRINITY GRAY**

_____

DATED: _____, 2012      **ERIC EBANKS**

_____

DATED: 10·25, 2012      **WILLIAM ROGERS**

_____

DATED: _____, 2012      **BETTY REYNOLDS**

_____

DATED: \_\_\_\_\_, 2012          **RENE HERNANDEZ**

_____

DATED: \_\_\_\_\_, 2012          **REBECCA HESTON**

_____

DATED: \_\_\_\_\_, 2012          **JEFFREY STEINBERG**

_____

DATED: \_\_\_\_\_, 2012          **TRINITY GRAY**

_____

DATED: \_\_\_\_\_, 2012          **ERIC EBANKS**

_____

DATED: \_\_\_\_\_, 2012          **WILLIAM ROGERS**

_____

DATED: *10/25*, 2012          **BETTY REYNOLDS**

*Betty Reynolds*