**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Ossai Miazad
Juno Turner
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan Stern (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RENE HERNANDEZ, REBECCA HESTON, JEFFREY STEINBERG, TRINITY GRAY, ERIC EBANKS, and WILLIAM ROGERS, individually and on behalf all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>MERRILL LYNCH & CO., INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and BANK OF AMERICA CORPORATION,<br><br>        Defendants. | No. 11 Civ. 8472 (KBF) (DCF) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, AND APPROVAL OF THE FLSA SETTLEMENT

i

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ....................................................... 2

    I.      Factual Allegations ................................................................... 2

    II.     Overview of Investigation.......................................................... 2

    III.    History of Litigation ................................................................. 3

    IV.    Settlement Negotiations ............................................................ 4

    V.     CAFA Notice .......................................................................... 5

SUMMARY OF THE SETTLEMENT TERMS ............................................................ 5

    I.      The Settlement Fund ................................................................ 5

    II.     Eligible Employees .................................................................. 5

    III.    Releases.................................................................................. 6

    IV.    Allocation Formula .................................................................. 6

    V.     Attorneys' Fees, Litigation Costs, and Service Awards .................... 7

    VI.    Settlement Claims Administration................................................ 7

ARGUMENT......................................................................................................... 8

    I.      The Settlement Class Meets the Legal Standard for Class Certification. ............... 8

        A.    Numerosity...................................................................... 9

        B.    Commonality.................................................................... 9

        C.    Typicality ...................................................................... 10

        D.    Adequacy of the Named Plaintiffs...................................... 11

        E.    Certification Is Proper Under Rule 23(b)(3)........................... 12

        1.    Common Questions Predominate. ....................................... 12

       2.      A Class Action Is a Superior Mechanism. ................................................. 13

II.     The Proposed Settlement Is Fair, Reasonable, and Adequate and
       Should Be Approved in All Respects ................................................... 14

    A.    The Proposed Settlement Is Procedurally Fair.................................... 15

    B.    The Proposed Settlement Is Substantively Fair ................................. 17

       1.      Litigation Through Trial Would be Complex, Costly, and Long
              (*Grinnell* Factor 1) .................................................................... 17

       2.      The Reaction of the Class Has Been Positive
              (*Grinnell* Factor 2) .................................................................... 18

       3.      Discovery Has Advanced Far Enough to Allow the Parties to
              Resolve the Case Responsibly (*Grinnell* Factor 3)................................... 19

       4.      Plaintiffs Would Face Real Risks if the Case Proceeded
              (*Grinnell* Factors 4 and 5)............................................................ 20

       5.      Maintaining the Class Through Trial Would Not Be Simple
              (*Grinnell* Factor 6) .................................................................... 21

       6.      Defendants' Ability to Withstand a Greater Judgment Is Not
              Determinative (*Grinnell* Factor 7) ............................................ 22

       7.      The Settlement Fund Is Substantial, Even in Light of the Best
              Possible Recovery and the Attendant Risks of Litigation
              (*Grinnell* Factors 8 and 9)........................................................ 22

III.    Approval of the FLSA Settlement Is Appropriate Under Federal Law ................ 24

CONCLUSION........................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..........................................................................................12, 13

*Ansoumana v. Gristede's Operating Corp.*,
   201 F.R.D. 81 (S.D.N.Y. 2001) ...................................................................................24

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)............................................................17, 19, 20, 22

*In re BankAmerica Corp. Sec. Litig.*,
   210 F.R.D. 694 (E.D. Mo. 2002) ...........................................................................15, 16

*Blackmon v. Brookshire Grocery Co.*,
   835 F.2d 1135 (5th Cir. 1988) .......................................................................................23

*Cagan v. Anchor Sav. Bank FSB*,
   No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)............................................23

*Castagna v. Madison Square Garden, L.P.*,
   No. 09 Civ. 10211, 2011 WL 2208614 (S.D.N.Y. Jun. 7, 2011).........................................16

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)........................................................................... *passim*

*Clark v. Ecolab Inc.*,
   Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,
   2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009).....................................................................13

*Clark v. Ecolab Inc.*,
   Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,
   2010 WL 1948198 (S.D.N.Y. May 11, 2010) .....................................................................10

*Clements v. Serco, Inc.*,
   530 F.3d 1224 (10th Cir. 2008) .....................................................................................23

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995).............................................................................................9

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)........................................................................................14, 15

*Damassia v. Duane Reade, Inc.*,
   250 F.R.D. 152 (S.D.N.Y. 2008) ...................................................................................14

*Denney v. Deutsche Bank AG,*
   443 F.3d 253 (2d Cir. 2006)...........................................................................8

*Desmond v. PNGI Charles Town Gaming, LLC,*
   630 F.3d 351 (4th Cir. 2011) .......................................................................23

*Diaz v. E. Locating Serv. Inc.,*
   No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) .........................16

*Dziennik v. Sealift, Inc.,*
   No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007).........................11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.,*
   No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .........................15

*Frank v. Eastman Kodak Co.,*
   228 F.R.D. 174 (W.D.N.Y. 2005)......................................................... *passim*

*Gen. Tel. Co. of Sw. v. Falcon,*
   457 U.S. 147 (1982).....................................................................................9

*Green v. Wolf Corp.,*
   406 F.2d 291 (2d Cir. 1968)...........................................................................13

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) .......................................................................14

*Henry v. Quicken Loans, Inc.,*
   698 F.3d 897 (2012).....................................................................................21

*In re Interpublic Sec. Litig.,*
   No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) .........................16

*In re Ira Haupt & Co.,*
   304 F. Supp. 917 (S.D.N.Y. 1969)...................................................................20

*Johnson v. Brennan,*
   No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ..............12, 14, 20

*Kamean v. Local 363, Int'l Bhd. of Teamsters,*
   109 F.R.D. 391 (S.D.N.Y. 1986) .....................................................................9

*Lynn's Food Stores, Inc. v. United States,*
   679 F.2d 1350 (11th Cir. 1982) ................................................................24, 25

*Maley v. Del Global Techs. Corp.,*
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)...............................................................18

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997)..........................................................................................10

*Marlo v. United Parcel Serv., Inc.*,
   639 F.3d 942 (9th Cir. 2011) ........................................................................................21

*Matheson v. T-Bone Rest., LLC*,
   No. 09 Civ. 4214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011)..................................20

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) ..................................................................................12

*McKenna v. Champion Intern. Corp.*,
   747 F.2d 1211 (8th Cir. 1984) ......................................................................................24

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*,
   471 F.3d 24 (2d Cir. 2006)............................................................................................12

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012)..........................................................10, 11, 12, 14

*Myers v Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010)..........................................................................................21

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)..........................................................................................22

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ........................................................................................23

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ..................................................................................20

*Palacio v. E\*TRADE Fin. Corp.*,
   No. 10 Civ. 4030, 2012 WL 2384419 (S.D.N.Y. Jun. 22, 2012).................................. *passim*

*Perkins v. S. New England Tel., Co.*,
   No. 07 Civ. 967, 2011 WL 4460248 (D. Conn. Sept. 27, 2011) ...................................23

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006).......................................................................................9

*Reyes v. Altamarea Grp., LLC*,
   No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) .............................14, 15

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,
   No. 94 Civ. 5587, 2003 WL 21136726 (S.D.N.Y. May 15, 2003)................................18

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)........................................................................................10

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986)........................................................................................12

*Sewell v. Bovis Lend Lease, Inc.*,
    No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012).............................9

*Spann v. AOL Time Warner, Inc.*,
    No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005)...............................15

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ...........................15

*Torres v. Gristede's Corp.*,
    No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006) ...........................13

*Toure v. Amerigroup Corp.*,
    No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012)..............................15

*Toure v. Cent. Parking Sys. of N.Y.*,
    No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ...........................11

*Urnikis–Negro v. Am. Family Prop. Servs.*,
    616 F.3d 665 (7th Cir. 2010) ......................................................................................23

*Valerio v. Putnam Assocs. Inc.*,
    173 F.3d 35 (1st Cir. 1999)..........................................................................................23

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007).............................20

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)..................................................................................12, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)..............................................................................14, 15, 16

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)........................................................................................19

*Willix v. Healthfirst, Inc.*,
    No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)...............................19

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008)........................................................................19

*Zivali v. AT&T Mobility, LLC*,
  784 F. Supp. 2d 456 (S.D.N.Y. 2011).....................................................................................22

OTHER AUTHORITIES

Fed. R. Civ. P. 23(a) ..........................................................................................................8, 9, 11

Fed. R. Civ. P. 23(b) .........................................................................................................8, 12, 13

Fed. R. Civ. P. 23(e) ..............................................................................................................14

## INTRODUCTION

Plaintiffs submit this Memorandum of Law in support of their Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiffs' Motion for Final Approval").  The Parties' $7,000,000 settlement of this wage and hour class and collective action satisfies all of the criteria for final approval.  Plaintiffs seek an order: (1) certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Joint Stipulation of Settlement and Release ("Settlement Agreement") attached as Exhibit A to the Declaration of Justin M. Swartz  in Support of Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of Class Action Settlement, and Approval of the FLSA Settlement ("Swartz Declaration");[1] and (3) approving the FLSA Settlement.

On November 15, 2012, the Court took the first step in the settlement approval process by granting preliminary approval, directing that notice be mailed to class members, and setting the date for the final fairness hearing.  Swartz Decl. ¶ 19; ECF No. 57.  The members of the class have been notified of the terms of the settlement, the monetary relief, the allocation formula, and their right to opt out of or object to the settlement.  No Class Member has objected to or opted out of the settlement.  Ex. B (Declaration of Katie Horton ("Horton Decl.")) ¶¶ 25-26, Ex. A (Rule 23 Notice), Ex. C (FLSA Notice).  With such overwhelming support, and for the reasons stated below, the Court should grant final approval.

---

[1]     Unless otherwise indicated, all exhibits are attached to the Swartz Declaration.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Factual Allegations

Plaintiffs and Class Members are current and former employees of Merrill who have worked as Financial Solutions Advisors or in comparable positions ("FSAs")[2] at Merrill call centers in Florida, New Jersey, and Arizona.  Plaintiffs alleged that Merrill violated the Fair Labor Standards Act ("FLSA") and the New Jersey Wage and Hour Law ("NJWHL") by failing to pay entry-level FSAs classified as non-exempt ("Core I FSAs") overtime for hours worked "off the clock," and by improperly classifying more experienced FSAs ("Salaried FSAs") as exempt and failing to pay them overtime.  Swartz Decl. ¶ 4.

### II.     Overview of Investigation

Before and during the formal litigation of this action, Plaintiffs conducted a thorough investigation into the merits of the claims and defenses.  *Id.* ¶ 5.  Plaintiffs focused their investigation and legal research on the underlying merits of Class Members' claims, the damages to which they were entitled, and the propriety of class certification.  *Id.*  Plaintiffs' counsel interviewed Plaintiffs and several other workers to determine the hours that they worked, the wages they were paid, the nature of their job duties, and other information relevant to their claims.  *Id.* ¶ 6.  Plaintiffs also conducted in-depth background research on Merrill, including reviewing SEC filings and other public documents, to obtain information on Merrill's corporate structure and facilities.  *Id.* ¶ 7.  Plaintiffs also obtained numerous job postings for the FSA positions to determine the nature of the job duties of the positions.  *Id.*  Plaintiffs and Opt-in Plaintiff Betty Reynolds also provided detailed declarations regarding their hours worked, their wages paid, and the nature of their job duties.  *Id.* ¶ 8.

---

[2]      Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement.

III.   **History of Litigation**

On November 22, 2011, Plaintiffs Rene Hernandez, Rebecca Heston, and Jeffrey Steinberg filed a Collective Action Complaint against Defendants, pursuant to 29 U.S.C. § 216(b), in the United States District Court for the Southern District of New York on behalf of themselves and others similarly situated. *Id.* ¶ 9. Plaintiffs alleged that Defendants violated the FLSA by requiring Core I FSAs to work off the clock and sought recovery of overtime wages, attorneys' fees and costs, interest, and liquidated damages. *Id.* Defendants answered the complaint on December 27, 2011. *Id.* ¶ 10.

On January 31, 2012, Plaintiffs filed an amended complaint adding three additional named plaintiffs, Trinity Gray, Eric Ebanks, and William Rogers, class claims under New Jersey law, and collective and class claims on behalf of Salaried FSAs. *Id.* ¶ 11. The amended complaint alleged that Defendants violated the FLSA and New Jersey law by requiring Core I FSAs to work off the clock and by improperly classifying Salaried FSAs as exempt from federal and state overtime requirements. *Id.* Defendants answered the amended complaint on February 14, 2012. In addition to the six named Plaintiffs, four other former Merrill FSAs also joined the case as Opt-in Plaintiffs.[3] *Id.* ¶ 12.

On March 9, 2012, Plaintiffs filed a Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA ("216(b) Motion"). *Id.* ¶ 14. Defendants filed their opposition on March 29, 2012. *Id.* On April 6, 2012, the Court granted Plaintiffs' motion and directed Defendants to produce a class list within 45 days. *Id.*

---

[3]     Another former FSA, Jeffrey Tillman, opted into the case on February 21, 2012. Swartz Decl. ¶ 13. Plaintiffs' counsel subsequently learned that he did not work as an FSA during the relevant statute of limitations period and withdrew his consent form on March 9, 2012. *Id.*

The Parties engaged in expedited discovery relating to the 216(b) Motion, and, following the Court's decision on that motion, conducted more extensive discovery. *Id.* ¶ 15. Each side served and responded to written document requests and interrogatories. *Id.* Defendants produced over 7,000 pages of documents, which Plaintiffs' Counsel reviewed. *Id.* Plaintiffs served a Rule 30(b)(6) deposition notice on Defendants and informed them of their intention to notice the depositions of more than a dozen additional witnesses. *Id.* Defendants noticed the depositions of all six Plaintiffs and had completed the depositions of four of them before the Parties agreed to stay the proceedings. *Id.*

On June 5, 2012, the Parties agreed to enter into formal settlement negotiations and requested that the Court enter a stay of all discovery, and delay the sending of notice pursuant to § 216(b) of the FLSA until after the proposed stay had expired. *Id* ¶ 16. The Court granted the request. *Id.* The Parties subsequently agreed to toll the claims of potential FLSA Class Members during the period of the stay. *Id.*

**IV.** **Settlement Negotiations**

In or around June 2012, the Parties agreed to attempt to resolve this matter through non-binding private mediation. *Id.* ¶ 17. In preparation for mediation, the Parties exchanged informal discovery to allow them to perform damages calculations. *Id.* ¶ 18. As part of this exchange, Merrill produced data showing the number of Class Members in relevant job titles, average earnings, weeks worked, and location of employment. *Id.* Plaintiffs performed damages calculations based on the data Defendants provided. *Id.*

On July 13, 2012, the Parties attended a mediation session in San Francisco, California, with David Rotman, Esq., a well-known and experienced mediator. *Id.* ¶ 19. After about nine hours of good faith negotiations, Mr. Rotman made a mediator's proposal to resolve the matter.

*Id.*  On July 30, 2012, Mr. Rotman informed the parties that both sides had agreed to accept that portion of his proposal that would resolve all of the claims at issue for $7 million.  *Id.*  During the next several weeks, the Parties negotiated the remaining terms of the settlement, which were memorialized in a formal Settlement Agreement.  *Id.* ¶ 20.

**V.**     **CAFA Notice**

Defendants sent notices to federal and state authorities required by the Class Action Fairness Act ("CAFA") on November 16, 2012.  *See* 28 U.S.C. § 1715(d); Swartz Decl. ¶ 24. The 90-day CAFA notice period  concluded on February 14, 2013.  *Id.*

**SUMMARY OF THE SETTLEMENT TERMS**

**I.**     **The Settlement Fund**

The Settlement Agreement establishes a Gross Settlement Amount of up to $7,000,000 to settle claims against the Defendants (the "Fund").  Ex. A (Settlement Agreement) § 3.1(A).  The Fund covers Class Members' awards, service payments, attorneys' fees and costs, and the settlement administrator's fees and costs.  *Id.*  Defendants will pay all applicable employer-side payroll taxes.  *Id.* §§ 3.1(A); 3.5(C); 3.5(E).

**II.**     **Eligible Employees**

Class Members who are entitled to receive payments from the Fund include two groups of Merrill employees.  The "Rule 23 Class" includes all current and former FSAs employed by Defendants in call centers in the State of New Jersey between January 31, 2010 and October 31, 2012.  *Id.* § 1.29.  The "FLSA Class" includes all current and former FSAs employed by Merrill in call centers between June 7, 2009 and October 31, 2012.  *Id.* § 1.16.

### III.   <u>Releases</u>

All FLSA Class Members who sign and cash a Settlement Check and all Rule 23 Class Members who have not timely opted out will release all federal wage and hour law claims.  *Id.* §§ 2.10, 4.1(B).   All Rule 23 Class Members who do not timely opt-out release all state wage and hour claims asserted on behalf of the Rule 23 Class, regardless of whether they sign and cash a Release, Consent, and Settlement Check.  *Id.* § 4.1(A).

### IV.   <u>Allocation Formula</u>

Class Members will be paid pursuant to an allocation formula based on the number of weeks they worked during the relevant periods, and whether they were Core I or Salaried Class Members.  Five-fourteenths of the Net Settlement Fund (the "Core I Net Settlement Fund"), will be distributed to Core I Class Members.  *Id.* § 3.4(B)(1)(a).  The balance of the Net Settlement Fund less the Core I Net Settlement fund will be distributed to Salaried Class Members (the "Salaried Net Settlement Fund").  *Id.* § 3.4(B)(2)(a).

Any uncashed settlement checks to FLSA Class Members remaining in the Fund 180 days after the Final Approval Order will revert to Defendants.  *Id.* § 3.1(E).  If uncashed settlement checks to Rule 23 Class Members remain in the Fund 180 days after the Final Approval Order, funds attributable to workweeks worked in New Jersey during the Rule 23 Class Period will be redistributed among the Rule 23 Class Members who timely cashed their checks or donated under the *cy pres* doctrine.  *Id.* § 3.1(D).  Uncashed funds attributable to New Jersey workweeks prior to the Rule 23 Class Period or workweeks worked in states other than New Jersey shall revert to Defendants.  *Id.*

**V.**    **Attorneys' Fees, Litigation Costs, and Service Awards**

Class Counsel have filed a Motion for Approval of Attorneys' Fees and Reimbursement of Expenses and a Motion for Approval of Service Awards simultaneously with this Motion.

**VI.**    **Settlement Claims Administration**

The parties retained Kurtzman Carson Consultants ("KCC"), a wage and hour claims administrator, to serve as the Settlement Claims Administrator ("Claims Administrator"). Swartz Decl. ¶ 29.  The Claims Administrator's fees of $26,000 will be paid from the Fund.  Ex. A (Settlement Agreement) § 1.20; Ex. B (Horton Decl.) ¶ 29.

On December 4, 2012, the Claims Administrator mailed the Court-approved Rule 23 Notice and FLSA Notice ("Notices") to approximately 1,535 Class Members whose names and addresses were provided by Defendants.  Ex. B (Horton Decl.) ¶¶ 7,18.  After the Notices were mailed, the Claims Administrator received 41 notices returned as undeliverable without forwarding addresses.  *Id.* ¶ 20.  Notice Packets were re-mailed to Class Members for whom new addresses were located.  *Id.* ¶ 21.  No new addresses were found for 13 Class Members.  *Id.* ¶ 23.

The Rule 23 Notice advised Rule 23 Class Members, among other things, of their right to object to or exclude themselves from the settlement, and explained how to do so.  Ex. B (Horton Decl.), Ex. A (Rule 23 Notice).  The latest deadline for Rule 23 Class Members to opt out of or object to the settlement was January 18, 2013.  *Id.* ¶¶ 25-26; Ex. A (Settlement Agreement) § 2.5.  As of March 6, 2013, no Class Member has objected to or opted out of the Settlement.  Ex. B (Horton Decl.) ¶¶ 25-26.   The FLSA Notice advised FLSA Class Members, among other things, that they had to submit a timely Consent Form to the Claims Administrator in order to participate in the settlement and receive a settlement payment.  Ex. B (Horton Decl.), Ex. B (FLSA Notice).  The latest deadline for FLSA Class Members to submit a timely Consent Form

is March 19, 2013.  Ex. B (Horton Decl.) ¶ 27.  As of March 6, 2013, 561 Consent Forms have

been filed by FLSA Class Members, which corresponds to an opt-in rate of 60% of all FLSA

Class Members.  *Id.* ¶¶ 9, 27.

## ARGUMENT

**I.    The Settlement Class Meets the Legal Standard for Class Certification.**

When faced with a proposed class action settlement, courts first examine whether the

settlement class can be certified.  *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir.

2006).  On November 15, 2012, the Court preliminarily certified the settlement class.  The Court

should now grant final certification because all of the requirements of Fed. R. Civ. P. 23 ("Rule

23") are met.  Plaintiffs respectfully request that the Court certify the following class for

purposes of effectuating the settlement:

> all current and former FSAs employed by Defendants in its call center in
> the State of New Jersey between January 31, 2010 and October 31, 2012.

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are

met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that: (1) the class is so

numerous that joinder of all members is impracticable; (2) there are questions of law or fact

common to the class; (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class; and (4) the representative parties will fairly and adequately

protect the interests of the class.  Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that:

> questions of law or fact common to the members of the class predominate over
> any questions affecting only individual members, and that a class action is
> superior to other available methods for the fair and efficient adjudication of the
> controversy.

*Id.* at (b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction,

and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### A.   Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members . . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs easily satisfy the numerosity requirement because there are approximately 606 Rule 23 Class Members. Ex. B (Horton Decl.) ¶ 9.

### B.   Commonality

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005). The proper question is whether there is a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181. Even where state and federal wage and hour claimants do not share "exact experiences in terms of uncompensated or improperly compensated hours worked, the claims are based on similar allegations, which give rise to the same or similar legal arguments." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *3 (S.D.N.Y. Apr. 16, 2012)

This case involves numerous common issues.  Plaintiffs and Class Members all bring the identical claims that, in the case of Core I FSAs, Defendants failed to pay them overtime wages for hours worked "off the clock," and, in the case of Salaried FSAs, Defendants misclassified them as exempt employees and failed to pay them overtime wages in violation of state wage and hour laws.  *See  Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012) (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had a policy of not paying all class members overtime pay); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *3 (S.D.N.Y. May 11, 2010) (common issues included "whether [defendant] failed to pay [p]laintiffs and the . . . [c]lass [m]embers overtime premium pay for all hours they worked over 40 in a workweek; and . . . whether [defendant] maintained accurate time records of the hours [p]laintiffs and the state settlement [c]lass [m]embers worked")).

## C.    Typicality

Typicality is also satisfied because "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted).  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182.  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class.  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims.  Defendants classified all Plaintiffs and Class Members

who worked in Salaried FSA positions as exempt from overtime pursuant to the same company

policy.  Similarly, Defendants failed to pay all Plaintiffs and Class Members who worked in

Core I FSA positions overtime wages for hours worked "off the clock" pursuant to the same

company policies and practices.  Plaintiffs shared the same job titles and had the same job duties

as Class Members.  They also claim the same injuries as do Class Members – that Defendants

failed to properly pay them for overtime hours worked.  Because Plaintiffs' wage and hour

claims arise from the same factual and legal circumstances that form the basis of Class

Members' claims, Plaintiffs satisfy the typicality requirement.  *See Morris*, 859 F. Supp. 2d at

616 (typicality satisfied where "[p]laintiffs' claims for overtime pay [arose] from the same

factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims");

*Frank*, 228 F.R.D. at 182 (finding that class members satisfied the typicality requirement where

"all class members . . . allege that Kodak failed to pay them . . . overtime wages for hours

worked in excess of forty per week during the relevant time period").

> ### D.    Adequacy of the Named Plaintiffs

Plaintiffs are adequate class representatives because they have "fairly and adequately

protect[ed] the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement

exists to ensure that the named representatives will have an interest in vigorously pursuing the

claims of the class, and . . . have no interests antagonistic to the interests of other class

members."  *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7

(S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted).  "[O]nly a conflict that goes to the

very subject matter of the litigation will defeat a party's claim of representative status."  *Dziennik

v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal

quotation marks omitted).  There is no evidence that the Plaintiffs' and Class Members' interests

are at odds.  *See Morris*, 859 F. Supp. 2d at 616 (finding adequacy requirement met where there

was no evidence that plaintiffs' and class members' interests were at odds); *Johnson v. Brennan*,

No. 10 Civ. 4712, 2011 WL 4357376, at *5 (S.D.N.Y. Sept. 16, 2011) (same).

### E.   Certification Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any

questions affecting only individual members and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This

inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by

representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Satisfaction of

Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality."

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### 1.   Common Questions Predominate.

Predominance requires that "the issues in the class action that are subject to generalized

proof, and thus applicable to the class as a whole . . . predominate over those issues that are

subject only to individualized proof."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d

124, 136 (2d Cir. 2001) (internal quotation marks omitted), *abrogated on other grounds by Miles

v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006).  The

essential inquiry is whether "liability can be determined on a class-wide basis, even when there

are some individualized damage issues."  *In re Visa Check*, 280 F.3d at 139.  Where plaintiffs are

"unified by a common legal theory" and by common facts, the predominance requirement is

satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Class Members' common factual allegations and common legal theory – that

Defendants violated federal and state wage and hour laws by failing to pay them for premium

overtime hours, and in the case of Salaried FSAs, by misclassifying them as exempt from overtime – predominates over any factual or legal variations among class members. *See Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *5 (S.D.N.Y. Nov. 27, 2009) (finding common factual allegations and common legal theory to predominate over factual and legal variations among class members in wage and hour misclassification case); *Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages"). Plaintiffs therefore satisfy Rule 23(b)(3).

## 2.   A Class Action Is a Superior Mechanism.

Plaintiffs also satisfy the superiority requirement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[4]

Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack

---

[4]   Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (internal citation omitted); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor . . . when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (internal quotation marks omitted).

the resources to bring their claims individually.  *See Johnson*, 2011 WL 4357376, at *7;  *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *3 (S.D.N.Y. Aug. 16, 2011). Plaintiffs and the Class Members have limited financial resources with which to prosecute individual actions.  Concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within its jurisdiction.

Employing the class device here will not only achieve economies of scale for Class Members, but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and preventing inconsistent adjudications.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (class action superior when individual claims would burden judiciary, be inefficient for plaintiffs, and yield inconsistent results); *see also Morris*, 859 F. Supp. 2d at 617; *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161, 164 (S.D.N.Y. 2008).

## II.     The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.

Rule 23(e) requires court approval for a class action settlement to insure that it is procedurally and substantively fair, reasonable and adequate.  Fed. R. Civ. P. 23(e).  To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits.  *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937,

at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions").  When, as here, "a settlement is negotiated prior to class certification, . . . it is subject to a higher degree of scrutiny in assessing its fairness."  *D'Amato*, 236 F.3d at 85; *Spann*, 2005 WL 1330937, at *5.  Even under high scrutiny, procedural and substantive considerations support approving the proposed settlement.

> ### A.     The Proposed Settlement Is Procedurally Fair.

The proposed settlement is procedurally fair because it was reached through arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims.  *See Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs conducted a thorough investigation and enlisted the services of an experienced employment law mediator); *Reyes*, 2011 WL 4599773, at *4 (same).  A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato,* 236 F.3d at 85.  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002).

Here, the settlement was reached after Plaintiffs conducted a thorough investigation and evaluation of the claims, engaged in litigation and substantial formal discovery, and participated in extensive negotiations with Defendants.  Swartz Decl. ¶¶ 5-21.  The Parties attended an all-

day mediation with an experienced employment law mediator on July 13, 2012, during which they engaged in a vigorous exchange regarding their respective claims and defenses. *Id.* ¶ 19. At the conclusion of the mediation, the mediator made a proposal to resolve the matter, which the Parties accepted. *Id.*  During the next several weeks, the parties negotiated the remaining terms of the settlement, which were  memorialized in a detailed final settlement agreement including all terms. *Id.* ¶ 20, Ex. A (Settlement Agreement).  At all times during the settlement process, the parties negotiated on an arm's-length basis.  Swartz Decl. ¶ 21.  These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Palacio v. E\*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 2384419, at \*3 (S.D.N.Y. Jun. 22, 2012); *Wal-Mart Stores*, 396 F.3d at 116.

In addition, courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at \*6 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at \*3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at \*12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case).  The parties here acted responsibly in settling the case in the early stages of litigation. *See In re Interpublic Sec. Litig.*, 2004 WL 2397190, at \*12.

**B.  The Proposed Settlement Is Substantively Fair.**

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the

substantive fairness of a class action settlement.  495 F.2d at 448, *abrogated on other grounds by*

*Goldberger v. Integrated Res., Inc*., 209 F.3d 43 (2d Cir. 2000).  The *Grinnell* factors guide

district courts in making this determination.  They are: (1) the complexity, expense and likely

duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the

amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing

damages;  (6) the risks of maintaining the class action through the trial; (7) the ability of the

defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement

fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement

fund to a possible recovery in light of all the attendant risks of litigation.  *Id*. at 463.  All of the

*Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

### 1.  Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to

avoid significant expense and delay, and instead ensure recovery for the class.  "Most class

actions are inherently complex and settlement avoids the costs, delays and multitude of other

problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp.

2d 164, 174 (S.D.N.Y. 2000) ("*In re Austrian*"), *aff'd sub. nom. D'Amato*, 236 F.3d 78.  This

case is no exception, with approximately 1,535 Class Members and claims under federal and

state law.  Ex. B (Horton Decl.) ¶ 7.

Further litigation would cause additional expense and delay.  Before agreeing to stay

proceedings, the Parties had scheduled numerous depositions that would proceed if the Parties

continued to litigate.  Swartz Decl. ¶ 15.  Extensive additional discovery would be required to

further establish liability and damages.  In addition, the Parties likely would cross-move for summary judgment on Defendants' exemption defenses.  If the Court denied the motions, a fact-intensive trial would be necessary to determine Plaintiffs' and the class's exemption status.  A trial would be lengthy and complex and consume tremendous time and resources for all Parties and the Court.  Any judgment would likely be appealed, further extending the litigation.  The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

**2.**   **The Reaction of the Class Has Been Positive
(*Grinnell* Factor 2).**

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).  The lack of class member objections "may itself be taken as evidencing the fairness of a settlement."  *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94 Civ. 5587, 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003).

Here, the Notices sent to Class Members included a detailed explanation of the allocation formula and an estimate of each Class Member's award.  Ex. B (Horton Decl.), Ex. A (Rule 23 Notice) ¶¶ 7-8, Ex. B (FLSA Notice) ¶¶ 7-8.  The Rule 23 Notice also informed Rule 23 Class Members of their right to object to or exclude themselves from the settlement and explained how to do so.  Ex. B (Horton Decl.), Ex. A (Rule 23 Notice) ¶¶ 12, 17-18.  As of March 6, 2013, no Class Member has objected to or opted out of the settlement.  Ex. B (Horton Decl.) ¶¶ 25-26.  Class Counsel has also communicated with numerous Class Members who have reacted very positively to the settlement.  Swartz Decl. ¶ 30.  This favorable response demonstrates that the class approves of the settlement and supports final approval.  *See Palacio*, 2012 WL 2384419, at *3 (where no class members objected to or opted out of the settlement, finding that favorable

18

response weighed in favor of final approval); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45

(S.D.N.Y. 2008) ("[t]he fact that the vast majority of class members neither objected nor opted

out is a strong indication" of fairness); *see also Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011

WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where 7 of 2,025 class

members submitted timely objections and 2 requested exclusion).

> **3.      Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).**

Although preparing this case through trial would require hundreds of hours of discovery

for both sides, the Parties have completed enough informal and formal discovery to recommend

settlement.  The proper question is "whether counsel had an adequate appreciation of the merits

of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d

Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)) (internal

quotation marks omitted).  "[T]he pretrial negotiations and discovery must be sufficiently

adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to

ferret out facts helpful to the prosecution of the suit."  *In re Austrian*, 80 F. Supp. 2d at 176

(internal quotations omitted).

The Parties' discovery here meets this standard.  Plaintiffs' Counsel conducted an

extensive investigation of the claims and defenses before filing the case.  Swartz Decl. ¶¶ 5-8.

During litigation, the Parties engaged in significant formal discovery: each side served and

responded to document requests and interrogatories, Plaintiffs reviewed over 7,000 pages of

documents produced by Defendants, and Defendants took the depositions of four of the named

Plaintiffs.  *Id.* ¶ 15.  To allow the Parties to perform damages calculations in preparation for

mediation, the Parties exchanged targeted discovery, including data showing the number of Class

Members in relevant job titles, average salaries, weeks worked, and location of employment.  *Id.*

¶ 18.  This discovery was more than sufficient to allow the Parties to thoroughly assess the merits and risks of the case and to calculate damages.  *See, e.g.*, *Palacio*, 2012 WL 2384419, at *4 (granting final approval where parties conducted informal discovery, but no depositions were taken); *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (granting final approval where parties engaged in informal information exchange but no depositions); *Johnson*, 2011 WL 4357376, at *9-10 (granting final approval where parties engaged in informal discovery and no depositions were taken).  This factor therefore favors final approval.

**4.      Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).**

Although Plaintiffs believe their case is strong, it is subject to considerable risk. "Litigation inherently involves risks."  *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).  In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).

A trial on the merits would involve significant risks for Plaintiffs as to both liability and damages.  Plaintiffs would have had to prove that Core I FSAs worked overtime hours for which they were not compensated, and that Defendants knew or should have known that this work was being performed.  Plaintiffs also would have to overcome Merrill's defense that Salaried FSA Class Members were subject to the administrative exemption to the FLSA, and the corresponding

20

exemptions under applicable state laws.  While Plaintiffs believe that they could ultimately establish Defendants' liability on both issues, this would require significant factual development. For example, after seven years of litigation and a five-week trial, a jury in a similar misclassification case involving financial services employees classified as exempt administrative employees reached a defense verdict, which was upheld by both the district court and the Sixth Circuit Court of Appeals.  *See Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (2012).  Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The proposed settlement alleviates these uncertainties.  This factor therefore weighs in favor of final approval.

**5.     Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).**

The risk of obtaining class certification and maintaining both conditional and class certification through trial is also present.  The Court has not certified the Rule 23 Class yet, and the Parties anticipate that such a determination would be reached only after further discovery and intense, exhaustive briefing.  In opposing class certification, Defendants would likely argue that the differences among various job positions and worksites and other individualized questions preclude class certification.  Although Plaintiffs disagree with these agreements, defendants have prevailed on arguments like these.  *See, e.g.*, *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011) (affirming decertification, citing "variations in job duties that appear to be a product of employees working at different facilities, under different managers, and with different customer bases"); *Myers v Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010) (affirming denial of class certification in misclassification case based on evidence that class members' duties varied by location).  In addition, after the close of discovery, Defendants would likely move to decertify

21

the FLSA Collective.  *See, e.g.*, *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470

(S.D.N.Y. 2011) (granting defendant's motion to decertify collective action).  Risk, expense, and

delay permeate such processes.  Settlement eliminates this risk, expense, and delay.  This factor

favors final approval.

> ### 6.   Defendants' Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7).

There is no evidence here that Defendants could not withstand a greater judgment.

However, even if Defendants could withstand a greater judgment, their ability to do so, "standing

alone, does not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186 (quoting *In re

Austrian*, 80 F. Supp. 2d at 178 n.9).  Thus, this factor is neutral and does not preclude the Court

from granting final approval.

> ### 7.   The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).

Merrill has agreed to settle this case for a substantial amount, up to $7 million.  The

settlement amount represents substantial value given the attendant risks of litigation, even though

recovery could be greater if Plaintiffs attained class certification, overcame motions to decertify

any class or collective, succeeded on all claims at trial, and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the

use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186

(quoting *In re Austrian*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness

with respect to a settlement – a range which recognizes the uncertainties of law and fact in any

particular case and the concomitant risks and costs necessarily inherent in taking any litigation to

completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  "[T]here is no

reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even

a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455

n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential

recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil*

*Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No.

88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million

class settlement over objections that the "best possible recovery would be approximately $121

million").

Here, the settlement provides much more than "a fraction of the potential recovery."  By

Class Counsel's estimation, the settlement amount of up to $7 million represents approximately

83% of the class's lost wages over the liability period ($8,384,659), if Defendants were to prevail

on a fluctuating workweek argument with respect to Salaried FSAs.  Swartz Decl. ¶ 25.  Even if

Plaintiffs defeated Defendants' fluctuating workweek argument, which would be contrary to the

holdings of all of the Circuit Courts of Appeal that have considered the issue,[5] the settlement

would still represent approximately 35% of the class's lost wages ($20,134,644).[6]  *Id.*  The

settlement represents a substantial recovery for Class Members, particularly in light of the risks

of litigation.  These risks included the risk of losing both collective and class certification,

---

[5]     Although there is authority among district courts in this Circuit for applying time and a
half damages in a misclassification case, *see, e.g.*, *Perkins v. S. New England Tel., Co.*, No. 07
Civ. 967, 2011 WL 4460248, at *4 (D. Conn. Sept. 27, 2011), every federal appellate court that
has considered the issue has endorsed the fluctuating workweek method of calculating damages.
*See Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 357 (4th Cir. 2011); *Urnikis–
Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 681-83 (7th Cir. 2010); *Clements v. Serco, Inc.*,
530 F.3d 1224, 1230-31 (10th Cir. 2008); *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 39-40
(1st Cir. 1999); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138-39 (5th Cir. 1988).

[6]     These estimates assume that Class Members worked an average of 40 overtime weeks per
year, that Core I FSAs typically worked an average of 5 uncompensated overtime hours per
week, and that Salaried FSAs typically worked an average of 10 overtime hours per week.
Swartz Decl. ¶ 26.

having a collective action decertified, losing on the merits, and losing on appeal, in addition to the risk of Defendants prevailing on a fluctuating workweek argument. *Id.* ¶ 28.

Here, each Class Member will receive a payment based upon the number of weeks for which they were employed during the relevant limitations periods. Class Members will each receive an average net settlement payment (net of attorneys' fees and costs, service awards, claims administration fees, and reserve for errors and omissions) of approximately $2,918. Ex. B (Horton Decl.) ¶ 14(c). Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

## III.   Approval of the FLSA Settlement Is Appropriate Under Federal Law.

Plaintiffs also request that the Court approve the settlement of their FLSA claims. They have brought their FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt in to the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *Palacio*, 2012 WL 2384419, at *4. Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Palacio*, 2012 WL 2384419, at *5. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the

24

settlement.  *Lynn's Food Stores*, 679 F.2d at 1353-54; *Palacio*, 2012 WL 2384419, at *5.  If the

proposed settlement reflects a reasonable compromise over contested issues, the court should

approve the settlement.  *Lynn's Food Stores*, 579 F.2d at 1354; *Palacio*, 2012 WL 2384419, at

*5.  In this case, the settlement was the result of litigation and arm's-length negotiation involving

vigorous back and forth.  Swartz Decl. ¶¶ 9-21.  During the litigation and at the mediation,

Plaintiffs and Defendants were represented by counsel experienced in wage and hour law.

Because the Settlement Agreement resolves a clear and actual dispute waged in contested

litigation and resolved through arm's-length settlement negotiations, it should be approved.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) certify the

settlement class; (2) grant final approval of the Settlement Agreement; and (3) approve the FLSA

settlement.


Dated:  March 6, 2013
        New York, New York

                                        Respectfully submitted,
                                        **OUTTEN & GOLDEN LLP**

                                        /s/ Justin M. Swartz
                                        Justin M. Swartz

                                        Justin M. Swartz
                                        Ossai Miazad
                                        Juno Turner
                                        Jennifer L. Liu
                                        3 Park Avenue, 29th Floor
                                        New York, New York 10016
                                        Telephone:  (212) 245-1000
                                        Facsimile:  (212) 977-4005

                                        **SHAVITZ LAW GROUP, P.A.**
                                        Gregg I. Shavitz (admitted *pro hac vice*)
                                        Susan H. Stern (admitted *pro hac vice*)

25

1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

***Attorneys for Plaintiffs and the Class and
Collective***