**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Ossai Miazad
Juno Turner
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan Stern (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RENE HERNANDEZ, REBECCA HESTON, JEFFREY STEINBERG, TRINITY GRAY, ERIC EBANKS, and WILLIAM ROGERS, individually and on behalf all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>MERRILL LYNCH & CO., INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and BANK OF AMERICA CORPORATION,<br><br>        Defendants. | No. 11 Civ. 8472 (KBF) (DCF) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................... 1

I.      CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF 33% OF THE
        SETTLEMENT FUND ........................................................................................ 2

        A.      The Percentage Method Is the Preferred Method for Awarding Attorneys'
                Fees in Common Fund Cases in the Second Circuit ................................. 3

        B.      The *Goldberger* Factors Support an Award of 33% of the Fund. ........... 6

                1.      Class Counsel's Time and Labor ................................................ 6

                2.      Magnitude and Complexity of the Litigation ............................. 9

                3.      Risk of Litigation ..................................................................... 10

                4.      Quality of Representation. ....................................................... 12

                5.      Fee in Relation to the Settlement ............................................ 13

                6.      Public Policy Considerations ................................................... 15

II.     THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO
        CLASS COUNSEL OF 33% OF THE SETTLEMENT FUND ....................... 17

III.    CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF EXPENSES
        UNDER THE SETTLEMENT AGREEMENT ................................................ 20

IV.     CONCLUSION ................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H. Phillips v. Walling,*
  324 U.S. 490 (1945)....................................................................................15

*In re Am. Bank Note Holographics, Inc.,*
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)............................................................4

*Ansoumana v. Gristede's Operating Corp.,*
  201 F.R.D. 81 (S.D.N.Y. 2001) ...................................................................10

*In re Arakis Energy Corp.,*
  No. 95 Civ. 3431, 2001 U.S. Dist. LEXIS 19873 (E.D.N.Y. August 17, 2001) ...................15

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany,*
  522 F.3d 182 (2d Cir. 2008)...........................................................................4

*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
  450 U.S. 728 (1981)......................................................................................10

*Boeing Co. v. Van Gemert, et al.,*
  444 U.S. 472 (1980)......................................................................................14

*In re Boesky Sec. Litig.,*
  888 F. Supp. 551 (S.D.N.Y. 1995).................................................................17

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,*
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)............................................................4

*Buccellato v. AT&T Corp.,*
  No. 10 Civ. 463, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ........................................1, 18

*In re Cardinal Health Inc. Sec. Litig.,*
  528 F. Supp. 2d 752 (S.D. Ohio 2007) ..........................................................18

*Castagna v. Madison Square Garden, L.P.,*
  No. 09 Civ. 10211, 2011 WL 2208614 (S.D.N.Y. Jun. 7, 2011)...........................................20

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974)...........................................................................11

*Clark v. Ecolab Inc.*,
  Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,
  2010 WL 1948198 (S.D.N.Y. May 11, 2010) ....................................................14

*Cosgrove v. Sullivan*,
  759 F. Supp. 166 (S.D.N.Y.1991)....................................................................18

*Dahingo v. Royal Caribbean Cruises, Ltd.*,
  312 F.Supp.2d 440 (S.D.N.Y. 2004) (Francis, J.)..............................................15

*Davis v. J.P. Morgan Chase & Co.*,
  827 F. Supp. 2d 172 (W.D.N.Y. 2011) ..................................................1, 3, 13, 18

*deMunecas v. Bold Food, LLC*,
  No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ...............3, 4, 15, 16

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980)........................................................................................16

*Diaz v. E. Locating Serv. Inc.*,
  No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) .........................20

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
  586 F. Supp. 2d 732 (S.D. Tex. 2008) ..............................................................18

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ..........................5

*Flecker v. Statue Cruises, LLC*,
  No. L-4522-09, 2012 WL 5499894 (N.J. App. Div. Nov. 14, 2012) ....................15

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)................................................................13, 16

*In re Gilat Satellite Networks, Ltd.*,
  No. 02 Civ. 1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007).........................13

*Gilliam v. Addicts Rehab. Ctr. Fund*,
  No. 05 Civ. 3452, 2009 WL 466148 (S.D.N.Y. Feb. 24, 2009) ...........................20

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................5

*Goldberger v. Integrated Res. Inc.*,
  209 F.3d 43 (2d Cir. 2000)........................................................................ *passim*

*Henry v. Quicken Loans, Inc.*,
  698 F.3d 897 (2012)........................................................................................11

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003)..................................................................21

*In re Interpublic Sec. Litig.*,
    No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ......................5, 20

*J.I. Case Co. v. Borak*,
    377 U.S. 426 (1964)..................................................................................16, 17

*Johnson v. Brennan*,
    No. 10 Civ. 4712, 2012 WL 6584019 (S.D.N.Y. Dec. 12, 2012)..........................20

*Khait v. Whirlpool Corp.*,
    No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)...........1, 14, 16, 18

*In re Lloyd's Am. Trust Fund Litig.*,
    No. 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................18

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)...............................................................1, 18

*Marlo v. United Parcel Serv., Inc.*,
    639 F.3d 942 (9th Cir. 2011) ............................................................................12

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007)..............................................................................14

*McDaniel v. Cnty. of Schenectady*,
    595 F.3d 411 (2d Cir. 2010)................................................................................3

*McMahon v. Olivier Cheng Catering & Events, LLC*,
    No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ...........................16

*Myers v Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)..............................................................................12

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
    No. 05 Civ. 11148, 2009 WL 2408560 (D. Mass. Aug. 3, 2009)..........................18

*Palacio v. E*Trade Fin. Corp.*,
    No. 10 Civ. 4030, 2012 WL 2384419 (S.D.N.Y. June 22, 2012)..........................10

*Parker v. DeBrauwere*,
    631 F. Supp. 2d 242, 266 (E.D.N.Y. 2009) ........................................................15

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
    No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ...................9, 15, 17

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)............................................................................................16

*In re Polaroid ERISA Litig.*,
    No. 03 Civ. 8335, 2007 WL 2116398 (S.D.N.Y. July 19, 2007) ........................................4, 5

*Prasker v. Asia Five Eight LLC*,
    No. 08 Civ. 5811, 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010)................................................16

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    912 F. Supp. 97 (S.D.N.Y. 1996)..........................................................................9

*In re Ramp Corp. Sec. Litig.*,
    No. 05 Civ. 6521, 2008 WL 58938 (S.D.N.Y. Jan. 3, 2008)................................................4, 5

*In re Rite Aid Sec. Litig.*,
    362 F. Supp. 2d 587 (E.D. Pa. 2005) ...................................................................18

*In re RJR Nabisco, Inc. Sec. Litig.*,
    No. 88 Civ. 7905, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ...........................................18

*Sand v. Greenberg*,
    No. 08 Civ. 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010).......................................3, 16, 17

*Savoie v. Merchants Bank*,
    166 F.3d 456 (2d Cir. 1999)..........................................................................5, 17, 19

*Sewell v. Bovis Lend Lease, Inc.*,
    No. 09 Civ. 1320124, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)............................... *passim*

*Sewell v. Bovis Lend Lease, Inc.*,
    No. 09 Civ. 6548, ECF Nos. 73, 74 (S.D.N.Y. Apr. 16, 2012) ..............................................20

*Steiner v. Am. B'casting Co., Inc.*,
    248 Fed. Appx. 780 (9th Cir. 2007)......................................................................18

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999)....................................................................4, 15

*Taft v. Ackermans*,
    No. 02 Civ. 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)...............................................12

*Toure v. Amerigroup Corp.*,
    No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) .......................................1, 18

*Varljen v. H.J. Meyers & Co.*,
    No. 97 Civ. 6742, 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ...............................................6

*Velez v. Majik Cleaning Serv., Inc.*,
   No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)...................................4, 5, 13

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ...........................................................................................17, 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).............................................................................................3, 4, 5, 19

*Waters v. International Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) .................................................................................................14

*Westerfield v. Wash. Mut. Bank*,
   Nos. 06 Civ. 2817, 08 Civ.0287, 2009 WL 5841129 (E.D.N.Y. Oct. 8, 2009)......................14

*Williams v. MGM-Pathe Communs. Co.*,
   129 F.3d 1026 (9th Cir. 1997) ...................................................................................................14

*Willix v. Healthfirst, Inc.*,
   No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)..............................3, 5, 14, 16

*Zivali v. AT&T Mobility, LLC*,
   784 F. Supp. 2d 456 (S.D.N.Y. 2011)........................................................................................12

**INTRODUCTION**

In connection with Plaintiffs' Motion for Certification of the Settlement Class, Final

Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for

Final Approval"), filed simultaneously with this motion,[1] Class Counsel respectfully move this

Court for an award of attorneys' fees in the amount of 33% of the Settlement Fund (the "Fund")

and reimbursement of $35,390 in out-of-pocket expenses that were incurred in successfully

prosecuting this action.

Over the past year and a half, Class Counsel has spent more than 1,527 attorney,

paralegal, law clerk, and support staff hours prosecuting this case.  Decl. of Justin M. Swartz in

Supp. of Pls.' Mot. for Approval of Attorneys' Fees and Reimbursement of Expenses ("Swartz

Decl.") ¶ 5; Decl. of Gregg I. Shavitz in Supp. of Pls.' Mot. for Approval of Attorneys' Fees and

Reimbursement of Expenses ("Shavitz Decl.") ¶ 14.  Multiplying these hours by the hourly rate

of each attorney, paralegal, and staff member results in a lodestar amount of approximately

$609,147.  Swartz Decl. ¶ 8.

Class Counsel's request for 33% of the Fund – $2,310,000 – is approximately 3.8 times

their actual lodestar amount.  *Id.*  This is a reasonable multiplier in a wage and hour class action

settlement.[2]

---

[1]      For a detailed account of the factual and procedural background of this case, Class
Counsel refer the Court to the Memorandum of Law in Support of Plaintiffs' Motion for Final
Approval and the supporting Declaration of Justin M. Swartz.

[2]      *See, e.g.*, *Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *5
(E.D.N.Y.  Aug. 6, 2012) (awarding multiplier of 3.5)[2]; *Davis v. J.P. Morgan Chase & Co.*, 827
F. Supp. 2d 172, 184-86 (W.D.N.Y. 2011) (awarding multiplier of 5.3); *Buccellato v. AT&T
Corp.*, No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding multiplier
of 4.3); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *8-10 (E.D.N.Y. Jan.
20, 2010) (awarding multiplier of 3.3); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358,
371 (S.D.N.Y. 2002) (the "modest multiplier of 4.65 is fair and reasonable").

Class Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon achieving a good result.  Swartz Decl. ¶ 12.  For the reasons set forth below, Class Counsel respectfully submit that the attorneys' fees and expense reimbursement they seek are fair and reasonable under the applicable legal standards, and should be awarded in light of the contingency risk undertaken and the result achieved in this case.

## I.   CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF 33% OF THE SETTLEMENT FUND.

Class Counsel are entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid overtime wages on behalf of the class.  The Settlement Agreement, which has been preliminarily approved by the Court, provides that "Class Counsel will petition the Court for an award of attorneys' fees of no more than one-third of the Gross Settlement Amount, and, in addition, for reimbursement of their actual litigation costs and expenses . . . ." Ex. E (Settlement Agreement) ¶ 3.2(A).[3]  In addition, the Court-approved notices ("Notices") that were sent to all Class Members stated the following:

> Class Counsel will ask the Court to approve payment of up to one-third of the settlement fund for attorneys' fees.  These fees would compensate Class Counsel for investigating the facts, litigating the case, and negotiating the settlement.  Class Counsel will also ask the Court to approve payment of up to $40,000 for their out-of-pocket costs, excluding the cost of the settlement administrator.

Ex. F (Decl. of Katie Horton ("Horton Decl.")), Ex. A (Rule 23 Notice) ¶ 16 & Ex. B (FLSA Notice) ¶ 13.  As of March 6, 2013, no Class Member has objected to the requested attorneys' fees or expense reimbursement.  Ex. F (Horton Decl.) ¶ 26.  The lack of objections is some indication of the reasonableness of the requested award and weighs in favor approving it.  *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 1320124, 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16,

---

[3]      Unless otherwise indicated, all exhibits are attached to the Swartz Declaration.

2012); *Davis*, 827 F. Supp. 2d at 183.  The request for 33% of the Fund plus expenses is

reasonable and well within the range approved by courts in similar cases.

<blockquote>

**A.**      **The Percentage Method Is the Preferred Method for Awarding Attorneys'
Fees in Common Fund Cases in the Second Circuit.**

</blockquote>

In wage and hour class action lawsuits, public policy favors a common fund attorneys'

fee award.  *Sewell*, 2012 WL 1320124, at *13; *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011

WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440,

2010 WL 3322580, at *8 (S.D.N.Y. Aug. 23, 2010).  Where relatively small claims can only be

prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys

general," attorneys who fill that role must be adequately compensated for their efforts.  *Reyes v.

Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *7 (S.D.N.Y. Aug. 16, 2011);

*Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) (statutory

attorneys' fees are meant to "encourage members of the bar to provide legal services to those

whose wage claims might otherwise be too small to justify the retention of able, legal counsel").

If not, wage and hour abuses would go without remedy because attorneys would be unwilling to

take on the risk.  *Willix*, 2011 WL 754862, at *6; *Sand*, 2010 WL 69359, at *3 ("But for the

separate provision of legal fees, many violations of the Fair Labor Standards Act would continue

unabated and uncorrected.").

Although there are two ways to compensate attorneys for successful prosecution of

statutory claims, the lodestar method and the percentage of the fund method, the trend in this

Circuit is to use the percentage of the fund method in common fund cases like this one.

*McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores, Inc. v.

Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Sewell*, 2012 WL 1320124, at *10.

There are several reasons why courts prefer the percentage method.  First, the percentage

method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 122 (internal quotation marks omitted); *In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 WL 58938, at *2 n.2 (S.D.N.Y. Jan. 3, 2008); *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007).

The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Sewell*, 2012 WL 1320124, at *10 ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded."); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients"); *In re Am. Bank Note Holographics*, *Inc.*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order"). This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 191 (2d Cir. 2008), where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports use of the percentage of the fund method. *Willix*, 2011 WL 754862, at *7; *deMunecas*

4

*v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at \*9 (S.D.N.Y. Aug. 23, 2010).

Second, the percentage of the fund method promotes early resolution.  It "provides a powerful incentive for the efficient prosecution and early resolution of litigation."  *Wal-Mart Stores*, 396 F.3d at 122 (internal quotation marks omitted); *see also In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at \*2 n.2; *In re Polaroid ERISA Litig.*, 2007 WL 2116398, at \*2; *Velez*, 2007 WL 7232783, at \*7.  The percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method.  *Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method."); *Karpus v. Borelli* ("*In re Interpublic Sec. Litig.*"), Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190, at \*11 (S.D.N.Y. Oct. 26, 2004).

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions."  *Id.* (quoting *Savoie*, 166 F.3d at 461 n.4).  The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits."  *Goldberger v. Integrated Res. Inc.,* 209 F.3d 43, 48-49 (2d Cir. 2000); *see also In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at \*2 n.2; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at \*16 (S.D.N.Y. July 27, 2007).  While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously.  *Goldberger,* 209 F.3d at 50; *see In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross

check); *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (using an "unexamined lodestar figure" for the lodestar cross check).

       **B.**       <u>The *Goldberger* Factors Support an Award of 33% of the Fund.</u>

Reasonableness is the touchstone for determining attorneys' fees. In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:

       (1)      the time and labor expended by counsel;
       (2)      the magnitude and complexities of the litigation;
       (3)      the risk of litigation;
       (4)      the quality of representation;
       (5)      the requested fee in relation to the settlement; and
       (6)      public policy considerations.

209 F.3d at 50 (quotation marks omitted). All of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

       **1.**       <u>Class Counsel's Time and Labor</u>

Class Counsel spent significant effort to achieve the $7,000,000 settlement. Before and during the formal litigation of this action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses. Swartz Decl. ¶ 16. Plaintiffs focused their investigation and legal research on the underlying merits of class members' claims, the damages to which they were entitled, and the propriety of class certification. *Id.* Class Counsel interviewed Plaintiffs and several other workers to determine the hours that they worked, the wages they were paid, the nature of their job duties, and other information relevant to their claims. *Id.* ¶ 17. Class Counsel also conducted in-depth background research on Merrill, including reviewing SEC filings and other public documents, to obtain information on Merrill's corporate structure and facilities. *Id.* ¶ 18. Class Counsel also obtained numerous job postings for the FSA positions to determine the nature of the job duties of the positions. *Id.* Plaintiffs, as

well as Opt-in Plaintiff Betty Reynolds, also provided detailed declarations regarding their hours

worked, their wages paid, and the nature of their job duties. *Id.* ¶ 19.

On November 22, 2011, Plaintiffs filed a Collective Action Complaint on behalf of Core

I FSAs, which Defendants answered on December 27, 2011. *Id.* ¶¶ 20-21. On January 31, 2012,

Plaintiff filed an amended complaint adding three additional named Plaintiffs, class claims under

New Jersey law, and collective and class claims on behalf of Salaried FSAs, which Defendants

answered on February 14, 2012. *Id.* ¶¶ 22-23. On March 9, 2012, Plaintiffs filed a Motion for

Conditional Certification and Court Authorized Notice Pursuant to Section 216(b) of the FLSA

("216(b) Motion"), which the Defendants opposed. *Id.* ¶ 25. On April 6, 2012, the Court

granted Plaintiffs' motion and directed Defendants to produce a class list within 45 days. *Id.*

The Parties engaged in expedited discovery relating to the 216(b) Motion, and, following

the Court's decision on that motion, conducted more extensive discovery. *Id.* ¶ 26. Each side

served and responded to written document requests and interrogatories. *Id.* Defendants

produced over 7,000 pages of documents, which Plaintiffs' Counsel reviewed. *Id.* Plaintiffs

served a Rule 30(b)(6) deposition notice on Defendants and informed them of their intention to

notice the depositions of more than a dozen additional witnesses. *Id.* Defendants noticed the

depositions of all six Plaintiffs and had completed the depositions of four of them before the

Parties agreed to stay the proceedings. *Id.*

On June 5, 2012, the Parties agreed to enter into formal settlement negotiations and

requested that the Court enter a stay of all discovery, and delay the sending of notice pursuant to

§ 216(b) of the FLSA until after the proposed stay had expired. *Id* ¶ 27. The Court granted the

request. *Id.* The Parties subsequently agreed to toll the claims of potential FLSA Class

Members during the period of the stay. *Id.*

In or around June 2012, the Parties agreed to attempt to resolve this matter through non-binding private mediation.  *Id.* ¶ 28.  In preparation for mediation, the parties exchanged targeted discovery aimed at allowing them to perform damages calculations. *Id.* ¶ 29.  As part of this exchange, Merrill produced data showing the number of class members in relevant job titles, average earnings, weeks worked, and location of employment.  *Id.*  Plaintiffs performed damages calculations based on the data Defendants provided.  *Id.*

On July 13, 2012, the Parties attended a mediation session in San Francisco, California, with David Rotman, Esq., a well-known and experienced mediator.  *Id*. ¶ 30.  After about nine hours of good faith negotiations, Mr. Rotman made a mediator's proposal to resolve the matter. *Id*.  On July 30, 2012, Mr. Rotman informed the parties that both sides had agreed to accept that portion of his proposal that would resolve all of the claims at issue for $7 million.  *Id*.  During the next several weeks, the Parties negotiated the remaining terms of the settlement, which were memorialized in a formal Settlement Agreement.  *Id.* ¶ 31.  On November 7, 2012, Plaintiffs filed their Motion for Preliminary Approval.  *Id.* ¶ 33.  On November 15, 2012, the Court granted Plaintiffs' Motion for Preliminary Approval.  *Id.*

In performing these tasks, Class Counsel spent more than 1,527 hours of attorney, paralegal, law clerk and staff member time, for an aggregate lodestar of approximately $609,147.  Swartz Decl. ¶¶ 5, 8; Shavitz Decl. ¶¶ 14, 15.  These hours are reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.  Swartz Decl. ¶ 6; Shavitz Decl. ¶ 18.  Class Counsel used a small team of attorneys at any one time in order to minimize duplication of efforts and maximize billing judgment.   Swartz Decl. ¶ 5; Shavitz Decl. ¶ 17.  Class Counsel made every effort to have work performed by the attorney or paralegal with the lowest hourly rate who was

able to effectively perform it.   Swartz Decl. ¶ 5; Shavitz Decl. ¶ 17.

Moreover, the requested fees are not based solely on time and effort already expended; they are also meant to compensate Class Counsel for time that will be spent administering the settlement in the future.   Swartz Decl. ¶ 11; Shavitz Decl. ¶ 20.  *See Reyes*, 2011 WL 4599822, at *8 ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request" of 33% of the fund); *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time.").  In Class Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment.  Swartz Decl. ¶ 11; Shavitz Decl. ¶ 20.  For example, since the Notices were sent out, Class Counsel and staff have responded to dozens of inquiries from Class Members requesting information regarding the terms of the settlement and the amount of their settlement award.  *Id.*  Class Counsel expects to respond to more Class Member inquiries after final approval, especially after checks are issued. *Id.*

### 2.      Magnitude and Complexity of the Litigation.

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award.  *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 912 F. Supp. 97, 100-01 (S.D.N.Y. 1996).  Courts have recognized that wage and hour cases involve complex legal issues.  "FLSA claims typically involve complex mixed questions of fact and law . . . .  These statutory questions must be resolved in light of volumes of legislative

history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).

Among FLSA cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as an "opt out" class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b). Because the same set of operative facts is being applied and analyzed under both statutory frameworks, justice is served and consistency and efficiency are achieved by having the litigation in one forum. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001).

This case hinged on several mixed questions of fact and law. In particular, the parties disputed the extent to which Core 1 FSAs worked overtime hours "off-the-clock," as well as the job duties of Salaried FSAs, whom Plaintiffs alleged were misclassified under the FLSA and New Jersey state law. These mixed factual and legal questions support approval of Class Counsel's attorneys' fee request. *See Palacio v. E*Trade Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 2384419, at *6 (S.D.N.Y. June 22, 2012); (awarding one-third of common fund in attorneys' fees in wage and hour misclassification case); *Sewell*, 2012 WL 1320124, at *12 (same).

### 3.      Risk of Litigation.

The risk of litigation is also an important factor in determining a fee award. Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award. *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger,* 209 F.3d 43 (2d Cir. 2000). "[D]espite the most rigorous and competent of efforts, success is never guaranteed." *Id.* at 471.

Class Counsel undertook to prosecute this action without any assurance of payment for

their services, litigating this case on a wholly contingent basis in the face of tremendous risk.

Swartz Decl. ¶ 12; Shavitz Decl. ¶ 21.  Class and collective wage and hour cases of this type are,

by their very nature, complicated and time-consuming.   Swartz Decl. ¶ 12; Shavitz Decl. ¶ 21.

Lawyers undertaking representation of large numbers of affected employees in such actions

inevitably must be prepared to make a tremendous investment of time, energy, and resources.

Swartz Decl. ¶ 12; Shavitz Decl. ¶ 21.  Due also to the contingent nature of the customary fee

arrangement, lawyers are asked to be prepared to make this investment with the very real

possibility of an unsuccessful outcome and no fee of any kind.   Swartz Decl. ¶ 12; Shavitz Decl.

¶ 21.  Class Counsel stood to gain nothing in the event the case was unsuccessful.   Swartz Decl.

¶ 12; Shavitz Decl. ¶ 21.

Moreover, the circumstances of this case presented hurdles to a successful recovery.

Plaintiffs' claims hinged on their ability to prove that Core 1 FSAs were forced by Defendants'

policies and practices to work off the clock, and that Salaried FSAs performed duties that made

them eligible for overtime and therefore were not exempt under the FLSA and relevant state

laws.  For example, after seven years of litigation and a five-week trial, a jury in a similar

misclassification case involving financial services employees classified as exempt administrative

employees reached a defense verdict, which was upheld by both the district court and the Sixth

Circuit Court of Appeals.  *Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (2012).

Furthermore, when taking on this case, Plaintiffs faced the risk that the Court would not

grant class certification under Rule 23, and that such a determination would likely be reached

only after extensive briefing.  Defendants would likely have argued, both in its opposition to

class certification and on a decertification motion, that individual questions preclude

certification, including whether FSAs had uniform job duties across Defendant's call centers and

throughout the class period.  Although Plaintiffs disagree with these agreements, defendants have

prevailed on arguments like these.  *See, e.g.*, *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942,

949 (9th Cir. 2011) (affirming decertification, citing "variations in job duties that appear to be a

product of employees working at different facilities, under different managers, and with different

customer bases"); *Myers v Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010) (affirming denial of

class certification in misclassification case based on evidence that class members' duties varied

by location); *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) (granting

defendant's motion to decertify collective action).

### 4.    Quality of Representation.

"To determine the 'quality of the representation,' courts review, among other things, the

recovery obtained and the backgrounds of the lawyers involved in the lawsuit."  *Taft v.

Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (citing *In re

Global Crossing*, 225 F.R.D. at 467).

Defendants agreed to pay a total of $7,000,000 to settle this litigation.  By Class

Counsel's estimation, the settlement amount represents approximately 83% of the class's lost

wages over the liability period, calculated on a half-time basis, and 35% of the class's lost wages

calculated on a time-and-a-half basis.[4]  Weighing the benefits of the settlement against the risks

associated with proceeding in the litigation, the settlement is reasonable.  The settlement

amounts will be available to class members without the uncertainty and delay of trial.

Class Counsel has substantial experience prosecuting large-scale wage and hour class and

collective actions.  Swartz Decl. ¶ 4 (listing cases); Shavitz Decl. ¶ 6 (listing cases).  Class

---

[4]    For further details on the assumptions Class Counsel made to perform these calculations,
Class Counsel refers the Court to the Memorandum of Law in Support of Plaintiffs' Motion for
Final Approval, ECF No. 60, and the supporting Declaration of Justin M. Swartz, ECF No. 61.

Counsel's skill and experience were directly responsible for the favorable settlement and weigh in favor of granting the requested fees.  Swartz Decl. ¶ 4; *Velez*, 2007 WL 7232783, at *8 (holding that "Lead Counsel's experience representing plaintiffs in class actions" supported a 33.33% contingency fee award);  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (citing plaintiffs' counsel's experience as one factor supporting an attorneys' fee award of 40% of the fund).

### 5.  Fee in Relation to the Settlement.

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall."  *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007).  "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement."  *Id.* (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003)) (internal quotation marks omitted).  Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable.  *See, e.g., In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *16 n.41 (finding a 30% fee would not constitute a windfall "given the modest size of the [$20 million] settlement").

The size of the $7,000,000 settlement weighs in favor of granting the requested fee award of 33% of the common fund.  *See, e.g., Davis*, 827 F. Supp. 2d at 184-86 (awarding one-third of a $42 million settlement in a FLSA and NYLL misclassification case).  Courts in this Circuit have routinely granted requests for one-third of the fund in cases with settlement funds similar to and substantially larger than this one.  *See, e.g., Willix*, 2011 WL 754862, at *6 (awarding class counsel one-third of $7,675,000 settlement fund in FLSA and NYLL wage and hour action);

*Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010) (awarding class counsel 33% of $6 million settlement fund in FLSA and multi-state wage and hour case); *Khait,* 2010 WL 2025106, at *8  (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case); *Westerfield v. Wash. Mut. Bank*, Nos. 06 Civ. 2817, 08 Civ.0287, 2009 WL 5841129, at *4-5 (E.D.N.Y. Oct. 8, 2009) (awarding 30% of $38 million fund in nationwide overtime suit).

A fee of 33% of the $7,000,000 Fund is reasonable and "consistent with the norms of class litigation in this circuit." *Willix*, 2011 WL 754862, at *7 (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)).  In applying the common fund method, it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, here $7,000,000, even where amounts made available to Class Members who do not file claims will revert to the Defendants.  *See Boeing Co. v. Van Gemert, et al.*, 444 U.S. 472, 480-81 (1980); *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423 (2d Cir. 2007); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1296-97 (11th Cir. 1999); *Williams v. MGM-Pathe Communs. Co*., 129 F.3d 1026 (9th Cir. 1997) (reversing district court award of 33 percent of the claimed fund and awarding attorneys' fees of 33 percent of the available fund).  This is because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.  An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available whether claimed or not."  *Id.* at 437*; see also, e.g., Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F.Supp.2d 440 (S.D.N.Y. 2004) (Francis, J.) (noting that attorneys' fees equivalent to one-third of common fund had been approved notwithstanding the fact that a significant portion of fund

was unclaimed and reverted to defendants).[5]

### 6.   Public Policy Considerations.

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399.

The FLSA and the New Jersey Wage and Hour Law are remedial statutes designed to protect the wages of workers. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective – ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks omitted); *Flecker v. Statue Cruises, LLC*, No. L-4522-09, 2012 WL 5499894, at *11 (N.J. App. Div. Nov. 14, 2012) (New Jersey Wage and Hour Laws "were intended to be humanitarian and remedial." (citation and internal quotation marks omitted)).

Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Sewell*, 2012 WL 1320124, at *13; *deMunecas*, 2010

---

[5]      Courts have occasionally declined to award a percentage of the entire settlement fund in settlements providing for a reversion for reasons not applicable here.  For example, in *Parker v. DeBrauwere*, the court did not follow *Masters* because no fund or fixed amount of money had been established, and it was "clear from the outset that a small number of claims would be filed." 631 F. Supp. 2d 242, 266 (E.D.N.Y. 2009).  Here, more than 84% of the net settlement fund has been claimed.  Ex. F (Horton Decl.) ¶ 28.  Moreover, the *Parker* court relied on a case that predated *Masters*, *In re Arakis Energy Corp.*, No. 95 Civ. 3431, 2001 U.S. Dist. LEXIS 19873 (E.D.N.Y. August 17, 2001), where plaintiffs' counsel sought an award that would have been more than 100% of the amount actually paid to class members.  Even there, the Court awarded plaintiffs' counsel 25% of the entire available fund, which resulted in a multiplier of 1.2 times plaintiffs' counsel's lodestar.  *Id.*  Here, the amount sought by Class Counsel is considerably less than the amount that will actually be paid to the Class.

WL 3322580, at *8; *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713,

2010 WL 2399328, at *7 (S.D.N.Y. Mar. 3, 2010); *Sand*, 2010 WL 69359, at *3 (statutory

attorneys' fees are meant to "encourage members of the bar to provide legal services to those

whose wage claims might otherwise be too small to justify the retention of able, legal counsel").

If not, wage and hour abuses would go without remedy because attorneys would be unwilling to

take on the risk.  *Sewell*, 2012 WL 1320124, at *13; *Willix*, 2011 WL 754862, at *6; *McMahon*,

2010 WL 2399328, at *7; *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal

fees, many violations of the Fair Labor Standards Act would continue unabated and

uncorrected.").  Adequate compensation for attorneys who protect those rights by taking on such

litigation furthers the remedial purpose of those statutes.  *Sewell*, 2012 WL 1320124, at *13;

*Willix*, 2011 WL 754862, at *6; *deMunecas*, 2010 WL 3322580, at *8; *McMahon*, 2010 WL

2399328, at *7.

Courts have recognized that fee awards in cases like this serve the dual purposes of

encouraging "private attorneys general" to seek redress for violations and discouraging future

misconduct of a similar nature.  *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39

(1980); *Khait*, 2010 WL 2025106, at *8; *Prasker v. Asia Five Eight LLC,* No. 08 Civ. 5811, 2010

WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010).  Class actions are also an invaluable safeguard of

public rights.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *J.I. Case Co. v.*

*Borak*, 377 U.S. 426, 433-34 (1964).  Particularly where, as here, the settlement fund is relatively

small, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely . . . be heard."

*Frank*, 228 F.R.D. at 189.  If courts denied sufficient attorneys' fees "no attorneys . . . would

likely be willing to take on . . . small-scale class actions[.]"  *Id.*; *deMunecas,* 2010 WL 3322580,

at *8; *Sand*, 2010 WL 69359, at *3.

16

## II.   THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF 33% OF THE SETTLEMENT FUND.

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check."  *Goldberger*, 209 F.3d at 50.  The Second Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage."  *Id.*; *see also Parker*, 2010 WL 532960, at *2.  As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate.  *Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *8 (S.D.N.Y. Oct. 24, 2005).  In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court."  *Goldberger*, 209 F.3d at 50.  Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . . ."  *Id.*

Courts then consider whether a multiplier is warranted based on factors, such as: (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved.  *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460; *Parker*, 2010 WL 532960, at *2.

Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *Sewell*, 2012 WL 1320124, at *13 ("Courts routinely award lodestar multipliers between two to six."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers

awarded by courts within the Second Circuit"); s*ee, e.g., Steiner v. Am. B'casting Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed); *Toure*, 2012 WL 3240461, at *5 (awarding multiplier of 3.5); *Davis*, 827 F. Supp. 2d at 184-86 (awarding multiplier of 5.3 in wage and hour class action); *Buccellato*, 2011 WL 3348055, at *2 (awarding multiplier of 4.3 in wage and hour class action); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *8-10 (E.D.N.Y. Jan. 20, 2010) (awarding multiplier of 3.3); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (awarding multiplier of 5.2); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (awarding multiplier of six times); *In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (awarding multiplier of seven times); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. Jan. 29, 2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n. 1 (S.D.N.Y.1991) (awarding multiplier of 8.74).

Class Counsel spent more than 1,527 hours litigating and settling this matter.  Swartz Decl. ¶ 5; Shavitz Decl. ¶ 14.  The time spent by Class Counsel is described in the Declarations of Justin M. Swartz and Gregg I. Shavitz and Class Counsel's contemporaneous time records attached thereto.  Swartz Decl. ¶ 5, Ex. A (O&G Time & Costs Summary) & Ex. B (O&G Time Records); Shavitz Decl. ¶ 14, Ex. A (SLG Time & Costs Summary) & Ex. B (SLG Time Records).  The hours worked by Class Counsel result in a lodestar of approximately $609,147. Swartz Decl. ¶ 8.  Class Counsel's request for 3.8 times their lodestar is well within the range of

multipliers regularly awarded in this Circuit and elsewhere.

Moreover, Class Counsel should not be penalized for achieving an early settlement, particularly where, as here, the settlement amount is substantial. *See Wal-Mart Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits."); *Vizcaino*, 290 F.3d at 1050 n. 5 (noting that "the lodestar method does not reward early settlement" and that "class counsel should [not] necessarily receive a lesser fee for settling a case quickly"); *Savoie*, 166 F.3d at 461 ("[T]he percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet.").

In addition, "where 'class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower' because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Sewell*, 2012 WL 1320124, at *13 (quoting *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010)). The multiplier that Class Counsel seeks will diminish over time as Class Counsel spends additional time working on this case, including preparing for and attending the final fairness hearing, answering class member questions, answering questions from the claims administrator, and negotiating and possibly litigating disagreements with Defendant about administering the settlement and distributing the fund. Swartz Decl. ¶ 11; *see, e.g.*, *Johnson v. Brennan*, No. 10 Civ. 4712, 2012 WL 6584019, at *1-3 (S.D.N.Y. Dec. 12, 2012) (resolving dispute over whether *cy pres* designee was appropriate); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, ECF Nos. 73, 74 (S.D.N.Y. Apr. 16, 2012) (allowing late opt-in to participate in class

settlement) (attached as Exhibit D to the Swartz Decl.); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2009 WL 466148 (S.D.N.Y. Feb. 24, 2009) (granting plaintiff's motion for contempt sanctions and ordering defendants to comply with the Court's orders).

Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case). The parties here acted responsibly in reaching settlement in the early stages of litigation. *See In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

## III.   CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF EXPENSES UNDER THE SETTLEMENT AGREEMENT

Class Counsel request reimbursement of $35,390 in out-of-pocket expenses to be paid from the Fund. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal quotation marks omitted). Here, the Notices informed Class Members that Class Counsel would seek reimbursement of up to $40,000 in expenses and costs. Ex. F (Horton Decl.), Ex. A (Rule 23 Notice) ¶ 16 & Ex. B (FLSA Notice) ¶ 13. Class Counsel incurred approximately $35,390 in actual costs and expenses, which were incidental and necessary to the representation of the Class. Swartz Decl. ¶ 9, Ex. C (O&G Costs); Shavitz Decl.

¶ 14.  These expenses include electronic research, court fees, court reporters, document hosting and retrieval, postage and courier fees, working meals, photocopies, telephone calls, travel, and Plaintiffs' portion of the mediator's fees.  Swartz Decl. ¶ 9; Shavitz Decl. ¶ 14.  No Class Member objected to Class Counsel's request to be reimbursed for out-of-pocket expenses.  Ex. F (Horton Decl.) ¶ 26.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, and enter an Order: (i) awarding attorneys' fees in the amount of $2,310,000, which is 33% of the Fund; and (ii) reimbursing $35,390 in out-of-pocket expenses that Class Counsel incurred in this action.

Dated:  March 6, 2013
    New York, New York

Respectfully submitted,

**OUTTEN & GOLDEN LLP**
By:

/s/ Justin M. Swartz
Justin M. Swartz

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Ossai Miazad
Juno Turner
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan Stern (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 404

Boca Raton, Florida 33432
Telephone: (561) 447-8888

***Attorneys for Plaintiffs and the Class and
Collective***