IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RENE HERNANDEZ, REBECCA HESTON, JEFFREY STEINBERG, TRINITY GRAY, ERIC EBANKS, and WILLIAM ROGERS, individually and on behalf all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MERRILL LYNCH & CO., INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and BANK OF AMERICA CORPORATION,<br><br>Defendants. | No. 11 Civ. 8472 (KBF) (DCF)<br><br>USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: 3/21/13 |

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR CERTIFICATION
OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION
SETTLEMENT, APPROVAL OF THE FLSA SETTLEMENT, AND APPROVAL OF
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND CLASS
REPRESENTATIVE SERVICE AWARDS

Plaintiffs Rene Hernandez, Rebecca Heston, Jeffrey Steinberg, Trinity Gray, William

Rogers and Eric Ebanks (together, "Plaintiffs") are individuals who worked as Financial

Solutions Advisors ("FSAs") or in comparable positions for Defendants Merrill Lynch & Co.,

Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., and Bank of America Corporation ("Merrill"

or "Defendants"). On November 22, 2011, Plaintiffs Rene Hernandez, Rebecca Heston, and

Jeffrey Steinberg filed a Class Action Complaint against Defendants, pursuant to 29 U.S.C. §

216(b), in the United States District Court for the Southern District of New York on behalf of

themselves and others similarly situated. Plaintiffs alleged that Defendants violated the FLSA by

requiring Core 1 FSAs to work off the clock and sought recovery of overtime wages, attorneys'

fees and costs, interest, and liquidated damages.  Defendants answered the complaint on December 27, 2011.

On January 31, 2012, Plaintiffs filed an amended complaint adding three additional named plaintiffs, Trinity Gray, Eric Ebanks, and William Rogers, class claims under New Jersey law, and collective and class claims on behalf of Salaried FSAs.   The amended complaint alleged that Defendants violated the FLSA and New Jersey law by requiring Core I FSAs to work off the clock and by improperly classifying Salaried FSAs as exempt from federal and state overtime requirements.  Defendants answered the amended complaint on February 14, 2012.  In addition to the six named plaintiffs, four other former Merrill FSAs also joined the case as Opt-in Plaintiffs.

On March 9, 2012, Plaintiffs filed a Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA ("216(b) Motion").  Defendants filed a response on March 29, 2012.  On April 6, 2012, the Court granted Plaintiffs' motion and directed Defendants to produce a class list within 45 days.

The Parties engaged in expedited discovery relating to the 216(b) Motion, and, following the Court's decision on that motion, conducted more extensive discovery.  Each side served and responded to written document requests and interrogatories.  Defendants produced over 7,000 pages of documents, which Plaintiffs' Counsel reviewed.  Plaintiffs served a Rule 30(b)(6) deposition notice on Defendants and informed them of their intention to notice the depositions of more than a dozen additional witnesses.  Defendants noticed the depositions of all six Plaintiffs and had completed the depositions of four of them before the Parties agreed to stay the proceedings.

On June 5, 2012, the Parties requested that the Court enter a stay of all discovery, and delay the sending of notice pursuant to § 216(b) of the FLSA until after the proposed stay had expired. The Court granted the request. The Parties subsequently agreed to toll the claims of potential FLSA Class Members during the period of the stay.

After exchanging additional informal discovery to enable Plaintiffs to calculate damages and attending a full-day mediation with David Rotman, Esq., a well-known and experienced mediator, the Parties reached a settlement totaling $7 million. On November 15, 2012, this Court entered an Order preliminarily approving the settlement on behalf of the class set forth therein (the "Class" or the "Class Members"), conditionally certifying the settlement class, appointing Outten & Golden LLP and Shavitz Law Group P.A. as Class Counsel, and authorizing notice to all Class Members.

On December 4, 2012, Kurtzman Carson Consultants ("KCC"), a third-party claims administrator, sent Court-approved Notices to all Class Members informing them of their rights under the settlement, including the right to opt out or object to the settlement for Rule 23 Class Members, and of Class Counsel's intention to seek aggregate service awards of $91,500 for the Named Plaintiffs and Opt-in Plaintiff Reynolds, up to one-third of the settlement fund for attorneys' fees, and up to $40,000 for their out-of-pocket expenses. In response to the FLSA Notice, 561 FLSA Class Members joined the lawsuit by submitting consent to join forms. No Class Members objected to the settlement or requested exclusion.

On March 6, 2013, Plaintiffs filed a Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval"). That same day, Plaintiffs also filed Motions for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and for Class

3

Representative Service Awards ("Motion for Service Awards"). Defendants took no position with respect to any of these motions and did not object to the requests for attorneys' fees, costs, or service payments.

The Court held a fairness hearing on March 21, 2013. No Class Member objected to the settlement at the hearing.

Having considered the Motion for Final Approval, the Motion for Attorneys' Fees and Reimbursement of Expenses, the Motion for Service Awards, and the supporting declarations, the oral argument presented at the March 21, 2013 fairness hearing, and the complete record in this matter, for the reasons set forth therein and stated on the record at the March 21, 2013 fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**CERTIFICATION OF THE SETTLEMENT CLASS**

1.     The Court certifies the following class under Federal Rule of Civil Procedure 23(e), for settlement purposes (the "Rule 23 Class Members"):

> all current and former FSAs employed by Defendants in call centers in the State of New Jersey between January 31, 2010 and October 31, 2012.

2.     Plaintiffs meet all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3).

3.     Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(1) because there are approximately 606 Rule 23 Class Members and, thus, joinder is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members").

4.     The proposed class also satisfies Federal Rule of Civil Procedure 23(a)(2), the commonality requirement. Plaintiffs and the Class Members share common issues of fact and

law, including whether Defendants misclassified them as exempt employees, failed to pay them overtime wages in violation of state wage and hour laws, and failed to keep accurate records of time worked. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012) (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had a policy of not paying all class members overtime pay); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, et al., 2010 WL 1948198, at *3 (S.D.N.Y. May 11, 2010) (common issues that help to satisfy Rule 23 commonality requirement include "whether [Defendant] failed to pay Plaintiffs and the state settlement Class Members overtime premium pay for all hours they worked over 40 in a workweek; and . . . whether [Defendant] maintained accurate time records of the hours Plaintiffs and the state settlement Class Members worked").

5.    Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(3), typicality, because Plaintiffs' claims arose from the same factual and legal circumstances that form the bases of the Class Members' claims. *See Morris*, 859 F. Supp. 2d at 616 (typicality satisfied where "[p]laintiffs' claims for overtime pay [arose] from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims").

6.    Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that the Plaintiffs' and the Class Members' interests are at odds. *See Morris*, 859 F. Supp. 2d at 616 (finding adequacy requirement met where there was no evidence that plaintiffs' and class members' interests were at odds); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *5 (S.D.N.Y. Sept. 16, 2011) (same).

7.    In addition, Outten & Golden LLP "have substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour law and class action law." *Guaman v. Ajna-Bar NYC*, No. 12 Civ. 2987, 2013

WL 445896, at *3 (S.D.N.Y. Feb. 5, 2013).  Likewise, Plaintiffs' Counsel Shavitz Law Group,

P.A. ("Shavitz Law Group") has acted as lead counsel or co-counsel on dozens of wage and hour

class and collective actions.  *See Palacio v. E\*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL

1058409, at *2 (S.D.N.Y. Mar. 12, 2012) (appointing the Outten and Golden LLP and Shavitz

Law Group as Class Counsel based on their experience in "numerous wage and hour class and

collective actions").

        8.      Plaintiffs also satisfy Rule 23(b)(3).  Common factual allegations and a common

legal theory – that Defendants violated federal and state wage and hour laws by failing to pay

them for premium overtime hours, and in the case of Salaried FSAs, by misclassifying them as

exempt from overtime – predominate over any factual or legal variations among Class Members.

*See Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29,

2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to

deny employees overtime pay," and "this issue predominates over any individual calculations of

overtime wages").

        9.      Class adjudication of this case is superior to individual adjudication because it

will conserve judicial resources and is more efficient for Class Members, particularly those who

lack the resources to bring their claims individually.  *See Reyes v. Altamarea Grp., LLC*, No. 10

Civ. 6451, 2011 WL 4599822, at *3 (S.D.N.Y. Aug. 16, 2011).  The Plaintiffs and Class

Members have limited financial resources with which to prosecute individual actions.

Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct

occurred within its jurisdiction.  Employing the class device here will not only achieve

economies of scale for Class Members, but will also conserve judicial resources and preserve

public confidence in the integrity of the system by avoiding the waste and delay of repetitive

proceedings and preventing inconsistent adjudications. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (class action superior when individual claims would burden judiciary, be inefficient for plaintiffs, and yield inconsistent results); *see also Morris*, 859 F. Supp. 2d at 617; *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161, 164 (S.D.N.Y. 2008).

## APPROVAL OF THE SETTLEMENT AGREEMENT

10.     The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement.

11.     Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e).  To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

12.     Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits.  *Wal-Mart Stores*, 396 F.3d at 116; *see also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005).

13.     A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)); *see also D'Amato*, 236 F.3d at 85.  "Absent fraud or collusion,

[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at \*4; *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at \*3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002).

### Procedural Fairness

14.     The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e); *Reyes*, 2011 WL 4599822, at \*4.  The settlement was reached after the Parties had conducted a thorough investigation and evaluated the claims and defenses, and after vigorous litigation and arm's-length negotiations between the Parties.

15.     Plaintiffs interviewed Class Members, obtained and reviewed documents from them, conducted in-depth background research on Merrill, including reviewing SEC filings and other public documents to obtain information on Merrill's corporate structure and facilities, reviewed publicly available documents including job descriptions, and analyzed the documents, discovery responses, and data that Defendants produced in response to Plaintiffs' formal and informal discovery requests.

16.     On July 13, 2012, the Parties attended an all-day mediation with an experienced employment law mediator, David Rotman, Esq.  At the conclusion of the mediation, Mr. Rotman made a mediator's proposal to resolve the matter, which the Parties subsequently accepted. These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 1656920, at \*1 (S.D.N.Y. May 9, 2012); *Reyes*, 2011 WL 4599822, at \*4.

17.     In addition, courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case). The Parties here acted responsibly in settling the case in the early stages of litigation. *See In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

### *Substantive Fairness*

18.     The settlement is substantively fair. All of the factors set forth in *Grinnell*, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

19.     The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463.

20.     Litigation through trial would be complex, expensive and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

9

21.     The Class's reaction to the settlement was positive.  The Notices included an explanation of the allocation formula and an estimate of each Class Member's award.  The Rule 23 Notice also informed Rule 23 Class Members of their right to object to or exclude themselves from the Settlement and explained how to do so.  No Class Member objected to or opted out of the settlement.  This favorable response demonstrates that the class approves of the settlement and supports final approval.  "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness.  *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out); *see also Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where only 7 of 2,025 class member submitted timely objections and only 2 requested exclusion); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010) (the fact that no class members objected and two opted out demonstrated favorable response weighing in favor of final approval).

22.     The Parties have completed enough discovery to recommend settlement.  The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted).  Here, through formal discovery and an additional informal exchange of information aimed at allowing Plaintiffs to calculate damages, Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims.  The Parties' participation in a day-long mediation allowed them to further explore the claims and defenses. The third *Grinnell* factor weighs in favor of final approval.

23.     The risk of establishing liability and damages further weighs in favor of final approval.  "Litigation inherently involves risks."  *In re PaineWebber Ltd. P'ships Litig.*, 171

F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Here, the fact-intensive nature of Plaintiffs' claims and Defendants' affirmative defenses presents risk. The proposed settlement eliminates this uncertainty. This factor therefore weighs in favor of final approval.

24.     The risk of obtaining class certification and maintaining it through trial is also present. A contested class certification motion would likely require extensive discovery and briefing. If the Court were to grant class certification, Defendants might seek to file an appeal under Federal Rule of Civil Procedure 23(f), the resolution of which would require an additional round of briefing. After the close of discovery, Defendants likely would have moved to decertify the FLSA collective. Settlement eliminates the risk, expense, and delay inherent in the litigation process. The fifth *Grinnell* factor weighs in favor of final approval.

25.     Even if Defendants could have withstood a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000) (alterations and citation omitted)). Accordingly, this factor is neutral and does not preclude the Court from approving the settlement.

26.     The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of

reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Frank*, 228 F.R.D. at 186 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The seventh *Grinnell* factor weighs in favor of final approval.

## APPROVAL OF THE FLSA SETTLEMENT

27.     The Court hereby approves the FLSA settlement.

28.     Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984); *see Reyes*, 2011 WL 4599822, at *6. Accordingly, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23.

29.     Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Reyes*, 2011 WL 4599822, at *6. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved. *Id.* at 1354; *Reyes*, 2011 WL 4599822, at *6.

30.     In this case, the settlement was the result of litigation and arm's-length negotiation. During the litigation and at the mediation, Plaintiffs and Defendants were represented by counsel. Accordingly, the Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding that the settlement is fair and reasonable.

**DISSEMINATION OF NOTICE**

31.     Pursuant to the Preliminary Approval Order, the Rule 23 and FLSA Notices were sent by first-class mail to each respective Class Member at his or her last known address (with re-mailing of returned Notices for which new addresses could be located).  The Court finds that the Rule 23 and FLSA Notices fairly and adequately advised Class Members of the terms of the settlement, as well as the right of members of the class to opt out of or to object to the settlement, and to appear at the fairness hearing conducted on March 21, 2013.  Class Members were provided with the best notice practicable under the circumstances.

32.     The Court further finds that the notice and their distribution comported with all constitutional requirements, including those of due process.

33.     The Court confirms Kurtzman Carson Consultants, LLC as the claims administrator.

**AWARD OF FEES AND COSTS TO CLASS COUNSEL AND AWARD OF SERVICE AWARDS TO PLAINTIFFS**

34.     On November 15, 2012, the Court appointed Outten & Golden LLP and Shavitz Law Group, P.A. as Class Counsel because they met all of the requirements of Fed. R. Civ. P. 23(g). *See Damassia*, 250 F.R.D. at 165 (Rule 23(g) requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class") (internal quotation marks omitted).

35.     Class Counsel are experienced employment lawyers with good reputations among the employment law bar. *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *12 (S.D.N.Y. Apr. 16, 2012) (noting O&G's reputation as a "respected labor and

employment firm" and that O&G attorneys had "prosecuted and favorably settled many employment law class actions, including wage and hour class actions"); *Palacio*, 2012 WL 1058409, at *2 (S.D.N.Y. Mar. 12, 2012) (appointing O&G and the Shavitz Law Group as Class Counsel based on their experience in "numerous wage and hour class and collective actions").

36.    The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the class and to representing the class's interests. Class Counsel have committed substantial resources to prosecuting this case.

37.    The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $2,310,000 which is 33% of the settlement fund.

38.    The trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases like this one. *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores*, 396 F.3d at 121; *Reyes*, 2011 WL 4599822, at *7.

39.    Although the Court has discretion to award attorneys' fees based on the lodestar method or the percentage-of-recovery method, *McDaniel*, 595 F.3d at 417, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award, *Sewell*, 2012 WL 1320124, at *13; *Reyes*, 2011 WL 4599822, at *7. Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010). The FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights. *Reyes*, 2011 WL 4599822, at *7; *Sand*, 2010 WL 69359, at *3.

40.     Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Reyes*, 2011 WL 4599822, at *7; *Sand*, 2010 WL 69359, at *3.  If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Reyes*, 2011 WL 4599822, at *7; *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.")

41.     Common fund recoveries are contingent on a successful litigation outcome.  Such "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case.  Access to the courts would be difficult to achieve without compensating attorneys for that risk." *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *8 (S.D.N.Y. Aug. 23, 2010) (internal quotation marks omitted).  Many individual litigants, including the Class Members here, "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Id.*

41.     Class Counsel's request for 33% of the Fund is reasonable and "consistent with the norms of class litigation in this circuit." *Gilliam v. Addicts Rehab. Ctr. Fund*, 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008).

42.     Although *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany* does not address a common fund fee petition, it supports class counsel's request for one-third of the fund because "'reasonable, paying client[s]' . . . typically pay one-third of their recoveries under private retainer agreements." *Reyes*, 2011 WL 4599822, at *8 (quoting *Arbor*

15

*Hill*, 522 F.3d 182, 191 (2d Cir. 2008)) (internal citation omitted). While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports use of the percentage of the fund method. *Reyes*, 2011 WL 4599822, at *8; *deMunecas*, 2010 WL 3322580, at *9.

43.     No Class Member objected to Class Counsel's request for 33% of the fund, which also provides support for Class Counsel's fee request.

44.     All of the factors in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) weigh in favor of the requested fee award.

45.     Applying the lodestar method as a "cross check," *see id.* at 50, the Court finds that the fee that Class Counsel seeks is reasonable. Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *Sewell*, 2012 WL 1320124, at *13 ("Courts routinely award lodestar multipliers between two to six."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *see, e.g., Steiner v. Am. B'casting Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184-86 (W.D.N.Y. 2011) (awarding multiplier of 5.3 in wage and hour class action); *Buccellato v. AT&T Operations, Inc.*, No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D. Cal. Jun. 30, 2011) (awarding multiplier of 4.3 in wage and hour class action); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *In re Enron Corp. Sec.*,

16

*Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (awarding multipler of

5.2); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007)

(awarding multiplier of six times); *In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005)

(awarding multiplier of seven times); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358,

371 (S.D.N.Y. 2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and

reasonable"); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 WL 210138, at *5

(S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); *Cosgrove v. Sullivan*, 759 F. Supp. 166,

167 n. 1 (S.D.N.Y.1991) (awarding multiplier of 8.74).  Here, Class Counsel are seeking a

lodestar multiplier of approximately 3.8.  This is well within the range of multipliers that have

been granted by courts in this Circuit and elsewhere.

      46.    The lodestar multiplier Class Counsel seeks is also reasonable because it will

diminish over time.  *Parker v. Jekyll & Hyde Entm't Holdings, LLC,* No. 08 Civ. 7670, 2010 WL

532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort

in the future implementing the complex procedure agreed upon for collecting and distributing the

settlement funds, the multiplier will diminish over time").   "[W]here 'class counsel will be

required to spend significant additional time on this litigation in connection with implementing

and monitoring the settlement, the multiplier will actually be significantly lower' because the

award includes not only time spent prior to the award, but after in enforcing the settlement."

*Sewell*, 2012 WL 1320124, at *13 (quoting *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ.

2207, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010)).  In wage and hour cases, Class

Counsel is often called upon to perform work after the final approval hearing, including

answering Class Member questions, answering questions from the claims administrator, and

negotiating and sometimes litigating disagreements with defendants about administering the

settlement and distributing the fund.  The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request.  *See Reyes*, 2011 WL 4599822, at *8.

47.     The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $35,390.  Courts typically allow counsel to recover their reasonable out-of-pocket expenses.  *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003).  Here, Class Counsel's unreimbursed expenses, including electronic research, court fees, court reporters, document hosting and retrieval, postage and courier fees, working meals, photocopies, telephone calls, travel, and Plaintiffs' portion of the mediator's fees, are reasonable and were incidental and necessary to the representation of the class.

48.     The attorneys' fees and the amount in reimbursement of litigation costs and expenses shall be paid from the settlement fund.

49.     The Court finds reasonable service awards of $15,000 each to Plaintiffs Rene Hernandez, Rebecca Heston, Jeffrey Steinberg, Trinity Gray and William Rogers, $12,500 to Plaintiff Eric Ebanks, and $4,000 to Opt-in Plaintiff Betty Reynolds.  These amounts shall be paid from the settlement fund.

50.     Such service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.  *Reyes*, 2011 4599822, at *9.  It is important to compensate plaintiffs for the time they spend and the risks they take.  *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012).

51.     The "Effective Date" of the settlement shall be 5 days after the date of this Order if no party appeals this Order.  If a party appeals this Order, the "Effective Date" of the settlement shall be the day after all appeals are finally resolved.

52.     Within 3 days of the date the time to appeal this Order has expired, the claims administrator shall distribute the funds in the settlement account by making the following payments in the order below:

      a.     Paying Class Counsel one-third of the fund ($2,310,000);

      b.     Reimbursing Class Counsel for $35,390 in litigation costs and expenses;

      c.     Paying service awards of $15,000 each to Plaintiffs Rene Hernandez, Rebecca Heston, Jeffrey Steinberg, Trinity Gray and William Rogers, $12,500 to Plaintiff Eric Ebanks, and $4,000 to Opt-in Plaintiff Betty Reynolds;

      d.     Paying the remainder of the fund to Class Members in accordance with the allocation plan described in the Settlement Agreement.

53.     The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds.  The Parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

54.     Upon the Effective Date, this litigation shall be dismissed with prejudice, and all Rule 23 Class Members who have not excluded themselves from the settlement and all FLSA Class Members who have opted in to the lawsuit shall be permanently enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the settlement.

It is so ORDERED this 21st day of _March_, 2013.

_____
Honorable Debra Freeman
United States Magistrate Judge